FILED - USDC -NH
2024 FEB 5 AM 11:13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

Patricia Jorgensen, et al.

PETITIONER(S),

v.

Case No. **24 – cv - 00020**

CHRIS AGER, IN HIS CAPACITY AS CHAIR, NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE,

DAVID SCANLAN, IN HIS CAPACITY AS SECRETARY OF STATE FOR NEW HAMPSHIRE,

RESPONDENT(S).

---

## PETITIONERS' ASSENTED-TO CHRIS AGER'S MOTION FOR STATUS CONFERENCE

NOW COMES Republican voters Patricia Jorgensen, both individually and as Vice Chair of the New Hampshire Merrimack County Republican Committee ("MCRC"), Karen Testerman, both individually and as Chair of the New Hampshire Merrimack County Republican Committee ("MCRC"); NH state Representative David Testerman, individually and as a disenfranchised Merrimack County GOP voter; and, NH State Representative Nikki McCarter, individually and as a disenfranchised Belknap County Republican voter, (the "Petitioners"), and consent to Defendant Chris Ager's motion for status conference, stating as follows:

1

**Factual Background**

1.  In its motion, counsel for NHRSC incorrectly state that the petitioners have brought suit against the New Hampshire Republican State Committee ("NHRSC") in this matter. They have not. The suit has correctly captioned the Named Defendants as Chris Ager in his capacity as Chair, New Hampshire Republican State Committee, and David Scanlan in his capacity as Secretary of State for New Hampshire.

2.  Both Ager and Scanlan would be considered *state actors* in their roles under NH RSA § 659:14, (II), in where that it states:

    > "II. The secretary of state shall include on the voter instruction cards required by RSA 658:28 whether a party rule has been adopted which permits a person who is registered as an undeclared voter to vote in the party's primary. **The party chairman shall notify the secretary of state in writing prior to the filing period for state offices** whether the party has adopted such a rule. This rule shall not be changed or rescinded by a party until the results of the primary have been announced, **and any change or rescission shall be mailed to the secretary of state by the party chairman (emphasis added)."**

3.  Such language makes both Republican Party Chair Chris Ager and Secretary of State David Scanlan joint *state actors* for purposes of fulfilling the statute. *See* Campbell v. Bysiewicz, 242 F.Supp.2d 164, 174-75 (D. Conn. 2003).

4.  As such, the petitioners intentionally omitted the New Hampshire Republican Party from its suit.

5.  On Monday, January 22, 2024, the day before the New Hampshire first-in-the-Nation presidential primary, Ms. Jorgensen, under *constructive notice*, hand-delivered a copy of the complaint and request for injunctive relief to a staff member at the offices of the Chair Chris Ager at the New Hampshire Republican Party headquarters in Concord, New Hampshire. *See Proof of Service*, Doc. No. 5, Attachment #1. Ms. Jorgensen also provided a hand-delivered copy of the complaint to the Secretary of State's office.

6. Ms. Jorgensen also employed a process server to properly serve notice on Chris Ager and David Scanlan. The office of Secretary of State David Scanlan accepted proper notice. However, the offices of party Chair Chris Ager *"were locked during business hours on Monday, January 22, 2024, and no one responded to the front door Ring video camera doorbell, which we presumed could be answered remotely."* Id.

7. Therefore, notices of service, pursuant to Fed. R. Civ. P. 4, were proper for the Secretary of State, and Chris Ager had constructive notice on the date of filing.

8. The NHSRC's counsel was never served because the NHSRC was never a party to the suit.

9. Defendant's counsel has also sent threatening statements to the *pro se* litigants claiming that the Named Defendants (and the NHSRC) will be seeking sanctions for not following protocol under the court's rule for service. However, as both *ex parte* injunctive requests have been denied by this court, the defendants Chris Ager and David Scanlan have not been damaged, and therefore no sanctions are warranted.

10. And it now seems that Defendant's counsel is seeking for the court to admonish the *pro se* litigants rather than sanction them.

11. Counsel for Defendant also points to a previous suit by Karen Testerman and others which is currently under appeal. See *Karen Testerman, et al. v. NH Secretary of State, et al.*, Docket No. 1:23-cv-00499-JL-AJ (D.N.H.). And while that suit may include similar parties, the two cases do not operate under a common nucleus of operative facts.

