UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Patricia Jorgensen, et al,**<br><br>            **Plaintiffs,**<br>     **v.**<br><br>**Secretary of State David M. Scanlan, et al,**<br><br>            **Defendants.** | **Civil No. 1:24-cv-00020-LM-AJ** |

**CHRIS AGER AND NEW HAMPSHIRE REPUBLIC STATE COMMITTEE'S OBJECTION TO MOTION TO AMEND**

The Defendants, Chris Ager and the New Hampshire Republican State Committee ("NHRSC") (collectively, the "NHRSC Defendants"), through counsel, Drummond Woodsum, object to the Plaintiffs' (the "Testermans"), Motion for Leave to File First Amended Verified Complaint as futile.

**INTRODUCTION AND BACKGROUND**

1.     The Testermans originally filed suit one day prior to the New Hampshire Presidential Primary Election, seeking equitable relief, in pertinent part, to prohibit undeclared voters from participating in the New Hampshire republican presidential primary, *see* ECF 1, at 10, and to sequester votes of undeclared voters, *see* ECF 2, at 1.

2.     On February 2, 2024, the Secretary of State filed a Motion to Dismiss on mootness grounds because, by that time, the primary had already taken place. ECF 11.

1

3. The Testermans' Motion for leave to file a proposed Amended Complaint should be denied as futile.

## ARGUMENT

4. An amendment is futile if it cannot survive the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006).

5. While the NHRSC Defendants identify various bases to demonstrate that the amendment would be futile, this objection is not intended to be exhaustive. Should the Court allow the amendment, the NHRSC Defendants intend to file a more fulsome motion to dismiss including these, and any other, grounds.

### I. The Testermans lack standing, and *res judicata* bars their claims.

6. In *Karen Testerman, et al. v. NH Secretary of State, et al,* 23-cv-499-JL-AJ ("*Testerman I*"), the Testermans challenged the state presidential primary election rules allowing voters to change their party affiliations before the primary election. In that case, this Court determined that the plaintiffs' claim of "vote dilution" was insufficient to confer standing. *See Testerman I*, ORDER ON MOTION TO DISMISS, ECF 67, p.7. The Testermans did not appeal this Court's determination in *Testerman I* and therefore that decision is final.

7. Here, the Testermans' proposed Amended Complaint mounts a similar challenge against the practice of allowing undeclared voters to participate in the primary election. The Testermans lack standing for the same reasons stated in *Testerman I* and are barred by the doctrine of collateral estoppel from relitigating

that issue. However the cause of action is labeled, the Testermans are simply asserting a vote dilution claim. *Res judicata* also prohibits them from raising new claims they could have, but failed to, raise in *Testerman I*.

II. **The *Bricker* and other abstention doctrines preclude the Testermans' claims against Ager and NHRSC.**

8. The NHRSC is a New Hampshire voluntary corporation. *See also* RSA 667:21, :22. AMENDED COMPL. ¶ 3.

9. The Testermans believe that the NHRSC must notify the Secretary of State that it is prohibiting the participation of undeclared voters pursuant to RSA 659:14 and/or take other steps to prohibit the participation of undeclared voters[1].

10. This is an issue Karen Testerman unsuccessfully advocated for internally while being a member of the NHRSC.

11. Specifically, on January 28, 2023, Karen Testerman unsuccessfully attempted to have the NHRSC by-laws amended to prohibit the participation of undeclared voters in the primary. *See* AMENDED COMPL., Exh. A.

12. At the same meeting, Karen Testerman later successfully put forth a so-called "resolution" for a "closed" primary. *Id.*

13. Later, Karen Testerman demanded that the NHRSC notify the Secretary of State of the resolution. *See* AMENDED COMPL., Exh. D.

14. Ager, the NHRSC Chairman, informed Karen Testerman that, after consulting with the Secretary of State, the NHRSC determined that its by-laws

---

[1] Notably, the government, not the NHRSC, conducts elections.

3

needed to be amended prior to restricting participation by undeclared voters in the primary, i.e. that the mere resolution was not enough. *Id.*

15. Now, having unsuccessfully obtained the result desired within the NHRSC, the Testermans seek to utilize this Court's authority to impose their will upon the entire state political organization.

