UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * *
                                 *
KAREN TESTERMAN, ET AL.,         *
                                 *
                Plaintiffs.      *  No. 1:24-cv-00020-LM-AJ
                                 *  May 30, 2024
                                 *  2:10 p.m.
        v.                       *
                                 *
SECRETARY OF STATE DAVID M.      *
SCANLAN, ET AL.,                 *
                                 *
                                 *
                Defendants.      *
                                 *
* * * * * * * * * * * * * * * * *

TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE ANDREA K. JOHNSTONE

APPEARANCES:

For the Plaintiffs:          Karen Testerman, *pro se*
                             David Testerman, *pro se*

For the Defendant:           Brendan Avery O'Donnell, Esq.
NH Secretary of State        New Hampshire Department of Justice
David Scanlan

For the Defendant:           Demetrio F. Aspiras, III, Esq.
NH Republican State          Drummond Woodsum
Committee and Chris Ager

Court Reporter:              Brenda K. Hancock, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             55 Pleasant Street
                             Concord, NH 03301
                             (603) 225-1454

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  All rise for the Honorable Court.  This

 3    Court is now in session and has for consideration a motion

 4    hearing in the matter of Jorgensen, et al. versus New Hampshire

 5    Secretary of State, et al., case number 24-cv-20-LM.

 6            Will the parties please identify themselves for the

 7    record, starting with the plaintiffs.

 8            MS. TESTERMAN:  Karen Testerman.

 9            THE COURT:  Good afternoon.

10            MS. TESTERMAN:  Good afternoon.

11            MR. TESTERMAN:  Dave Testerman.

12            THE COURT:  Good afternoon, sir.

13            MR. ASPIRAS:  Good afternoon, your Honor.  Demetrio

14    Aspiras from Drummond Woodsum, on behalf of Chris Ager and the

15    New Hampshire State Republican Committee.

16            THE COURT:  Good afternoon.

17            MR. O'DONNELL:  Good afternoon, your Honor.  Brendan

18    O'Donnell from the New Hampshire Department of Justice on

19    behalf of the Secretary of State.

