IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

KAREN TESTERMAN, ET AL.

PETITIONER(S),

v.

Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

RESPONDENT(S).

---

### PETITIONERS' THIRD EMERGENCY MOTION FOR INJUNCTIVE RELIEF

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Petitioners"), pursuant to Fed. R. Civ. P. 65 (a), and respectfully submits this Third Emergency Motion for Injunctive Relief, and requests a HEARING on the matter at the earliest possible time, stating as follows:

**Stage of the Proceedings:**

1.     On January 22, 2024, the Petitioners filed an Original Complaint as a "Complaint for Declaratory and Injunctive Relief." *See* Doc. No. 1. The Petitioners also filed an "Emergency Motion for Injunctive Relief." *See* Doc. No. 2.

2.  Also on January 22, 2024, this Honorable Court denied the First Emergency Motion for Injunctive Relief, because the Petitioners failed to include an Affidavit with their Motion, pursuant to Rule 65(b)(1)(B).  <u>See</u> Order – Doc. No. 4.

3.  On January 23, 2024, the Petitioners filed a Second Emergency Motion for Injunctive Relief.  This time, the petitioners provided an Affidavit and proper notice to the named Co-Defendants.  <u>See</u> Doc. No. 5.

4.  Also on January 23, 2024, this Honorable Court again denied the Motion for Injunctive Relief.  This time, stating that in the Original Complaint: "<u>None of the plaintiffs' claims allege that their own constitutional rights have been violated</u>."  <u>See</u> Order – Doc. No. 7, pg. 2.

5.  Because of the deficiencies in the Original Complaint and the necessary inclusion of the New Hampshire Republican State Committee (NHRSC) as an additional co-defendant, the Petitioners filed for Motion for Leave to File an Amended Complaint.  <u>See</u> Doc. No. 31.

6.  On May 30, 2024, The Court had a hearing on the Motion for Leave to File an Amended Complaint.  <u>See</u> Docket Entry dated 05/30/2024.

7.  At the conclusion of the motions hearing, Magistrate Johnstone stated that she would take the testimony and hearing exhibits under advisement and if there were further questions of the court, would give the parties an opportunity to respond.  <u>See</u> <u>Transcript of May 30, 2024, Hearing, pgs. 39: 9 - 25; 40: 1 - 8.</u>

**Argument**

8.  The Petitioners request that this Court IMPOUND the votes of Undeclared Voters from being tabulated with the "publicly affiliated" Republican voters, until such time as this matter is fully resolved.

9.   Pursuant to Fed. R. Civ. P. 65 (b), the Affidavit of Karen Testerman accompanies this Motion. *See* Exhibit A.

10.  In determining whether to grant an injunction, this Court considers five basic factors: (1) likelihood of success on the merits; (2) immediate irreparable injury; (3) substantial harm to others; (4) the balance of the equities; and (5) in the public interest. *See* League of Women Voter of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014).

11.  The Petitioners would proffer for judicial notice, under FRE 201 (c) (2), that the New Hampshire State Primary Election is currently scheduled for September 10, 2024. *See* https://www.sos.nh.gov/elections/2024-2025-political-calendar.

12.  The Petitioners again find themselves arguing that their constitutional rights will be violated, **in less than sixty days**, if the Secretary of State is allowed to confer on Undeclared Voters the same right to vote in the New Hampshire Republican State Primary Election as other registered Republican voters without having first met the "public affiliations" requirement.

13.  As the Petitioners have previously argued, to prevent "party raiding" – a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary – a state may require party registration for a reasonable period of time before a primary election. *See* Rosario v. Rockefeller, 410 U.S. 752 (1973); *Cf.* Kusper v. Pontikes, 414 U.S. 51 (1973); *see also* Am. Compl. ¶¶ 31 – 32.

14.  Allowing Undeclared Voters to become "same-day Republican party members" violates the constitutional rights of the Petitioners to freedom of association to gather with fellow New Hampshire Republican Party members as they wish to choose a candidate-selection process that will produce the nominee who best represents its political platform. *See* Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008); 34 CFR § 9032.7 (a) (4).

