**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

<u>Karen Testerman, et al.</u>

      v.                                             Civ. No. 24-cv-20-LM-AJ

<u>NH Secretary of State, et al.</u>

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiffs Karen Testerman and David Testerman[1] sued New Hampshire Secretary of State David Scanlan, the New Hampshire Republican State Committee and its Chairman, Chris Ager, claiming that the defendants, individually and collectively, violated their rights by allowing voters who were previously not affiliated the with the New Hampshire Republican Party to change their affiliation and vote in the New Hampshire presidential primary in January 2024. <u>See</u> Compl. (Doc. No. 1). Presently before the court is the plaintiffs' motion to amend their complaint (Doc. No. 31), which has been referred to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and LR 72(a). After reviewing the parties' filings and conducting oral argument, the

---

[1] Two other plaintiffs, Patricia Jorgensen and Nikki McCarter, voluntarily dismissed their claims and are no longer part of this case. <u>See</u> Feb. 15, 2024, End. Ord. granting motions.

court recommends that the plaintiffs' motion should be denied as futile, because they lack standing with respect to five of their six proposed causes of action, and because the sixth one fails to set forth a plausible claim for relief.

## Procedural History

On January 22, 2024, one day prior to the New Hampshire presidential primary election, — plaintiffs[2] filed: (1) a complaint for injunctive relief to prohibit undeclared New Hampshire voters from participating in the New Hampshire Republican Presidential Primary, see Compl. (Doc. No. 1) at 10; and (2) an emergency motion for injunctive relief to order the Secretary of State to "sequester the votes of the Undeclared Voters from the Republicans-only voters in the upcoming 2024 New Hampshire Republican Presidential Primary on Tuesday, January 23, 2024," Pltf. Mot. (Doc. No. 2) at 1.

The following day, the court denied the emergency motion for injunctive relief, ruling that the plaintiffs failed to establish they were likely to succeed on the merits of any of their claims because: (1) only one plaintiff signed the

---

[2] Plaintiff Karen Testerman asserts that she is suing "individually and as former Chair of the Merrimack County Republican Committee." Plaintiff David Testerman asserts that he is suing "individually and as a disenfranchised Merrimack County Republican voter." Proposed Am. Compl. (Doc. No. 31-1) at 1. As the plaintiffs' claims are identical and their secondary "capacity" designations have no legal significance, the court will address the plaintiffs as a singular entity.

2

complaint, and she does not have authority to assert a claim on behalf of the New Hampshire Republican Party or Merrimack County Republican Committee; and (2) the plaintiffs are individuals who do not have third-party standing to assert claims on behalf of the New Hampshire Republican Party.  The defendants subsequently moved to dismiss, arguing that the plaintiffs' complaint was moot because the primary had already taken place. On March 20, 2024, the plaintiffs filed the instant motion to amend.

### Standard of Review

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, within twenty-one days after a motion to dismiss or answer has been filed. Fed. R. Civ. P. 15(a)(1). Otherwise, as is the case here, a party may only amend the pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs that leave to amend should be "freely give[n]... when justice so requires." Id. [E]ven so, [a] district court enjoys significant latitude in deciding whether to grant leave to amend." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008). "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and

futility of amendment." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).

## Background

This is plaintiff Karen Testerman's second lawsuit in this court involving claims that the defendants acted illegally in allowing voters not affiliated with the Republican Party to declare a party affiliation at the polling place and vote in the 2024 Republican Presidential Primary.  The first suit was dismissed prior to the primary election because the plaintiffs lacked standing to sue, and is presently on appeal.  See Testerman v. NH Sec'y of State, No. 23-CV-499-JL-AJ, 2024 WL 1482751, at *1 (D.N.H. Jan. 9, 2024), appeal docketed sub nom. Briggs et al. v. Scanlan et al., No. 24-1316 (1st Cir. Apr. 3, 2024).