12. The first suit involves whether the Secretary of State and the Republican Party Chair had the authority to extend the registration date for voters to declare themselves "Undeclared" beyond the statutory cut-off period of June 7, 2023. Id., *Compl.* at ¶¶ 5 – 6. This current second

suit is whether the Secretary of State and the Republican Party Chair had the authority to allow Undeclared Voters to vote on presidential primary day, January 23, 2024, despite the efforts of the party members' attempt to close their primary at their state convention in January 2023. As such, the two suits are separate and distinct.

**Request for Status Conference**

13. The petitioners have assented to the status conference in order to clear up any confusion as to matters still pending in this case.

14. As to Ms. Testerman's email, she was referring to the initial and second motions for emergency injunctive relief which are now moot because the election had already occurred, but not that the injury-in-fact was moot. To the contrary, media reports demonstrated the infidelity of undeclared voters as they attempted to muddy the results of the recent election. Therefore, to ask whether other petitioners in this instant suit agree with counsel for Defendant's assertions as to the meaning of the word *moot* in Ms. Testerman's email is not germane to this matter.

15. To summarize this instant Complaint, the petitioners allege that the Secretary of State does not have the authority under N.H. RSA 659:14 to allow Undeclared Voters to participate in the 2024 Republican Presidential Primary. To have such authority, there must be: (1) a Party Rule or Bylaw expressly allowing Undeclared Voters to participate; **and** (2) the Chair of the Party must notify the Secretary of State ***in writing*** that such a Party Rule or Bylaw does indeed exist. Compl. at ¶¶ 2 – 5.

16. Yet, in a very telling footnote to its Motion for Status Conference, Defendant's counsel attempts to argue that the New Hampshire Republican presidential primary is not currently open to undeclared voters. See *Motion for Status Conference*, FN1, Doc. No. 15. Axiomatically, and

even more strangely, it is the Defendants' assertion that "*[t]here are two ways in which undeclared voters can vote in party primaries in New Hampshire*." *Id*. Counsel also stated "*[t]he latter statute* [RSA 654:34] *is not dependent on the existence of a party rule*." *Id*.

17. By this statement alone, counsel is asserting that on the day of the New Hampshire Presidential Primary, Undeclared Voters are **not** members of the Republican Party, but it is the rebuttable presumption of the Secretary of State that Undeclared Voters should still be allowed to vote in the Republican Party, based on his interpretations of RSA § 654:34. Such an inference violates the petitioners' rights to freedom of association.

18. This adds a new twist to this Complaint as it puts NH RSA § 659:14 at odds with a companion statute NH RSA § 654:34. One cannot read and analyze one statute without the consideration of the other.

19. It is the rebuttable presumption of the petitioners that NH RSA § 654:34 cannot operate independently of gaining permission of the political parties for Undeclared Voters to be included on presidential primary day as stated in NH RSA § 659:14. Otherwise, if neither the Democratic or Republican parties have opened their primaries to Undeclared Voters on Election Day, the Supervisor of the Checklist would have no choice but to turn away these Undeclared Voters.

20. It is the rebuttable presumption of the defendants, based on their arguments in their Motion for Status Conference, that the two statutes operate independently of each other. However, for the Secretary of State to infer such an obtuse interpretation of the two statutes would negate any ability by either the Democratic or Republican parties to maintain control of their respective membership, to the exclusion of all others. *See* California Democratic Party v. Jones, 530 U.S. 567, 568 (2000). And such an interpretation would needlessly render NH RSA § 654:34 unconstitutional.

21. The Secretary of State's interpretation of NH RSA § 654:34, II(b) would render the actions taken by either the Democratic or Republican parties, pursuant to NH RSA § 659:14, to either "open" or "close" their primaries *meaningless*, because interloping Undeclared Voters could bypass the will of the political parties, to the parties' detriment.[1]

22. In **Count III** of the Petitioners' Complaint, the petitioners have argued that Defendants Ager and Scanlan have colluded to deprive the petitioners (and all regularly registered NH Republican voters) by substituting their judgment for that of the Party and deprived the Party of its First Amendment right to enter political association with individuals of its own choosing. 34 CFR § 9032.7 (a) (4). See Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 209 (1986). Complaint at ¶ 25.

23. And in so doing, Chair Ager and Secretary Scanlan have "*substantially interfere[d] with the Republican Party's first amendment right to define its associational boundaries, determine the content of its message, and engage in effective political association.*" Tashjian, 479 U.S. at 213.