16. "Judicial interference in the internal affairs of associations is strictly limited and will not be undertaken in the absence of a showing of injustice or illegal action and resulting damage to the complaining member." *Bricker v. N.H. Medical Society*, 110 N.H. 469, 470 (1970); *see also Ortiz-Bonilla v. Federación De Ajedrez De P.R., Inc.*, 734 F.3d 28, 41 (1st Cir. 2013)("[C]ourts generally will not interfere with the internal affairs of a voluntary association absent mistake, fraud, collusion or arbitrariness.")(citing and applying *Illinois* law).

17. This doctrine is even more significant when it comes to political parties. Because of political parties' strong constitutional associational rights, courts generally do not interfere in the internal affairs of political parties because they are, at their core, non-justiciable political disputes. *See Democratic Party of United States v. Wisconsin Follette*, 450 U.S. 107, 124 (1981)("a court, may not constitutionally substitute its own judgment for that of the Party…"); *LaRouche v. Fowler*, 152 F.3d 974 (D.C. Cir. 1998).

18. Indeed, the First Amendment "confers on political parties [the right] to structure their internal party processes and to select the candidate of the party's choosing." *New York State Bd. Of Elections v. Torres*, 552 U.S. 196, 203 (2008).

4

19. Moreover, the party's "convention itself is the proper forum for determining intra-party disputes over selection of the party's nominees and candidates." *O'Brien v. Brown*, 409 U.S. 1, 4 (1972) (per curiam), vacated as moot by 409 U.S. 816 (1972).

20. Here, the Testermans are challenging the NHRSC's conduct as it pertains to the selection of party nominees and/or candidates. As the Testermans' sole recourse is via the party's internal political processes, this Court should deny the motion to amend as futile.

### III. Even if the Testermans have standing and the Court otherwise weighs in on the party's internal affairs, the proposed Amended Complaint still fails to state a claim for relief.

#### a. Count I fails to state a claim and amendment is futile.

21. Count I purports to assert a breach of fiduciary duty against Ager for allegedly failing to notify the New Hampshire Secretary of State that the NHRSC did not authorize undeclared voters to vote in the presidential primary. AMENDED COMPL. ¶ 8.

22. Under New Hampshire law, "a fiduciary relationship has been defined as a comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed. A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." *Brzica v. Trs. of Dartmouth Coll.*, 147 N.H. 443, 447-448 (2002).

23. The Testermans' complaint fails to plead facts to establish that Ager owed a fiduciary duty to **them**. The Testermans merely identify as members of the

5

republican party. COMPLAINT ¶ 1. The Testermans have not alleged that they are currently members of the New Hampshire State Republican Executive Committee or otherwise have a right or duty to control how the NHRSC operates. Even if they were members of the New Hampshire State Republican Executive Committee, that may entitle them to participation in the internal affairs of the organization, but it does not create a situation whereby Ager has acquired "influence" over the individual plaintiffs, or otherwise obtained confidences, which give rise to a fiduciary duty to the individual members as opposed to the organization.

24. To the extent Ager arguably owed a duty to NHRSC as a whole which might be implicated, the Testermans lack individual standing to enforce the same. Here, at its core, the Testermans seek to challenge a practice which they believe harms the NHRSC as an association. "[A]ssociational standing" is different from "third-party standing." *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 539, 547 (6th Cir. 2021) (drawing distinctions between the two concepts). Associational standing confers standing on an association to sue for injuries as to which its individual members have standing. *See, e.g., Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union*, 467 F.3d 999, 1010 (6th Cir. 2006). It does not confer standing on individual members of an association to sue for injuries to the association.

25. Finally, to the extent Count I contains an embedded freedom of association claim, it is without merit. Their complaint that others might also vote in

the same primary as them does not implicate their individual freedom of association. The *association* holds the right to associate with respect to who votes in its primary:

> The First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. That is to say, a corollary of the right to associate is the right not to associate. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.

*California Democratic Party v. Jones*, 530 U.S. 567 (2000). Indeed, what the Testermans are attempting to do violates the NHRSC's right to associate. As discussed in Section II, it is up to the party to determine whether and how to limit participation in the association, including voting at the primary.