20            THE COURT:  Okay.  All right.  So, thank you all for

21    being here today.  The primary purpose of today's proceeding is

22    to address the plaintiffs' motion for leave to file a first

23    amended verified complaint.  That's document number 31.  I also

24    have the objections to that motion, document 32, filed on

25    behalf of Mr. Ager and the New Hampshire Republic (sic) State
```

1    Committee.  That should be Republican State Committee.  Excuse

2    me.  And I also have the Secretary of State's objection.

3            But before I get to those and turn to those, I also

4    note that after the motion for leave was filed there was an

5    amended complaint filed on April 22nd.  So, I'm going to ask

6    the plaintiffs to clarify for the Court what prompted the

7    filing of an amended complaint before the Court ruled on the

8    motion for leave.

9            MS. TESTERMAN:  Thank you, your Honor.  We wanted to

10   clarify our original complaint, which was purely for a

11   declaration to try and figure out if the 659:14 was being --

12           THE COURT:  Okay.  I don't think you understand what

13   my question is.

14           MS. TESTERMAN:  Okay.  I'm sorry.

15           THE COURT:  So, I'm not asking about your motion for

16   leave.

17           MS. TESTERMAN:  Okay.

18           THE COURT:  You filed a motion for leave.  I haven't

19   ruled on that yet.

20           MS. TESTERMAN:  Correct.

21           THE COURT:  And in April an amended complaint was

22   filed.

23           MS. TESTERMAN:  Correct.

24           THE COURT:  I'm trying to understand why that

25   complaint was filed before I ruled on the motion for leave.

1          MS. TESTERMAN:  By error on my part.  Reading the
2     Judge's order, I mistook 25 as being our -- a request for us to
3     refile our -- the attachment, the exhibit that we had attached
4     to our motion for leave.
5          THE COURT:  Okay.  So, that amended complaint that was
6     filed on April 22nd, document number 30, you're saying that was
7     filed in error?
8          MS. TESTERMAN:  Yes, ma'am.
9          THE COURT:  And do you wish to withdraw that?
10         MS. TESTERMAN:  Yes, ma'am.
11         THE COURT:  Okay.  All right.  Thank you.  So, that's
12    very helpful.
13         So, now let's turn to the motion for leave to file an
14    amended verified complaint.  So, I am assuming that you have
15    reviewed the objections that were filed, and what I'd like you
16    to do is, I have your request to file your amended verified
17    complaint, and I would like you to address, if you would, the
18    concerns that have been raised by the defendants as they relate
19    to standing and as they relate to futility.  So, go right
20    ahead, and I'm going to let you do that now.  Thank you.
21         MS. TESTERMAN:  The objections by the codefendants are
22    that the issue is moot because the Presidential Primary has
23    passed, but with the two statutes that are in question, if they
24    continue to go on, they are impacting the future primary
25    elections, including the one in September 2024, and so

1    therefore it is not moot.

2        And the other objection I believe that they had was --

3    let me check real quick -- oh, that they mentioned that a prior

4    case in which I was involved was -- I'm thinking the -- I'm

5    trying to find the exact terminology for the estoppel, but,

6    because that subject matter was not properly argued, there was

7    not subject matter jurisdiction according to the Court, and so

8    that suit is, in essence, not an active suit, and so estoppel

9    does not apply.  I believe those were the two primary things

10   that they were objecting to.

11       THE COURT:  Okay.  So, why don't you go ahead and

12   explain to the Court what it is that you're seeking to do as it

13   relates to this amendment and why it is that you think you have

14   a basis to seek to amend at this juncture in the case.  Go

15   right ahead.

16       MS. TESTERMAN:  Okay.  The petitioners' complaint in

17   chief has always been against the Secretary of State's

18   intentional misapplication and total disregard for the two

19   state statutes governing the disposition of undeclared

20   registered voters and whether they are entitled to vote in the

21   New Hampshire State and Presidential Primaries.  The

22   petitioners recognize that they're not entitled to amend their

23   complaint as a matter of course but proffer it in order to

24   provide clarity as to the issues at hand and to the properly

25   named parties in this instant suit.  Because the codefendants

1    have stated that the original complaint was deficient and

2    lacked clarity on how that relief may be granted, therefore a

3    motion for leave to amend is warranted.

4           There are two state statutes governing the ability to

5    vote in the State of New Hampshire and their State and

6    Presidential Primaries.  The first statute governing voters in

7    New Hampshire primaries under RSA 654:34 establishes the change

8    of registration filing deadline for being publicly affiliated

9    with either the Democrat or Republican Parties as the first

10   Wednesday in June preceding a state primary.

11           The second statute governing the ability to vote in

12   the New Hampshire State and Presidential Primaries is under

13   659:14, and it establishes special provisions for those voters

14   desiring to vote at a state or Presidential Primary Election.

15   The second statute also goes on to say that, If the rules of a

16   party permit a person who is registered as an undeclared voter

17   to vote in the party's primary, any person desiring to vote in

18   that party's primary shall also announce the name of that party

19   at the time of announcing the person's name.  This is referred

20   to as an open primary declaration rule.

21           THE COURT:  Ms. Testerman, before you continue --

22           MS. TESTERMAN:  Yes.

23           THE COURT:  -- let me just stop you, because, if I

24   don't ask a question that comes to my mind right away --

25           MS. TESTERMAN:  Sure.

1          THE COURT:  -- it leaves my mind sometimes, okay?  And

2     I see that you've got very organized cards there, so I know

3     that if I stop your flow you're going to be able to know where

4     you are in your presentation.

5          MS. TESTERMAN:  Right.  Thank you.

6          THE COURT:  So, let me ask you this:  If I understand

7     correctly, what you've said is that, at least in part, your

8     amendment seeks to clarify certain issues or facts related to

9     the causes of action that you wish to bring.  Does it add new

10    claims, or is it just a clarification?

11         MS. TESTERMAN:  It does both.

12         THE COURT:  Okay.  So, can you focus in the first

13    instance on what it is that you are clarifying versus what it

14    is that you are adding that's new?  So, I just want to focus on

15    what is it that you believe is something that's clarifying

16    versus adding a new claim.

17         MS. TESTERMAN:  Okay.  So, one of the things that I've

18    done is I've made a chart, because it is a little bit

19    confusing, and I have copies.

20         THE COURT:  Okay.  Have defense counsel seen that

21    chart yet?

22         MS. TESTERMAN:  No.

23         THE COURT:  All right.  Why don't you show it to them.

24    I'm going to give them a little bit of time to review that

25    before I ask you to go there.  All right?

1          MS. TESTERMAN:  Would you like a copy?

2          THE COURT:  I'm going to let them look at it first and

3     see if they have any objection to me having that.  All right?

4          MS. TESTERMAN:  All right.

5          THE COURT:  So, while they're looking at that, let me

6     ask you one other question.  Are you saying that standing was

7     not argued in the first lawsuit, that that wasn't part of what

8     was considered by the Court?

9          MS. TESTERMAN:  Correct, ma'am.