Petitioner's Third Emergency Motion for Injunctive Relief - 3

15. In the NEW HAMPSHIRE ELECTION PROCEDURE MANUAL (*See* Exhibit B), pages 48 – 49, published by the New Hampshire Secretary of State, Undeclared Voters *are given superlative rights* over registered Democratic and Republican primary members, because the Undeclareds are allowed to choose on Primary Day which party ballot they wish to select, while on Primary Day, Democratic and Republican Party members are restricted to the party affiliation that the voters declared under the "party affiliation" deadline of N.H. RSA § 654:34, (I) (a) (1).

16. This creates an *unequal voting rights privilege* between Undeclareds and registered party members, in violation of the Equal Protection clause of the U.S. Constitution. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *See* City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).

17. Therefore, under the Secretary of State's interpretation of N.H. RSA § 654:34, the state law is unconstitutional as applied.

18. And, the actions (or inactions) of the co-defendants to correct the violation becomes a conspiracy against the Petitioners' constitutional voting rights, under 18 U.S.C. § 241 and 42 U.S.C. § 1983, because they are being denied their constitutional rights under color of law. And it also allows Undeclareds to affect the voting outcomes of state and presidential primaries without first becoming "publicly affiliated" with a political party.

19. The U.S. Supreme Court stated in *Ex Parte Young*, an unconstitutional state statute is **void**, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." *See Ex Parte Young*, 209 U.S. 123, 159 - 60 (1908).

20. If the state law in which the Secretary of State seeks to enforce be a violation of the Federal Constitution, "the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and <u>he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States</u> (emphasis added)." <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 680 (1974) (<u>citing</u>) <u>Ex Parte Young</u>, 209 U.S. 123, 159-60 (1908).

21. The Petitioners assert that the co-defendant David Scanlan is acting *ultra vires*, acting neither as a state employee nor in proxy as a federal official, and should be stripped of any Eleventh Amendment immunity because his actions are clearly outside the scope of his office.

22. <u>Young</u> also held that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent <u>a continuing violation of federal law</u> (emphasis added)." <u>See</u> <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985) (<u>citing</u>) <u>Ex Parte Young</u> at 155-56.

23. The Petitioners <u>will likely succeed on the merits</u> of this case, because previous U.S. Supreme Court decisions favor the Petitioners' position that same-day party registration of Undeclared Voters violates the Petitioners' rights of freedom of association with fellow "publicly affiliated" Republican voters in where that party registration must be for a reasonable period of time before a primary election. <u>See</u> <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973).

24. Unless this Court grants an immediate injunction, the Petitioners will suffer an <u>immediate, irreparable injury</u>, if Undeclared Voters are allowed to improperly affect the outcome of the <u>upcoming September 2024 state primary</u>, and <u>future</u> state and presidential primaries, despite the Supreme Court's clarifications in <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973); <u>Eu v. San Francisco County Democratic Central Comm.</u>, 489 U.S. 214, 224 (1989); <u>Tashjian v.</u>

Republican Party of Connecticut, 479 U.S. 208, 214 (1986); and Clingman v. Beaver, 544 U.S. 581, 592 (2005).

25.     The Petitioners also argue that not granting the injunctive relief will impose substantial harm to others, including party members of both the Democratic and Republican parties, in which Undeclared Voters will dilute the outcomes of their primary elections.

26.     The Petitioners argue that the "balance of the equities" to IMPOUND the votes cast by Undeclared Voters in both the Democratic and Republican State primaries favors the Petitioners and fellow party members who have been registered with their respective political parties for a reasonable period of time before a primary election.  This relief is precautionary and can cause no permanent harm because of the impounding; while on the other hand, failure to order impounding represents fundamental irreversible harm to the democratic voting process.

27.     And finally, it is in the public interest to grant this relief to protect the integrity of the election process from outside election interference, which is a foundational pillar of our country's structure upholding Constitutional freedoms, duties, and privileges.

WHEREFORE, the Petitioners respectfully request that this Court:

- GRANT a HEARING on the matter at the earliest possible time;

- IMMEDIATELY and *EX PARTE* IMPOUND the votes of Undeclared Voters from being tabulated with the "publicly affiliated" Republican voters, until such time as this matter is fully resolved; and

- For such other and further relief as is just and proper.