The crux of plaintiffs' proposed amended complaint ("PAC") is that defendant Ager, the New Hampshire Republican Party, and defendant Scanlan, "all colluded to ignore" New Hampshire law by allowing so-called voters not affiliated with a political party – "undeclared voters" -- to vote in the presidential primary. Plaintiffs assert that in so doing, the defendants violated N.H. Rev. Stat. Ann. § 659:14 ("Special Provisions for State and Presidential Primary Elections"), which provides:

> I. A person desiring to vote at a state or
> presidential primary election shall, at the time of
> announcing the person's name, also announce the name

4

of the party to which the person belongs or whether
the person is registered as an undeclared voter. If
the person's party membership has been registered
before, the person shall be given only the ballot of
the party with which the person is registered, unless
the person desires to vote the ballot of a party not
having official existence at the time the person's
party membership was previously registered, in which
case the person may vote the ballot of such a party in
the state primary election immediately following the
political organization's official existence as a
party, and not in any subsequent state primary
election. A person may also vote the ballot of such a
party in the presidential primary election only if the
presidential primary election precedes the state
primary election to be held in that same year. If the
rules of a party permit a person who is registered as
an undeclared voter to vote in the party's primary,
any person desiring to vote in that party's primary
shall also announce the name of that party at the time
of announcing the person's name. No person shall be
permitted to vote in any more than one party primary
during any primary election.

II. The secretary of state shall include on the voter
instruction cards required by RSA 658:28 whether a
party rule has been adopted which permits a person who
is registered as an undeclared voter to vote in the
party's primary. The party chairman shall notify the
secretary of state in writing prior to the filing
period for state offices whether the party has adopted
such a rule. This rule shall not be changed or
rescinded by a party until the results of the primary
have been announced, and any change or rescission
shall be mailed to the secretary of state by the party
chairman.

Specifically, the plaintiffs assert that the defendants

violated subsection II, above, because the Republican party

chairman had not notified the Secretary of State whether the

party had adopted a rule allowing undeclared voters to vote in

the Republican primary, as permitted by subsection I. PAC (Doc.

5

No. 31-1) ¶¶ 8, 14-16. Instead, they argue, the primary should have been restricted to voters who had previously "publicly affiliated" with the New Hampshire Republican Party prior to certain statutory deadlines. Id. ¶ 18 (citing N.H. Rev. Stat. Ann. § 654:34(I)(a)(1)).

Based on the defendants' alleged violation of New Hampshire law, the plaintiffs assert six counts in the PAC:

> 1) Ager "failed in his fiduciary duties to properly notify [defendant Scanlan] that the NHRSC had not authorized undeclared voters to vote in the Republican primary, thus depriving the plaintiffs of the First Amendment right to enter political association with individuals of their own choosing;

> 2) Scanlan "failed in his fiduciary duties" when he allowed previously undeclared voters to vote in the Republican primary, similarly violating plaintiffs' First Amendment political association rights;

> 3) Scanlan and Ager conspired to violate plaintiffs First Amendment political association rights by allowing undeclared voters "improper access" to the Republican primary, in violation of 18 U.S.C. §§ 241 and 242;

> 4) Scanlan and Ager, acting under color of state law, conspired to injure the plaintiffs "in the free exercise or enjoyment of any right or privilege secured by the constitution, in violation of 18 U.S.C. §§ 241 and 242;

> 5) Scanlan and Ager, acting under custom or usage of a state" conspired to injure the plaintiffs "in the free exercise or enjoyment of any right or privilege secured by the Constitution . . .," in violation of 18 U.S.C. §§ 241 and 242; and

6) Scanlan and Ager violated plaintiff's rights under the Equal Protection Clause by giving "extra privileges to "party raiders" to the detriment of the plaintiffs and other Republicans.

PAC (Doc. No. 31-1) ¶¶ 8-13.

The plaintiffs seek the following relief: 1) a decree that their First Amendment and Equal Protection rights were violated; 2) a writ of mandamus ordering the Secretary of State to instruct the chairs of New Hampshire state political parties to alter the method by which they allow undeclared voters to participate in party primaries; 3) attorneys' fees under a "private attorneys general" theory; and 4) a referral to the United States Attorney for criminal investigation. PAC (Doc. No. 31-1) at 17-18.