24. The Supreme Court stated in California Democratic Party v. Jones, 530 U.S. 567, 568 (2000):

> "***In no area is the political association's right to exclude more important than in its candidate-selection process****. That process often determines the party's positions on significant public policy issues, and it is the nominee who is the party's ambassador charged with winning the general electorate over to its views. **The First Amendment reserves a special place, and accords a special protection, for that process***, because the

---

[1] https://thehill.com/homenews/campaign/4426773-70-percent-haley-voters-new-hampshire-not-republicans-exit-poll/ ("Seven in 10 voters supporting Nikki Haley in the New Hampshire GOP primary were not registered Republicans, according to a CNN exit poll. The poll found 70 percent of voters who backed Haley in the primary on Tuesday were undeclared, or independent, while only 27 percent were Republicans. The remaining 3 percent were unregistered as voters before participating in the primary.") The poll also found 80 percent of Trump voters believe the former president's false claims that President Biden did not legitimately win the 2020 race. But 83 percent of Haley voters said Biden fairly won the 2020 election over Trump. *Id.*

*moment of choosing the party's nominee is the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power (citations omitted, **emphasis added**)."*

25. The Supreme Court also stated in Clingman v. Beaver, 544 U.S. 581, 592 (2005):

"Nevertheless, *Tashjian* is distinguishable. Oklahoma's semiclosed primary imposes an even less substantial burden than did the Connecticut closed primary at issue in *Tashjian*. In *Tashjian*, this Court identified two ways in which Connecticut's closed primary limited citizens' freedom of political association. **The first and most important was that it required Independent voters to affiliate publicly with a party to vote in its primary** (citations omitted, **emphasis added**)."

26. Under the Secretary of State's newly asserted interpretation of RSA 654:34, Undeclared Voters may: register as Republican voters (same-day) over the protestation of the Republican party members; receive a ballot; vote in the primary; and then return to an Undeclared Voter status without ever "publicly affiliating" with the Republican Party, except within the confines of the voting precinct for a brief few minutes on presidential primary day. This presumption doesn't pass even the simplest "sniff" test.

27. With this new revelation, that it is the Secretary of State's assertion that undeclared voters can vote in party primaries in New Hampshire without having to "affiliate publicly" with the party, over the protestation of the political party members, and despite the efforts of the party members to close their primaries, the petitioners reserve the right to amend their complaint to include the unconstitutionality of the Secretary of State's interpretation of NH RSA § 654:34, II(b), which effectively denies the petitioners from ever participating in a closed primary. Such

7

an interpretation that undeclared voters can vote in a Democratic or Republican presidential primary over the objections of the political party's themselves is offensive to public policy.

Respectfully Submitted,

Patricia Jorgensen, *both individually and as New Hampshire Merrimack County Republican Committee (MCRC) Vice-Chair*

Dated:  February 5, 2024

By: *Patricia Jorgensen*
Patricia Jorgensen, *pro se*
Yellaboat@aol.com
26 Twin Bridge Road
Northfield, New Hampshire
(774) 218-5707

David Testerman, *N.H. State Representative, Merrimack County District 03*

Dated:  February 5, 2024

By: *David Tes*
David Testerman, *pro se*
Dave@sanbornhall.net
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 320-9524

Nikki McCarter, *State Representative, Belknap County District 08*

Dated:  February 5, 2024

By: *Nikki McCarter*
Nikki McCarter, *pro se*
Nikki.McCarter@leg.state.nh.us
107 North Main Street
Concord, New Hampshire 03235
(603) 303-8934

|  |  |
|---|---|
| Dated: February 5, 2024 | Karen Testerman, *both individually and as New Hampshire Merrimack County Republican Committee (MCRC) Chair*<br><br>By: *[signature] Karen Testerman*<br>Karen Testerman, *pro se*<br>karen@karentesterman.com<br>9 Stone Avenue<br>Franklin, New Hampshire 03235<br>(603) 934-7111 |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by electronic means and U.S. mail to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269


Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Attorney Bryan K. Gould
c/o CLEVELAND, WATERS, AND BASS, P.A.
2 Capitol Plaza
Concord, NH 03302-1137

Dated: February 5, 2024

*[signature] Patricia Jorgensen*
Patricia Jorgensen, *pro se*

9