26. Ultimately, the Testermans remain free to choose whether to associate with the NHRSC, including whether to participate in the state primary. However, if they choose to participate in the association, their interest is limited by the NHRSC's internal processes. If they choose to vote in the primary, their interest is limited to casting their ballot; nothing more, nothing less. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression.")

    b. **<u>Counts III, IV, and V fail to state claims for relief.</u>**

27. In Counts III, IV, and V, the Testermans assert conspiracy claims against Ager and the Secretary of State.

28. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987).

29. "For civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." *University Sys. of New Hampshire v. U.S. Gypsum Co.*, 756 F. Supp. 640, 652 (D.N.H. 1991).

30. "[C]onclusory or speculative allegations about an agreement are insufficient to state a conspiracy claim." *See Webber v. Deck*, 433 F. Supp. 3d 237, 247 (D.N.H. 2020).

31. Here, the Testermans' proposed amended complaint is devoid of any factual allegations suggesting any overt agreement *to commit a tort* between Ager and the Secretary of State. That both sides may have come to the same conclusion as to what needs to happen to close the primary is not the stuff of "conspiracy" and falls well short of raising "any plausible inference that defendants had a plan, much less that they knew of and acted in accordance with a plan," as required to state a claim for conspiracy. *Brady v. Mosca, et al.*, 2023 DNH 154, p. 14.

    c. **Count IV, V, and VI also fail because Ager is not a state actor.**

32. Count IV, V, and VI also fail for a different reason: Ager is not a state actor. Ager is the Chair of the NHRSC, a *private* organization.

33. The United States Supreme Court has set forth a two-part test to determine if the action was "fairly attributable" to the state: First, the deprivation must be caused by exercise of some right or privilege created by the State or by a rule

8

of conduct imposed by the State or by a person for whom the State is responsible….Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

34. Nothing in the Testermans' proposed amended complaint comes close to meeting that standard.

### d. Count VI fails to state a claim for relief.

35. In Count VI, the Testermans assert an equal protection claim against Ager and the Secretary of State.

36. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons are to receive substantially similar treatment from the government. U.S. Const., amend. XIV, § 1 ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."); *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004).

37. The Testermans' assert that so-called "Party Raiders" are "given extra privileges on Presidential Primary Election Day, to the detriment of [the Testermans.]" AMENDED COMPL. ¶ 46.

38. As it stands, the Testermans can register as republicans and vote in the republican primary. As it stands, the Testermans *could* disavow their party affiliation, become undeclared, and still vote – according to their own AMENDED COMPLAINT – in the republican primary.

9

39. In other words, there is no disparate treatment of similarly situated individuals. Instead, the Testermans simply do not like the way *all* voters are being treated during the primary. This does not give rise to an equal protection claim.

## CONCLUSION

40. The Testermans, like all individuals, remain free to associate with the republican party, on a local, state, or national level.

41. The Testermans, like all individuals, remain free to vote for their chosen candidate(s) in local, state, and national elections.

42. However, the Testermans are not free to unilaterally dictate what the NHRSC does, or does not do. Whatever interests they may have as members of the republican party, it can only be redressed through internal party processes.

43. The Testermans tried, and failed, to convince their fellow members to amend the bylaws.

44. The Testermans cannot now force their decision on the party.

WHEREFORE, the NHRSC Defendants respectfully request this Honorable Court:

A) DENY the Plaintiffs' Motion for Leave to File First Amended Verified Complaint; and

B) For such further relief this Court deems fair and just;

Respectfully submitted,

**Chris Ager and the New Hampshire Republican State Committee**

By its Attorneys,

Drummond Woodsum & MacMahon

Dated:  April 3, 2024 	 */s/ Demetrio Aspiras*
	Demetrio F. Aspiras, Esq., NH Bar 19518
	Mark V. Franco, Esq. NH Bar 16708
	670 N. Commercial Street, Suite 207
	Manchester, NH 03101
	603.792.7414
	daspiras@dwmlaw.com
	mfranco@dwmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April 2024, I sent the foregoing Objection to the Motion for Leave to File First Amended Verified Complaint to the parties and counsel of record via the Court's electronic filing system.

Dated: April 3, 2024	By: */s/ Demetrio Aspiras, III*
	Demetrio F. Aspiras, III

11