10          THE COURT:  All right.  So, you're saying that that

11     was not argued in the first --

12          MS. TESTERMAN:  Oh, in the first?

13          THE COURT:  Yes.

14          MS. TESTERMAN:  You're talking about Testerman I?

15          THE COURT:  Correct.

16          MS. TESTERMAN:  Yes, standing was argued in that.

17          THE COURT:  Okay.  So, how is this case different?

18          MS. TESTERMAN:  So, this case is about whether

19     undeclareds can vote in the primaries as members of the party,

20     because the way that the interpretation is, is that, just

21     because they are five-minute Republicans, that they can vote in

22     the Republican Primary, and we're arguing that the way that the

23     statute is written is that only if a party has adopted a rule

24     can undeclareds vote in their primary.

25          THE COURT:  Okay.  But how is the standing issue

1  different in this lawsuit versus in the earlier suit?

2       MS. TESTERMAN:  Okay.  So, standing in the earlier

3  suit was denied, because at the time there were not the Supreme

4  Court decisions from the United States that gave standing to

5  the general public as a whole, and what we were arguing in the

6  first case was that, in fact, not enforcing the law as stated

7  impacted all voters; and Justice Laplante said that, because we

8  were applying it to all and not just to a specific group, that

9  it did not meet the requirements for standing.  And we're

10  arguing that now, because of <u>Moore v. Harper</u> and <u>Bruen</u> and

11  others, that it is up to the defendants to show us by what

12  authority they have not to enforce the law as written.

13       THE COURT:  Okay.  And your position on why these

14  claims are not moot, given that the Primary has already

15  happened?

16       MS. TESTERMAN:  The Presidential Primary has passed.

17       THE COURT:  Yes.

18       MS. TESTERMAN:  Yes.  But the issue of whether

19  undeclareds can vote in primaries without the permission of a

20  rule by the party is the question that we're raising.

21       THE COURT:  Okay.  So, it sounds like your claims as

22  to standing are the same arguments that you made before Judge

23  Laplante.  Didn't he consider the cases that you're asking me

24  to consider to establish standing in this case?

25       MS. TESTERMAN:  I believe it was questionable in the

1      response that he gave.  He said that he had looked at it but it

2      did not -- because we were arguing for the voters as a whole,

3      that it was not specific to our personal injury, and yet it

4      injures all voters, especially of the publicly affiliated party

5      members, to associate, and it was violating our First Amendment

6      right.  I don't know that that was brought up in the first

7      case, but that is something that we have, a First Amendment

8      right to assemble, and if we can't make our own decisions

9      accordingly -- and there is a case, in fact, called -- hang

10     on -- Fry versus Napoleon Community Schools in which a disabled

11     cerebral palsy child sued to have her service dog accompany her

12     while she attended public school.  The Supreme Court ruled that

13     the girl was not required to exhaust all administrative

14     remedies under the Handicapped Children's Protection Act of

15     1986 if she were entitled to invoke her several rights under

16     another federal statute.  And similarly to that --

17           THE COURT:  Isn't that an IDEA case?

18           MS. TESTERMAN:  Pardon me?

19           THE COURT:  Isn't that an IDEA case?

20           MS. TESTERMAN:  It is.

21           THE COURT:  Okay.  And so --

22           MS. TESTERMAN:  But the courts decided that our

23     argument is that, similar to that, the petitionerS should not

24     be required to wait for the resolution of our grievances under

25     the internal affairs of association with the Republican Party,

1      since we are entitled to invoke our civil rights under federal

2      statute.

3              THE COURT:  Okay.  But we're talking about standing.

4              MS. TESTERMAN:  Correct.

5              THE COURT:  Right?  So, you're saying that there's

6      something different about your status from a standing

7      perspective today than there was in the matter that you had

8      before Judge Laplante?

9              MS. TESTERMAN:  Yes.  Because of the Supreme Court

10     decisions that have come down, we now have, as a taxpayer, as a

11     voter, and as a member of a private organization, we do have

12     standing because we are being -- our votes are being diluted

13     and being misapplied.

14             THE COURT:  Okay.  So, what are the decisions that you

15     are relying on that you say came down after Judge Laplante's

16     ruling that affords you with standing?

17             MS. TESTERMAN:  The most recent one was last Friday,

18     which was Alexander versus -- I believe it was South Carolina.

19             THE COURT:  Okay.  So, the other question that I have

20     for you is are the claims that you are making today that you've

21     added -- you say there are additional claims in addition to

22     clarifications in your proposed amended complaint.  Are those

23     claims that you could have raised in your earlier complaint?

24             MS. TESTERMAN:  No, ma'am.

25             THE COURT:  All right.  And why is that the case?

1          MS. TESTERMAN:  Because in the original complaint we

2    were looking to the Court to make a decision about how the law

3    was being applied, and since then there have been personal

4    attacks, personal intimidation, threats, and removal from

5    office, et cetera, that personally impact us.

6          THE COURT:  Okay.  Is there anything else that you

7    want to address with the Court as it relates to your request

8    for leave to file your first amended verified complaint?

9          MS. TESTERMAN:  Well, a lot of what I was going to put

10   forward is the confusion that we have over the two statutes,

11   and I'm looking to ask the Court to please make a determination

12   about how those statutes ought to be applied.

13         THE COURT:  All right.  Well, I'm not here to deal

14   with the merits of your complaint today.

15         MS. TESTERMAN:  Correct.

16         THE COURT:  I'm focused on whether or not I should

17   give you leave to amend your complaint.

18         MS. TESTERMAN:  Correct.

19         THE COURT:  So, I'm not going to give you a ruling

20   today on how those laws interact with one another or how I

21   interpret them.  I'm focused on whether or not I should be

22   granting your request for leave to file an amended complaint.

23   So, I'd like you to focus on what the basis is for you to seek

24   amendment, and I understand that one is because you say you're

25   clarifying things that are in the original complaint.

1       MS. TESTERMAN:  Correct.

2       THE COURT:  And then you're telling me that you're

3   also adding new claims.  And so, I need to understand whether

4   those claims could have been brought in your earlier cause of

5   action, and you're saying you don't think they could have been,

6   and so I need to understand why.

7       MS. TESTERMAN:  Okay.  So, in the first situation we

8   were simply trying to find out whether -- because 659 says that

9   we are supposed to have closed primaries, we were under the

10  assumption that it should have been closed, and yet it appeared

11  that undeclareds were going to be allowed to vote.

12      THE COURT:  But isn't that all an issue that was

13  argued before?

14      MS. TESTERMAN:  That was the original issue, yes,

15  ma'am.

16      THE COURT:  Yes, before Judge Laplante.

17      MS. TESTERMAN:  No.  No, ma'am, that was not before

18  Judge Laplante.

19      THE COURT:  Okay.  That's the original issue here?

20      MS. TESTERMAN:  That's the original issue here.

21      THE COURT:  All right.  And so, what's changed, or