Respectfully Submitted,

|  |  |
|---|---|
| Dated: July 18, 2024 | DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*<br><br>By: /s/ David K. Testerman<br>David Testerman, *pro se*<br>Dave@sanbornhall.net<br>9 Stone Avenue<br>Franklin, New Hampshire 03235<br>(603) 320-9524 |
| Dated: July 18, 2024 | KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*<br><br>By: /s/ Karen Testerman<br>Karen Testerman, *pro se*<br>karen@karentesterman.com<br>9 Stone Avenue<br>Franklin, New Hampshire 03235<br>(603) 934-7111 |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent <u>by regular mail</u> and by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH 03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Attorney Bryan K. Gould
c/o CLEVELAND, WATERS, AND BASS, P.A.
2 Capitol Plaza
Concord, NH 03302-1137

Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated: July 17, 2024

Karen Testerman, *pro se*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

KAREN TESTERMAN, ET AL.

PETITIONER(S),

v.

Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

RESPONDENT(S).

## PETITIONER'S AFFIDAVIT IN SUPPORT OF THIRD EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Karen Testerman being duly sworn deposes and says as follows:

1. I am a petitioner / plaintiff in the above action.

2. I offer this affidavit based upon my personal knowledge in this matter.

3. I am a registered member of the Republican Party of New Hampshire.

4. At the time of the filing of this Complaint, I was also the duly-elected Chair of the Merrimack County Republican Committee.

5. I attest to the Statement of Facts, enumerated as ¶¶ 14 – 30 in the First Amended Complaint, as to be True and Correct to the best of my knowledge.

6. I find that my constitutional rights will again be violated <u>in less than sixty days</u>, if the Secretary of State is allowed to confer on Undeclared Voters the same right to vote in

Affidavit - Karen Testerman in Support of - Third Emergency Motion for Injunctive Relief - 1

the New Hampshire Republican State Primary Election as other registered Republican voters without having first met the "public affiliations" requirement.

7. Allowing Undeclared Voters to become "same-day Republican party members" violates my constitutional rights to freedom of association, as described in Rosario v. Rockefeller, 410 U.S. 752, 761-62 (1973).

8. Unless this Court grants an immediate injunction, I will suffer an immediate, irreparable injury, if Undeclared Voters are allowed to improperly affect the outcome of the upcoming September 2024 state primary.

9. This requested relief is precautionary and can cause no permanent harm because of the impounding; while on the other hand, failure to order impounding represents fundamental irreversible harm to my constitutional rights to participate in the democratic voting process.

FURTHER AFFIANT SAITH NAUGHT.

Dated: July 19, 2024

By: /s/ Karen Testerman

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

# **AFFIDAVIT**

| | |
|---|---|
| THE STATE OF NEW HAMPSHIRE | § |
| | § |
| COUNTY OF MERRIMACK | § |

BE IT REMEMBERED that on this 19th day of JULY 2024, before me, the undersigned, a Notary Public in and for the County and State aforesaid, came KAREN TESTERMAN, who is personally known to me to be the same person who executed the foregoing Affidavit and duly acknowledged the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on the date and year last.

_____
NOTARY PUBLIC

My Commission Expires:

1/16/2029



# EXHIBIT B



# NEW HAMPSHIRE ELECTION PROCEDURE MANUAL: 2022-2023

PUBLISHED BY THE DEPARTMENT OF STATE

EPM – 2022 – 1.0



registered.

When supervisors receive a notice of transfer or official notice of death, generally, do not send a "notice of removal." ElectioNet will preserve a record of all electronic notices. Supervisors must record all paper notices they receive or send so that they may justify their actions in the future, if necessary. RSA 654:36; RSA 654:37; RSA 654:44.

CHANGING PARTY AFFILIATION

A registered voter may change his or her party affiliation any time the supervisors are in session, except between the first day of the filing period for a state or presidential primary and up to the day of the primary election. When a voter moves from one New Hampshire town to another, treat the voter as a new registrant for this purpose. All new registrants may choose any party affiliation, regardless of the voter's party affiliation where the voter was previously registered.

The supervisors must hold at least one meeting prior to the filing period for the change of party affiliation by registered voters. For the Presidential Primary, the session shall be on the Friday preceding the first day of the filing period, between 7:00 PM and 7:30 PM. For the State Primary, the session shall be on Tuesday before the first Wednesday in June, between 7:00 PM and 7:30 PM. RSA 654:32.

The law authorizes city and town clerks to accept applications to change party affiliation.

Clerks then provide the party change requests to the supervisors. The supervisors will not act until after the state primary on applications to change party received after the filing period has started,.

An unaffiliated voter may declare his or her affiliation at the primary and may vote the ballot of his new party.