## Discussion

Although they also posit separate reasons for denying the plaintiffs' motion, the defendants each argue that the motion to amend should be denied on the basis of futility. See Ager Obj. (Doc. No. 32) at 2-5; Scanlan Obj. (Doc. No. 33) at 5-7. And each defendant asserts, in part, that the futility of amendment is based on the plaintiffs' lack of standing to pursue the claims in the PAC. As the question of standing implicates the court's subject matter jurisdiction, it "is always an antecedent question' to resolving a case on the merits." R&D Master Enterprises, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico,

75 F.4th 41, 46 (1st Cir. 2023) (cleaned up). The court
therefore addresses that issue first.

"Under Article III of the Constitution, a plaintiff needs a
'personal stake' in the case." Biden v. Nebraska, 143 S. Ct.
2355, 2365 (2023) (quoting TransUnion LLC v. Ramirez, 141 S. Ct.
2190, 2203 (2021)). More specifically, "the plaintiff must have
suffered an injury in fact—a concrete and imminent harm to a
legally protected interest, like property or money—that is
fairly traceable to the challenged conduct and that is likely to
be redressed by the lawsuit." Id. (citing Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560-61 (1992)).  In addition to these
constitutional considerations, prudential limitations "prevent
courts from "adjudicating 'questions of broad social import
where no individual rights would be vindicated and . . . limit
access to the federal courts to those litigants best suited to
assert a particular claim.'" Conservation Law Found. of New
England, Inc., 950 F.2d 38, 41 (1st Cir. 1991) (alterations in
original) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S.
797, 804 (1985)).  The court next applies this analysis to the
plaintiffs' individual claims.

A.  Fiduciary duty claims (Counts 1 and 2)

In Counts 1 and 2, plaintiffs allege that Ager and Scanlan,
respectively, violated their fiduciary duties.  Under New
Hampshire law, "[a] fiduciary relationship has been defined as a

8

comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." Brzica v. Trustees of Dartmouth Coll., 791 A.2d 990, 994 (N.H. 2002) (quoting Lash v. Cheshire County Savings Bank, 474 A.2d 980, 981 (N.H. 1984)). "[A] confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." Id. (quoting Cornwell v. Cornwell, 356 A.2d 683, 686 (N.H. 1976)).

There are no allegations in the PAC, however, suggesting that Ager has a fiduciary duty to either of the plaintiffs. Indeed, Ager, they argue, owes a fiduciary duty to "the general citizenry" PAC (Doc. No. 31-1) at 11.  But individual plaintiffs do not have standing to assert claims on behalf of "the general citizenry." See Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 382 (2024) ("Vindicating 'the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive.'") (citing Lujan, 504 U.S. at 576.) (emphasis in original).

With respect to Scanlan, given his position as Secretary of State, the court presumes that the plaintiffs are similarly alleging that he owes a fiduciary duty to the citizens of New

Hampshire.  As with the claim against Ager, however, this is insufficient to confer standing on these plaintiffs.

Finally, while Counts 1 and 2 are premised on the defendants' alleged violation of their fiduciary duties, plaintiffs also allege in these counts that Scanlan and Ager violated their First Amendment rights to freedom of association. Once again, however, the plaintiffs lack standing to pursue claims based on associational rights that belong to the New Hampshire Republican Party.

"The First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997). The Supreme Court has recognized that "the freedom to join together in furtherance of common political beliefs . . . necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. That is to say, a corollary of the right to associate is the right not to associate." Cal. Democratic Party v. Jones, 530 U.S. 567, 574 (2000) (citations and quotations omitted); see also Tashjian v. Republican Party of Conn., 479 U.S. 208, 214 (1986). "In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public

policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." Jones, 530 U.S. at 575.

Accordingly "[a] political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." N.Y. State Bd. of Elections v. Lopez Torres, 552 U.S. 196, 202 (2008). "Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, but also that a political party has a right to identify the people who constitute the association, and to select a standard bearer who best represents the party's ideologies and preferences." Eu v. S.F. Cty. Democratic Cent. Comm., 489 U.S. 214, 224 (1989).

There are no allegations in the PAC to support the claim that either defendant's actions affected the plaintiffs' right of association. The plaintiffs remain free to vote in the Republican primary, and they may choose association with the

Republican Party as they see fit. Accordingly, the plaintiffs lack standing to asserts the claims in counts 1 and 2.[3]

### B. Violations of Federal Criminal Law (Counts 3-5)

In counts 3-5, plaintiffs allege that the defendants violated 18 U.S.C. §§ 241 and 242, criminal statutes which proscribe deprivation of Constitutional rights.  As the First Circuit Court of Appeals has held, however, "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242."  Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989); Strickland v. Courtright, No. 23-12756, 2024 WL 1607019, at *3 (E.D. Mich. Apr. 12, 2024) (holding that plaintiff lacks standing to sue under 18 U.S.C. § 242; Avelin v. S. Kingstown Police Dep't, No. CV 22-00295-WES, 2022 WL 3646613, at *2 (D.R.I. Aug. 24, 2022) (finding that plaintiff in civil case "has no legal standing to" bring a claim under § 241).