22  what is it that you're seeking to clarify?

23      MS. TESTERMAN:  Okay.  So, at that time we were just

24  simply trying to -- in January of 2023 there was a decision by

25  the Republican State Committee that they wanted the primary to

1    be closed.  When we filed our declaration asking for the

2    Court's opinion on that, the opposing defendants then filed a

3    request for a status hearing.  At that status -- in their

4    complaint in the status hearing they revealed how they were

5    using 654:34 to, in essence -- I don't want to say sidestep, I

6    don't want to say -- but in reality they were confusing the

7    public by actually holding an open primary, when, in fact,

8    under law it should have been a closed primary.  And so, at

9    that point that was something that was not included in the

10   first complaint.  We weren't even aware of it at that time.

11          And then, since that time we have also realized that,

12   on a careful reading of 654:34, that the undeclareds are given

13   superlative rights in the timing of when they can make a change

14   in their status.

15          So, according to the chart, which is why I put the

16   chart up there in the first place, because it is confusing, is

17   that prior to primary day the party affiliates, people who are

18   publicly affiliated with the party, a party, can change their

19   party registration prior to the first Wednesday in June prior

20   to the primary, but if you're an undeclared you can come in on

21   primary day and change your -- and draw a -- make a decision on

22   the ballot, but, according to 659:14, that's only if there's a

23   party rule that allows that.  And so, because of the confusion,

24   we would like to have the Court also clarify that.

25          And in the process as well what's being created is an

1    unequal voting rights privilege between the undeclareds and the

2    registered party -- publicly affiliated party members, and that

3    becomes a violation of our Equal Protection Clause of the

4    *United States Constitution* and becomes a conspiracy against the

5    petitioners' constitutional voting rights under U.S.C. --

6    18 U.S.C. 241 and 42 U.S.C. 1983, and it also allows the

7    undeclareds to affect the voting outcomes of state and

8    Presidential Primaries without first becoming publicly

9    affiliated with the party.

10          THE COURT:  Okay.  So, I'd like to hear from the

11   defendants as to whether they have any objection to the chart,

12   which I have not yet reviewed.

13          MR. O'DONNELL:  Your Honor, as I read this, it appears

14   to be legal argument regarding how these statutes are applied.

15   If the Court takes it as legal argument from the plaintiffs,

16   not as evidence, I have no issue with it being considered.

17          MR. ASPIRAS:  I agree, your Honor.

18          THE COURT:  Okay.  So, we're going to use it as a

19   piece of demonstrative evidence, for lack of a better word.

20   All right.

21          So, Mrs. Testerman, if you'd like to share a copy of

22   that chart with me, and then if there's anything that you'd

23   like to highlight in the chart, I did ask you to reserve

24   referring to it until after I had a chance to look at it, and I

25   understand that you created this to help the Court to follow

1    along.  So, go right ahead.

2         MS. TESTERMAN:  So, if you will -- I guess it would

3    help if I put it right side up.

4         THE COURT:  From where I was standing it looked good

5    either way; I couldn't tell the difference.  But I appreciate

6    it.  Now that I have it in front of me, it's going to be much

7    easier for me to follow along.

8         MS. TESTERMAN:  So, before the primary, under 654:34,

9    the publicly affiliated Republican members can change their

10   party affiliation prior to the first Wednesday of June, and

11   then they're not allowed to change their party affiliation

12   between the first Wednesday in June and the day before the

13   primary.  Now, they can go in on the day of the primary and

14   change their party affiliation, but they would not be allowed

15   to vote in that primary.  But if you're an undeclared, you can

16   go in on the day of the primary and change your party -- or ask

17   to be part of a party for five minutes, and then you can also

18   go out on the way out and re-declare as an undeclared, which,

19   to the plaintiffs' opinion, is that does not make you a

20   publicly affiliated party member, so therefore, according to

21   659:14, you shouldn't even be able to vote in the primary.

22        And so, that's where it becomes a little clearer, in

23   the fact that this is the way the Secretary of State interprets

24   it; this is the way the public and the plaintiffs are

25   interpreting it.

1          THE COURT:  Okay.  So, as I understand it, you want to

2     supplement your motion for leave with this document.

3          MS. TESTERMAN:  Yes, ma'am.

4          THE COURT:  Okay.  Is there any objection to

5     supplementing the motion to leave filed in this matter,

6     document number 31, to have this be a supplement to that?

7          MR. O'DONNELL:  No objection, your Honor.

8          MR. ASPIRAS:  No, your Honor.

9          THE COURT:  All right.  So, Mrs. Testerman, I will

10    have this supplement your filing, okay?

11         MS. TESTERMAN:  Thank you.

12         THE COURT:  All right.  Very good.  Before I turn it

13    over to counsel for the defendants, is there anything else that

14    you, Ms. Testerman, or anything that you, Mr. Testerman, would

15    like to add?

16         MR. TESTERMAN:  I don't have anything.

17         THE COURT:  Okay.  Very good.  All right.

18         MS. TESTERMAN:  I would like to add one other thing,

19    your Honor.

20         THE COURT:  Go right ahead.

21         MS. TESTERMAN:  Since this law, 659:14, was changed,

22    because of the Tashjian versus the Republican Committee of

23    Connecticut, the law was changed at that time, because up until

24    that time New Hampshire had open primaries and allowing

25    undeclareds to pull a ballot for either party on the day of the

1   primary, but in 1987 that law was changed, and it required a

2   letter from the party chair to notify the Secretary of State if

3   there had been a rule adopted that allowed the undeclareds to

4   pull a primary.  But in discussions and in their public

5   statements the Secretary of State and the Chairman of the party

6   have said that it is okay for them to continue the process as

7   they're doing it today, because it has been a matter of custom.

8   My argument is, is that custom does not mean that you can break

9   the law, and the law, as it's written, it needs to be complied

10  with.

11          Thank you.

12          THE COURT:  Okay.  Thank you very much.

13          All right.  So, I will give counsel for the defendants

14  each an opportunity to make their arguments.  I am particularly

15  interested in the standing issue and also the issues of *res*

16  *judicata* and collateral estoppel, but I will allow you to make

17  whatever additional arguments as well.

18          So, Attorney O'Donnell, I don't know if you want to

19  start first, and then I'll turn it over to Attorney Aspiras.

20          MR. O'DONNELL:  Thank you, your Honor.

21          THE COURT:  Thank you.

22          MR. O'DONNELL:  Just to start, and I'll be brief on

23  this point, the amendment is untimely, and I looked through the

24  amended complaint in detail, I was listening to Ms. Testerman's

25  arguments today, and I haven't identified any fact that

1   wasn't -- that postdates the filing of the original complaint.

2   So, the starting point is they didn't file a timely motion to

3   amend following our motion to dismiss, and I'm not seeing any

4   real reason why there was a delay in them doing that, but,

5   regardless, I want to focus most of my time on futility.

6          THE COURT:  Thank you.