A voter who has declared an affiliation with a party prior to a primary election may only vote in that party's primary. A voter may write in the name of their preferred candidate on their own party's ballot. If this candidate is on a different party's ballot, the vote will not count as a vote in the other party's total. Instead, the write-in vote will count as a vote for that candidate in the party the voter received a ballot for.

For example, a voter writes in "John Doe" on the Party A ballot for governor. John Doe is a candidate for Party B's nomination. This voter's write-in vote for John Doe will not be counted in the votes for John Doe on the Party B ballot. The vote will count as a vote for John Doe on the Party A ballot only. This provides the voter an opportunity to express his or her support for the candidate.

The voter can change parties on the day of the primary election, but then is <u>not</u> allowed to vote at all in that primary.

A voter may be registered to vote as a member of any recognized political party or as undeclared. An undeclared voter is not a member of any party. Undeclared voters are also called unaffiliated voters. RSA 654:34.

An undeclared voter may declare his affiliation at the primary and vote the ballot of his new party. The voter may, after voting and before leaving the polling place, change back to undeclared by signing his or her name on a list of voters prepared for the purpose of recording party changes back to undeclared. The voter may also change back to undeclared after the election at the clerk's office or a session of the supervisors. RSA 654:34.

Voters who register at the primary election as undeclared, then affiliate with a party when checking in to obtain a ballot and vote in that party's primary, may change back to undeclared by filling out the "Return to Undeclared" form available in ElectioNet. See this form on page 439. RSA 654:34.

Any person who is a registered member of a party and votes a ballot of that party at a primary election SHALL NOT fill out a card to change his or her party status to unaffiliated on primary election day. RSA

654:34, III and V. To change party affiliation or to become undeclared, a voter registered as affiliated must complete a party change form at the clerk's office or at a session of the supervisors of the checklist after election day.

CHANGE OF ADDRESS WITHIN TOWN OR WARD

Supervisors must enter a change of address in Electio*Net* if they:

(a) Observe an address change on the marked checklist from an election;

(b) Receive evidence of a permanent change of address within the town/ward from the U.S. Postal Service (the Electio*Net* record may be updated based on the Postal Service report of a permanent move); or

(c) Obtain appropriate documentation indicating that a person has moved within his or her town or ward, or that the street name or number has been changed for a voter that has not moved.

PHYSICAL (DOMICILE) ADDRESS FOR EACH VOTER

Supervisors shall ensure that each voter has a domicile address that represents a real location consistent with a recognized addressing formula within the town or ward of the person's domicile. If there is no physical address, the physical street name should correspond to a recognized legal exemption from the physical address requirement.

REMOVAL OF DUPLICATE RECORDS

Supervisors are obligated to address duplicate voter records – records for one voter that appear in more than one New Hampshire town or city – in a timely manner. Supervisors must use the Inquiry function in Electio*Net* when registering new voters, thereby avoiding creation of duplicates.

The Secretary of State is required to analyze all records in the Statewide Voter Registration System to identify any where two voters have the same date-of-birth, place-of-birth, and a substantially similar name. This information will be forwarded to the supervisors for teach town or city where either person is registered. The supervisors must examine local records and collaborate with colleagues in the other town/city to determine if these are duplicate records.

If the records are duplicate, the supervisors must determine in which town or city the voter is currently domiciled. Most often this will be where the voter most recently registered. Corrections must be made to the checklist.

Supervisors must compare the voting history for both. If the person voted in the same election in two towns/cities, the Supervisors must report this to the Attorney General.

If the records are not duplicate, there are two different voters, keep a record in case these voters appear on a future potential duplicate voter list.

The Supervisors are required to report the results of their work to resolve possible duplicate registrations back to the Secretary of State. This information will help reduce the frequency of these same voters being reported as possible duplicates on subsequent reports. RSA 654:45, I(b).

## Campaigning

Political advertising used in any election, including local elections, must bear the name and address of some person responsible for the advertising. RSA 664: 1; RSA 664:14. The courts have held that a communication is political advertising only if it explicitly advocates the success or defeat of any party, measure, or person at any election. RSA 664:17 controls the placement of political advertising (signs).

RSA 664:17 prohibits placing or affixing political advertising on any public property, including highway rights of way. Nor may political advertising be placed on or affixed to private property without the owner's consent.

This law allows signs to be placed within a State-owned right-of-way, but only if the