The plaintiffs assert that Ager and Scanlan's criminal activity has "substantially interfere[d] with the Republican Party's first amendment right to define its associational boundaries, determine the content of its message and engage in effective political association."  PAC (Doc. No. 31-1) ¶ 10.

---

[3] At oral argument plaintiffs argued that a recent Supreme Court case, Alexander v. So. S Car. State Conf. of the NAACP, et al., 144 S. Ct. 1221 (2024), supported their standing argument. That case, however, which involved a claim of unconstitutional racial gerrymandering, did not analyze the plaintiffs' standing to sue.

(quoting Tashjian, 479 U.S. at 214). They further assert that Ager "has deprived the petitioners of their First Amendment right for the party to limit its membership as it wishes, and to choose a candidate selection process that will produce the nominee who best represents its political platform."  PAC (Doc. No. 31-1) ¶ 23.

First, the plaintiffs lack standing to pursue injuries to others, such as the New Hampshire Republican Party.  See Lujan, 504 U.S. at 560 (noting that to have standing the plaintiff must suffer an injury in fact) (emphasis added).  Next, Tashjian and other cases cited by the plaintiffs involve political parties' claims that state regulation has interfered with its rights of association.  Those cases are not only inapposite, but serve to underscore that these individual plaintiffs' lack standing to sue on the basis of the state party's rights.  Accordingly, the motion to amend should be denied as to Counts 3-5.

C. Equal Protection – Count 6

In Count 6, the plaintiffs, invoking 42 U.S.C. § 1983, claim that they are "invidiously discriminated against . . . in favor of Party Raiders[4] who are given extra privileges to the detriment of the [plaintiffs] and other Republicans in violation

---

[4] Party raiding occurs where voters "in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary." Rosario v. Rockefeller, 410 U.S. 752, 760 (1973).

of the Equal Protection Clause." PAC (Doc. No. 31-1) ¶ 13. In
the first instance, and as previously noted, the plaintiffs do
not have standing to seek redress for injuries to "other
Republicans." Nevertheless, the plaintiffs' allegations satisfy
the court they have standing to pursue an equal protection claim
based on their allegation that the defendants have discriminated
against them personally. That they have standing, however, does
not save their claim.

The Equal Protection Clause of the Fourteenth Amendment
"prohibits a state from treating similarly situated persons
differently because of their classification in a particular
group." Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105-06
(1st Cir. 2015). To state a claim for relief, the plaintiffs
must show that the defendants intentionally treated them
differently from others similarly situated, that no rational
basis existed for that difference in treatment, and that the
different treatment was based on a malicious or bad faith intent
to injure. Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1,
10 (1st Cir. 2013) (internal quotation marks and brackets
omitted). The plaintiffs' equal protection claim falters at the
first step, as they fail to allege that they were treated
differently from others similarly situated.

Even assuming that both defendants are state actors -- a
sine qua non for pursuit of a constitutional claim under 42

U.S.C. § 1983 – the plaintiffs fail to identify how they were treated differently than the so-called "party raiders." The plaintiffs have the same right as "party raiders" (or any other voters) to affiliate with (or disaffiliate from) a political party before a primary, vote in the primary of their choice, and then change their status post-election (or remain unaffiliated). See N.H. Rev. Stat. Ann. § 654:34 (allowing undeclared voters to affiliate with a party on the date of a primary election and vote in that party's primary). Therefore, the plaintiffs' motion to amend should be denied with respect to Count 6 as futile, because it fails to plausibly set forth a claim for relief under the Equal Protection Clause.

## Conclusion

Based on the foregoing, plaintiffs' motion to amend (Doc. No. 31) should be denied on the basis of futility. As a result, the original complaint (Doc. No. 1) remains the operative complaint in this matter. In addition, the defendants' motions to dismiss (Doc. Nos. 11 and 14) should be denied without prejudice to refiling or updating as necessary, as two of the four original plaintiffs are no longer in the case.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to

this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


_____
Andrea K. Johnstone
United States Magistrate Judge

August 14, 2024

cc:  David Testerman, pro se
     Karen Testerman, pro se
     Counsel of Record

16