7          MR. O'DONNELL:  The plaintiffs raise several claims in

8   their complaint regarding the participation of undeclared New

9   Hampshire voters in the 2024 New Hampshire Presidential Primary

10  Election.  Throughout the complaint there's no allegation that

11  the plaintiffs weren't allowed to vote; there's no allegation

12  that the plaintiffs weren't allowed to affiliate with the

13  political party of their choice; there's no allegation that any

14  other voter in New Hampshire voted more than once.

15         Rather, the crux of the plaintiffs' complaint, and I

16  think they even used that language, the "crux," is two New

17  Hampshire State procedural laws regarding how New Hampshire

18  Presidential Primary Elections are conducted.  Effectively,

19  they assert that the Secretary of State isn't following these

20  two New Hampshire State laws, and the result is that their

21  individual, as Republican Party voters, that their individual

22  votes are being diluted.

23         I'm going to go through each of their counts, but I

24  want to kind of organize it based on the counts in their

25  complaint.

1          THE COURT:  Okay.

2          MR. O'DONNELL:  So, Count One, that's just against the

3     defendant, Republican State Committee and Chair Ager, so I

4     won't address that one.

5          THE COURT:  All right.

6          MR. O'DONNELL:  But Counts Two, Three and Six are very

7     similar.

8          Count Two is that Secretary of State Scanlan failed to

9     follow RSA 654:34 to limit participation in the 2024 Primary

10    Election.

11         Count Three is that the defendants both violated RSA

12    654:34 by allowing undeclared voters to vote in the 2024

13    Presidential Primary Election.

14         And Count Six is that the defendants are erroneously

15    interpreting those same two State statutes, RSA 659:14 and RSA

16    654:34.

17         THE COURT:  Okay.

18         MR. O'DONNELL:  I only address this first argument

19    briefly, which can be the Eleventh Amendment in the objection,

20    but I think it's also relevant in terms of whether amendment

21    would be futile.

22         The Secretary of State is entitled to Eleventh

23    Amendment immunity because all three of these counts are

24    premised on the plaintiffs' allegation that a state official is

25    violating state law.  Now, in Pennhurst the Supreme Court ruled

1     that Eleventh Amendment immunity specifically applies in

2     situations like this, and they reasoned, quote, It is difficult

3     to think of a greater intrusion on state sovereignty than when

4     a federal court instructs state officials on how to conform

5     their conduct to state law.

6            The plaintiffs haven't identified any federal statute

7     or federal law that requires New Hampshire Presidential Primary

8     Elections to be closed to voters who are not affiliated with

9     that party primary prior to the day of the election.  Put

10    differently, they haven't identified any federal law that says

11    someone who is an undeclared New Hampshire voter can't register

12    as a member of a party on the day of a primary election and

13    vote that party's primary ballot.  Rather, their claim is that

14    a state official, the Secretary of State, is not complying with

15    a state law requirement, 654:34 and 659:14.  It's clear in

16    paragraphs 14 to 19 of the amended complaint, that's the

17    beginning of their statement of the facts, and they walk

18    through these statutes.

19           In paragraph 40 of the amended complaint they call it

20    the, quote, main crux of the complaint, and I'm paraphrasing a

21    bit, but has been and continues to be the Secretary of State's

22    interpretation of those two statutes.

23           When Ms. Testerman was speaking just a minute ago, she

24    again repeatedly referred to and asked this Court to issue a

25    ruling about how the Secretary of State ought to be applying

1    these two state laws.

2          Reading the amended complaint as a whole, the Eleventh

3    Amendment is going to bar the claims, these three claims,

4    against the Secretary of State, which makes the amendment

5    futile.

6          THE COURT:  Okay.

7          MR. O'DONNELL:  Next, I want to turn to mootness, and

8    it sort of pairs with lack of redressability.  The 2024

9    Presidential Primary Election had already occurred.  Votes were

10   already cast, votes were already counted.  There is no relief

11   from this Court that will be able to redress the plaintiffs'

12   alleged injury of having their primary votes diluted by the

13   participation of previously undeclared voters who attended the

14   primary, declared Republican and voted.

15         There are two types of relief that the plaintiffs

16   assert in their amended complaint.  The first is declaratory

17   judgment that voters unlawfully participated in that January

18   23rd, 2024 election, and they say the injury is, in paragraph

19   47, more relevant than ever.  Well, that election happened,

20   and, to the extent there was vote dilution of their votes,

21   retroactive declaratory judgment regarding unlawfulness, that's

22   not going to redress the plaintiffs' alleged injury.

23         The second type of relief the plaintiffs ask for in

24   the amended complaint is mandamus relief, compelling the

25   Secretary of State to instruct the New Hampshire Democratic

1   Party and the New Hampshire Republican State Committee

2   regarding participation of undeclared voters in future primary

3   elections, and this Court's ability to issue a mandamus relief

4   comes from 28 U.S.C. 1361.  It's limited to mandamus relief

5   against federal officials, employees; it does not apply to

6   Secretary of State Scanlan.  And so, that relief is not

7   something the Court can grant that would remedy the plaintiffs'

8   alleged vote dilution injury related to that primary.

9       Perhaps the next piece, lack of standing regarding a

10  cognizable injury -- and this piece Judge Laplante addressed to

11  an extent.  I reread Judge Laplante's order in that case,

12  which, for the record, is 23-cv-499, and he begins by more

13  broadly describing the plaintiffs' claims and the

14  jurisdictional question as the plaintiffs and whether they have

15  standing to contest, quote, State Presidential Primary Election

16  rules allowing voters to change their party affiliations before

17  the Primary Election.

18      And so, there is a slight difference between the

19  claims in that case, which is whether or not voters could

20  change their party affiliation prior to a statutory cutoff

21  date, that June deadline and a party primary, and a part of the

22  plaintiffs' amended complaint, which additionally deals with

23  undeclared voters participating in a primary on Election Day by

24  following the process in RSA 654:34, paragraph II.

25      However, I think the core part of Judge Laplante's

1    analysis still applies here.  The core injury from undeclared

2    voters being allowed to participate in the primary is alleged

3    dilution of the plaintiffs' votes by the votes of other people

4    that they don't believe should be voting in that primary.

5    Those are the same ultimate injury that Judge Laplante looked

6    at in which he cited both primarily would be Raffensperger and

7    Lyman v. Baker, in ruling that that is not a sufficiently

8    concrete particularized injury belonging to the plaintiffs that

9    is sufficient to confer Article III standing.

10            The plaintiffs, the way they pleaded the amended

11   complaint in this case, is very similar.  They, again, refer to

12   themselves as individual Republican voters, they, again, allege

13   that state officials not following state law has led to the

14   dilution of their votes by the participation of certain other

15   people in the Republican Presidential Primary Election, but

16   Judge Laplante's standing analysis applies with equal force.

17   I'd also say I reviewed the amended complaint, and I don't see

18   any factual allegations that differ from the original complaint

19   in that other case in the sense that the plaintiffs haven't

20   pled any particularized individual injury throughout this new

21   amended complaint.  It continues to be about the overall

22   administration of New Hampshire's election, which is a

23   generalized injury, not a personal injury.

24            And my last point for the Court is that I believe the

25   amended complaint also fails to state a claim as a matter of

1   law, and the key contention is that they don't believe an

2   undeclared New Hampshire voter -- that State law they believe

3   prohibits them from attending a primary and participating in a

4   primary election on the date of the primary.  And, although

5   they don't cite the specific provision, in 654:34 it's

6   paragraph II (b).  Paragraph II is titled or says, Change of

7   registration of a voter who has been registered as an

8   undeclared voter, and (b) says, A voter may also register as a

9   member of a party at any primary by requesting to be registered

10  as a member and voting the ballot of the party of the voter's

11  choice.  In other words, what that's saying is undeclared

12  voters are not participating in party primaries.  An undeclared

13  voter has the ability to affiliate with the party on the date

14  of the election and vote in the primary.  So, the conduct, the

15  ultimate conduct that the plaintiffs complain about, state law

16  expressly allows that to occur, which is why their claims fail

17  as a matter of law, even if you look at the state statutes at

18  issue.

19          THE COURT:  Thank you.  Do you have anything that you

20  want to add in response to plaintiffs' citation to Alexander

21  versus South Carolina as somehow being new law that takes this

22  out of what Judge Laplante was dealing with in the earlier

23  case?

24          MR. O'DONNELL:  I think I skimmed it earlier last

25  week.  I didn't realize it was going to be brought up in this

1    case, so I'm not prepared to speak to it.

2           THE COURT:  That's fine.

3           MR. O'DONNELL:  What I will say is, at least with the

4    Judge Laplante case, when each party was sort of giving their

5    final argument the plaintiffs in that case, which included

6    Wayne Saya, Karen Testerman and Lynn Briggs, they cited some

7    United States Supreme Court cases, I believe it was <u>Bruen v.</u>

8    <u>New York Rifle & Pistol</u> and <u>Moore v. Harper</u>, and what Judge

9    Laplante, my recollection, and I haven't reviewed the

10    transcript, is that he said he was prepared to rule from the

11    bench, but that he would take the matter under advisement so he

12    could review those statutes in more detail -- or, sorry --

13    those cases.

14           To the extent those are the cases the plaintiffs are

15    referring to, there's no reason they could not have been

16    included in the original complaint or cited more specifically

17    in the amended complaint, and the South Carolina case would

18    have come out after the plaintiffs' amended complaint, so I

19    don't understand how it would be a basis for the amended

20    complaint.

21           THE COURT:  Okay.  All right.  That's helpful.  Thank

22    you.

23           MR. O'DONNELL:  Thank you.

24           THE COURT:  Attorney, Aspiras.

25           MR. ASPIRAS:  Thank you, your Honor.  Just briefly on

1    the standing issue, I agree with my colleague that

2    fundamentally this is a vote dilution case, and so I think the

3    analysis in Judge Laplante's order applies equally here.

4           I do want to, in all candor, bring something to the

5    Court's attention, and I can't recall off the top of my head

6    whether this was a state case or a federal case, but I vaguely

7    recall looking at a similar issue recently, and, if my

8    recollection is correct, it may be that *res judicata* does not

9    apply here, because a judgment of dismissal for lack of

10   standing is not considered a judgment on the merits.  But I do

11   not have a citation for that.  I just wanted to bring that

12   issue to the Court's attention, since it was my filing that

13   raised *res judicata.*  Fundamentally, the analysis would be the

14   same, and, as we have discussed here today, I think Judge

15   Laplante's order and I think reasoning would apply equally to

16   the facts as alleged in the amended complaint.

17          THE COURT:  Okay.  All right.  So, you also raise the

18   issue of collateral estoppel.

19          MR. ASPIRAS:  Yeah, and I would need to look at that

20   as well.  Collaterally estoppel is similar to *res judicata*.  I

21   believe it also requires a judgment on the merits.  Obviously,

22   the issue was decided in the other case, but I would suspect

23   that, if it doesn't qualify as a final judgment on the merits,

24   then collateral estoppel also would not apply.

25          THE COURT:  All right.  So, you're suggesting that the

1    Court may need to revisit the standing issue?

2         MR. ASPIRAS:  Would probably need to issue an order

3    addressing the standing in a fulsome way, in the way that Judge

4    Laplante did.  Yes.

5         THE COURT:  Okay.  All right.

6         MR. ASPIRAS:  And, certainly, if the Court wants

7    further briefing from the parties on that particular issue, if

8    that's where the Court's going, I'm happy to do that.  I know I

9    didn't really delve into it too deeply in our motion, given

10   Judge Laplante's existing order.

11        THE COURT:  What we can do is, after we get to the

12   conclusion of everyone's arguments, we can talk about whether

13   that's something that the Court would find helpful.  So, go

14   right ahead.  And thank you for bringing that to my attention.

15        MR. ASPIRAS:  Absolutely, your Honor.

16        So, without -- I'm not going to repeat the arguments

17   that have already been made.  I do want to focus on some issues

18   specifically related to my clients, and my clients are,

19   obviously, private parties, right?  And so, fundamentally, if

20   we look at some of the counts that are alleged just against

21   what I'll call the party defendants, there's a standing issue

22   or perhaps a nonjusticiability issue, just because we're

23   dealing with an association, right?  Fundamentally we're

24   dealing with a private association, and if we dig down separate

25   and apart from the declaratory or other relief that the

1    plaintiffs are seeking against the state in terms of how the

2    state conducts the primary, to the extent there's separate

3    relief being sought against the party defendants, and I'll note

4    that in the prayer for relief there isn't actually a separate

5    request for relief that would appear to apply specifically to

6    the party defendants, but, if we give them the benefit of the

7    doubt and read the counts that specifically allege things

8    against the party defendants, this Court couldn't grant that

9    relief.  Essentially, it would be the Court reaching into the

10    internal practices and policies of the party and causing the

11    party to make a decision that, frankly, even if you accept as

12    true the plaintiffs' complaint, the party considered and

13    rejected, right?

14          And so, under New Hampshire state law, we refer to

15    that as the Bricker doctrine.  I also cite a First Circuit case

16    that says courts generally will not interfere with the internal

17    affairs of a voluntary association absent mistake, fraud,

18    collusion or arbitrariness, and, as I note in the objection,

19    the plaintiffs' amended complaint actually includes as exhibits

20    email communications, meeting minutes and other information

21    which clearly demonstrate that she and the other plaintiff

22    raised this issue internally with the party, the party

23    considered it, and the party simply did not do what the

24    individual plaintiffs wanted it to do.  For this Court to

25    override the group or the Association's decision in that regard

1   would obviously essentially violate the parties' freedom of

2   association at that point.  I'm happy to talk about that

3   concept in more detail, but it's outlined in our objection, and

4   I think it speaks for itself.

5        In terms of the specific counts that have not been

6   addressed yet, Count One is specific against the party

7   defendants, specifically Defendant Ager, in terms of asserting

8   a breach of fiduciary duty.  I note in the objection there's

9   insufficient facts in the complaint for this Court to ever find

10  that there was a fiduciary duty owed from him to the individual

11  plaintiffs.  Even in his role with the state party, that duty

12  would be owed to the party entity, the corporation, not to even

13  an individual member of that corporation, much less an

14  individual Republican voter.

15       The conspiracy counts, Count Three, Four and Five I

16  don't believe were addressed yet.  As the Court's aware, a

17  civil conspiracy requires active collusion, a concerted effort

18  between two or more parties to accomplish an unlawful purpose.

19  The complaint, even read liberally in the plaintiffs' favor,

20  simply alleges that both the Republican Party and the Secretary

21  of State reached essentially the same conclusion about what

22  state law applies.  It doesn't allege any facts to show that

23  there are backroom dealings or any active communications or

24  conspiracy to commit any unlawful act.  And so, those civil

25  conspiracy claims fail to state a claim for relief.

1          Count Six appears to sound in Equal Protection.  This

2     was addressed briefly already, but essentially it's a vote

3     dilution claim wrapped up in the cloak of Equal Protection.

4          The plaintiffs in this case were not denied their

5     right to vote.  As I indicated in the objection, they have just

6     as much right to do what the statutes permit undeclared voters

7     to do, right?  And so, there is no equal protection claim here.

8     The plaintiffs have chosen to publicly affiliate and register

9     as Republican voters.  They can vote in the Republican primary.

10    If they wanted to, they could choose to renounce that

11    affiliation and become undeclared, and they would be subject to

12    the same laws as any other undeclared voter in the State of New

13    Hampshire.  And so, for that reason there isn't any cognizable

14    Equal Protection claim.

15         I don't have anything further for the Court, although

16    I'm happy to answer any questions.

17         THE COURT:  Okay.  I don't think I have any right now.

18         I do have some questions for the Testermans.  So, I

19    didn't ask you to respond to the Bricker doctrine arguments,

20    but I would like you to add anything that you might have as it

21    relates to that.  So, I'm going to give you a few minutes to go

22    through your notes, and I'm happy to hear from you.

23         MS. TESTERMAN:  Thank you, your Honor.  Specific to

24    the Bricker, counsel for the New Hampshire State Committee is

25    incorrect in his assertion that Bricker is controlling in that

1   the controversy is not limited to internal affairs of

2   associations but as to the constitutional right of all primary

3   voters, whether they be Democrat or Republican primary voters,

4   entitled to freedom of association with like-minded voters.

5   Also, the reference to the New York State Board of Elections

6   versus Torres is also misplaced for the same reasons.

7          I'd also like to address the amended complaint issue

8   that counsel brought forward, saying that we did not do it

9   within the proper 21 days as according to Rule 21, but the

10  amended complaint can be served or submitted if the opposing

11  counsel has not yet answered in any objection.

12          THE COURT:  Well, they filed a motion to dismiss, so

13  that gave you 21 days to file an amended complaint -- excuse me

14  -- after they filed their motion to dismiss.  They don't have

15  to file an answer and a motion to dismiss.  They filed a motion

16  to dismiss.  That was their responsive pleading.

17          MS. TESTERMAN:  Okay.  All right.

18          THE COURT:  Okay?  So, what they're saying is you

19  don't have the ability to file a motion as of right, and that's

20  why you filed a motion for leave, I take it.  Right?

21          MS. TESTERMAN:  Correct.  Yes.

22          THE COURT:  And so, the timeliness issue then puts a

23  burden on you to demonstrate to the Court that there's a basis

24  for the amendment, and so that's I think the position.

25          Do I have your arguments correct, Attorney O'Donnell,

1    in terms of what your concerns are, to the extent that --

2    they've withdrawn the earlier -- the amendment, document number

3    37, so now we're just focused on their request to amend, and

4    you're saying they just simply haven't established a basis for

5    me to grant their request for leave.

6              MR. O'DONNELL:  Correct, your Honor.  They don't have

7    the right as a matter of right to amend their complaint, so

8    they have to justify when amendment is proper.

9              THE COURT:  All right.  So, procedurally we're in the

10   right place now, because your motion for leave is before me.

11             MS. TESTERMAN:  Correct.

12             THE COURT:  So, what I understand you saying is that

13   you don't believe that the <u>Bricker</u> doctrine controls, that this

14   is something larger than asking the Court to get involved in

15   the internal workings of a political organization.

16             MS. TESTERMAN:  Correct.

17             THE COURT:  Okay.  And the basis that you're saying

18   that is that you say there are federal rights that are

19   implicated.

20             MS. TESTERMAN:  Correct.

21             THE COURT:  All right.  But the chart that you gave me

22   that you've supplemented your complaint with focuses on state

23   laws, right?

24             MS. TESTERMAN:  It does.  However, because we're

25   talking about primaries where federal officials are being

1  selected, it does impact the federal laws, I mean, the federal

2  situation.  We're talking about the nomination for a

3  Presidential candidate, we're talking about Congressional

4  delegations in both cases.  And so, this is an issue that's

5  going to continue on until it gets resolved, and our right to

6  associate is being violated, and our right to decide the

7  parameters on which someone can participate is being violated.

8  THE COURT:  Okay.

9  MS. TESTERMAN:  And as for personal injury, I

10  personally have been vilified in the press as well as removed

11  from office because of a violation of -- being a whistleblower,

12  in essence, and asking the Chairman of the Party, who is a

13  state player because he is named in 659:14, that it is his

14  responsibility to notify the Secretary of State.

15  THE COURT:  Okay.  Anything else?

16  MS. TESTERMAN:  No, ma'am.

17  THE COURT:  Mr. Testerman, did you have something you

18  wanted to add?

19  MR. TESTERMAN:  No, ma'am.

20  THE COURT:  Okay.  I just want to review the prayers

21  for relief just for a moment, if you'll give me a moment to do

22  that again.

23  (Pause)

24  THE COURT:  All right.  So, I do want to ask the

25  plaintiffs one other question as it relates to the request for

1    a writ of mandamus.  You heard the arguments that were made by

2    opposing counsel as it relates to that, that this Court's

3    ability to grant mandamus relief is limited to the conduct of

4    federal officials only.  Do you have a response to that?

5         MR. TESTERMAN:  I have a question.  Is the Secretary

6    of State, in effect, part time a federal official?

7         THE COURT:  Well, is that your argument?  I don't give

8    legal advice, so I can't help you with that.  So, is your

9    thought that that's an argument that you've made?  I can't

10   answer that question for you in this context.  Is that an

11   argument that you've made that you would like the Court to find

12   or explore?  Is that the argument?  Is that the basis for your

13   mandamus relief, that somehow the Secretary of State has a

14   status as a federal official?

15        MR. TESTERMAN:  I do believe that.

16        THE COURT:  All right.  So, that's the basis.  All

17   right.  Thank you.  I'm glad I asked the question.

18        And let me just clarify again, Ms. Testerman, since

19   you made the argument, that Prayer for relief C, which says,

20   GRANT under a private attorneys general theory costs and fees

21   as damages in this matter, that's a separate cause of action?

22        MS. TESTERMAN:  Yes, ma'am.

23        THE COURT:  Okay.  And what's the statutory authority

24   for that, if you have any?

25        MS. TESTERMAN:  I don't remember exactly where I got

1    that exact --

2            MR. ASPIRAS:  Your Honor, I believe it is referenced

3    at paragraph 53 of the complaint.

4            THE COURT:  54?

5            MR. ASPIRAS:  53.

6            THE COURT:  53.  All right.  I missed it there as I

7    was going through.  All right.  I see it here.  42 U.S.C. 1988?

8            MS. TESTERMAN:  Yes.

9            THE COURT:  Okay.  Thank you.  All right.

10                           (Pause)

11           THE COURT:  So, the one other thing that I'm just

12   noticing, I should have asked about it earlier, I'm noticing

13   that, Mr. Testerman, you've submitted your pleading and

14   identified as filing as the New Hampshire State Representative

15   for Merrimack County District 03; and that you, Ms. Testerman,

16   have signed the proposed amended verified complaint as:  both

17   individually and as former New Hampshire Merrimack County

18   Republican Committee Chair.

19           Is there something about those statuses that is of

20   significance in terms of your standing arguments as opposed to

21   the status that you may have filed your earlier claims either

22   with Judge Laplante; to the extent that I find that there is a

23   basis for collateral estoppel, is there something else of

24   significance that the Court should glean from the way that that

25   has been filed, in particular, since one of you has filed both

1    individually and as a former chair, and the other simply has

2    filed as the New Hampshire State Representative?

3           MS. TESTERMAN:  At the time that we filed the original

4    complaint, ma'am, I was the Chairman of the Merrimack County

5    Republican Party.  We had had a meeting as our Committee, and

6    we had decided that one of the things that we wanted to do was

7    to take action, if the opportunity afforded us, to ask the

8    Chairman to work with the Secretary of State to enforce 659:14

9    and have a closed primary, as we understood a closed primary to

10   be, and since that time I've been hostilely removed from that

11   position, and so that's why I'm a former.  At the time we filed

12   the original complaint we had four complainants, plaintiffs,

13   three of which were Merrimack County members, and one of which

14   was a Belknap County member.  Two of those members withdrew

15   voluntarily because of intimidation and threats.

16          THE COURT:  They are not in this lawsuit, so I'm

17   focused on the two of you.  So, what I'm trying to understand

18   is, is there something about those statuses that you believe

19   provide you with the ability to bring claims on behalf of other

20   voters?

21          MS. TESTERMAN:  Yes, ma'am.

22          THE COURT:  Okay.

23          MS. TESTERMAN:  Because at the time we, or at least I

24   was representing my constituency, my members of my Committee,

25   as well as members of the State Committee, when they passed the

1   resolution saying that they wanted it reinforced, that we would

2   have only Republican -- publicly affiliated Republicans voting

3   in our primary.

4           THE COURT:  Okay.  But those resolutions that you're

5   talking about, those are things that were happening

6   internally --

7           MS. TESTERMAN:  Correct.

8           THE COURT:  -- within your Committee, correct?

9           MS. TESTERMAN:  Correct.  But they do apply to the

10  state law that says that, if a rule permitting undeclareds to

11  participate in the primary, that the Chairman would notify the

12  Secretary of State.

13          THE COURT:  Okay.  So, you're saying that didn't

14  happen.

15          MS. TESTERMAN:  No, ma'am.

16          THE COURT:  All right.  And that's your interpretation

17  of the state law, correct?

18          MS. TESTERMAN:  Correct.

19          THE COURT:  I haven't made an interpretation yet, to

20  the extent that I do.

21          All right.  So, the other thing that I just want to

22  make sure that I'm clear about, this amended complaint, that

23  doesn't contain any claims that relate to your removal from any

24  positions that you held within the Committee; is that correct?

25          MS. TESTERMAN:  That's correct, because the whole

1    intent was never to sue anyone but to simply get clarification

2    on how these laws apply to federal laws or federal processes,

3    and it was only after that, and it's not a personal thing, that

4    should be -- was ever intended to be brought forward.

5              THE COURT:  Okay.  Thank you.  I appreciate that.

6              Anything further from the defendants?

7              MR. O'DONNELL:  Nothing further, your Honor.

8              MR. ASPIRAS:  Nothing, your Honor.

9              THE COURT:  All right.  Very good.

10             So, there was a suggestion that the parties might wish

11   to do some further briefing.  I'm happy to receive further

12   briefing if any of the parties want to file something on their

13   own that they think they want to delve into further.  I can

14   tell you that if I -- I'm going to take this under advisement.

15   As I go back through it again, if something causes me to say I

16   think I need more information, I'm not going to rule without

17   giving you an opportunity to do that.  I think that probably

18   makes more sense than having you guess as to what I might need,

19   or you may end up briefing a bunch of things that I never

20   reach.  Okay?

21             So, here's what I intend to do:  I appreciate your

22   time today very much.  I appreciate everyone's effort in being

23   here today and being prepared to address the questions that I

24   had.  So, thank you for that.

25             I will take this matter under advisement.  If I

1   determine that some additional briefing would be helpful to the

2   Court, I'll issue a very short ruling.  I'll do it on a tight

3   time frame; so that what I may do is just have everyone submit

4   a responsive pleading that goes to whatever my question is and

5   then give you a brief period of time to respond to whatever the

6   other side filed.  Okay?  All right.  Thank you for your time

7   today, unless there's anything else that you need to address

8   that you've thought of.

9           Anything else on the part of the Testermans?  No.  All

10  right.

11          So, we're adjourned.  Thank you.

12          MR. ASPIRAS:  Thank you, your Honor.

13          THE CLERK:  All rise.

14      (WHEREUPON, the proceedings adjourned at 3:15 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1
                     C E R T I F I C A T E

2

3

4
        I, Brenda K. Hancock, RMR, CRR and Official Court

5
Reporter of the United States District Court, do hereby certify

6
that the foregoing transcript constitutes, to the best of my

7
knowledge, skill, ability and belief, a true and accurate

8
transcription of the within proceedings.

9

10

11

12

13
Date: ___6/14/24_____     */s/ Brenda K. Hancock*

14
                            Brenda K. Hancock, RMR, CRR
                            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25