IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

KAREN TESTERMAN, ET AL.

PETITIONER(S),

v.

Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

RESPONDENT(S).

**PETITIONERS' OBJ. TO MAGISTRATE'S REPORT AND RECOMMENDATIONS**

NOW COMES Republican primary voters Karen Testerman and NH state Representative David Testerman, (the "Petitioners"), pursuant to 28 USC 636 (c), and LR 72.2, and respectfully objects to the Magistrate's Report and Recommendations, stating as follows:

**Argument**

1.   The Magistrate argues that the motion to amend should be denied on the basis of futility, because (in the court's opinion): the petitioners failed to claim a personal stake in the matter; they fail to claim injury-in-fact or a concrete and imminent harm; and that the federal court is prevented from adjudicating "questions of broad social import where no individual rights would be vindicated." *R&R* pg. 8.

2. The Magistrate has bundled the arguments against the Petitioners having standing before this court into three sections: (A) Fiduciary duty claims (Counts 1 and 2); (B) Violations of Federal Criminal Law (Counts 3- 5); and (C) Equal Protection (Count 6).

3. In short, the Report and Recommendations state that: as to the (A) fiduciary duty claims and (B) violation of federal criminal law, in the Court's opinion, the Petitioners do not have standing to sue based on the state party's exclusive rights.  R&R pgs. 10, 13.  As to the (C) Equal Protection claim, the petitioners have satisfied that "they have standing to pursue an equal protection claim based on their allegation that the defendants have discriminated against them personally. [But] [t]hat they have standing, however, does not save their claim." R&R pg. 14.

**There is sufficient legal precedence that Petitioners individually have standing, like political parties, based on perceived interference by state regulation to their First Amendment rights to Freedom of Association**

4. It is the opinion of the magistrate that political parties *exclusively* have the right of freedom of association when state regulation has interfered with that right.  R & R, pg. 13. Specifically, the court said, "the plaintiffs lack standing to pursue claims based on associational rights that belong to the New Hampshire Republican Party." Id. pg. 10.

5. However, in the paragraph following, the court quotes Timmons saying that, "The First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas (emphasis added)." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997).

6. To be sure, the court is correct in that a political party can assert its own right to freedom of association regarding perceived interference by state regulation and has standing before the court.  Alaskan Independence Party v. Alaska, 545 F.3d 1173 (2008); Cal. Democratic Party v.

Jones, 530 U.S. 567, 574 (2000); Democratic Party of U. S. v. Wisconsin ex rel. La Follette, 450 U.S. 107 (1981); Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214 (1989); Maine Republican Party v. Dunlap, 324 F.Supp.3d 202 (2018); Tashjian v. Republican Party of Conn., 479 U.S. 208, 214 (1986).

7.      However, the Supreme Court does not assert that the right to sue over freedom of association is the *exclusive* right of the political parties, regarding perceived interference by state regulation.

8.      In fact, there are many cases where a plaintiff, as **a single voter**, or group of voters, have asserted their right to challenge the perceived interference by state regulation to their right of freedom of association, and have had proper standing before the court.  Bullock v. Carter, 405 U.S. 134 (1972); Burdick v. Takushi, 504 U.S. 428 (1992); Campbell v. Bysiewicz, 242 F.Supp.2d 164 (2003); Clingman v. Beaver, 544 U.S. 581 (2005); Igneri v. Moore, 898 F.2d 870 (1990); Kusper v. Pontikes, 414 U.S. 51 (1973); Moore v. Harper, 600 U.S. 1 (2023); Nader v. McAuliffe, 593 F.Supp.2d 95 (2009); Nader v. Schaffer, 417 F.Supp. 837 (1976); New York State Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008); Norman v. Reed, 502 U.S. 279 (1992);  Rosario v. Rockefeller, 410 U.S. 752 (1973).  *See also* Young v. Gardner, 497 F.Supp. 396 (D.N.H. 1980).

9.      In Igneri v. Moore, 898 F.2d 870 (1990), Olga Igneri and other citizens had legal standing as both citizens and in their capacities as elected county chairmen to challenge the perceived interference by state regulation to their right of freedom of association and right to privacy regarding financial filing requirements.

10.     In <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973), Pedro Rosario and others had legal standing as citizens to challenge the perceived interference by state regulation to their right of freedom of association and the deadlines for joining a political party.

11.     In <u>Kusper v. Pontikes</u>, 414 U.S. 51 (1973), Stanley Kusper brought action attacking the constitutionality of Illinois statute prohibiting a person from voting at primary if he has voted at primary of another political party within the preceding 23 calendar months.

12.     In <u>Clingman v. Beaver</u>, 544 U.S. 581 (2005), individual citizens sued regarding Oklahoma's semi-closed primary system, under which a political party could invite only its own registered members and voters registered as Independents to vote in its primary.  The court held that the semi-closed primary system did not severely burden the associational rights of the state's citizenry, so as to require application of strict scrutiny when the system was challenged as unconstitutionally burdening First Amendment right to freedom of political association.

13.     In <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012), non-party member Armando Lacasa and others filed suit against Miami–Dade County Supervisor of Elections, seeking a declaration that they had the right to vote in the party's 2012 primary for the State Attorney for Miami–Dade County.  The *Lacasa* court held that non-party members did not have a First Amendment associational interest in voting in the Democratic party's primary, and that the State may place certain limitations on voting in a party's primary, such as by enforcing registration requirements, citing <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973).

14.     In each of these cases, *supra* ¶¶ 9 – 13, it was individual citizens who brought suit based on perceived interference by state regulation to their right of association.

15.     Therefore, the Petitioners in this matter have proper standing before this court.

**Petitioners have suffered an injury-in-fact in that their right to associate with other "publicly-affiliated" party members has been harmed.**

16. The Petitioners have suffered an injury-in-fact or a concrete and imminent harm – an invasion of a "legally protected interest" which also gives them standing before this court, by allowing non-party members equal access to vote in an otherwise closed primary. Lujan v. Defenders of Wildlife, 504 U.S. 555, 558 (1992).

17. To have a meaningful voice in this process, the individual voter must join together with like-minded others at the polls. And the choice of who will participate in selecting a party's candidate obviously plays a critical role in determining both the party's message and its prospects of success in the electoral contest. See Clingman v. Beaver, 544 U.S. 581, 600 (2005) (O'Connor & Breyer, J., *dissenting*).

18. It is the Petitioners' freedom to associate with like-minded "publicly-affiliated" party members that is at stake.

19. A basic function of a political party is to select the candidates for public office to be offered to the voters at general elections[, and a] prime objective of most voters in associating themselves with a particular party must surely be to gain a voice in that selection process. See Kusper v. Pontikes, 414 U.S. 51, 58 (1973).

20. The Lacasa court established that non-party members did not have a First Amendment associational interest in voting in the Democratic party's primary. Lacasa v. Townley, 883 F.Supp.2d at 1239. The Lacasa court quotes Clingman for the proposition that "keeping a political party's primary election closed will preserve the party as a viable and identifiable interest group, insuring that the results of its primary election, in a broad sense, accurately reflects the voting of the party members." Clingman at 594-95.

21.     Therefore, by his actions or inactions, NHRSC Chair Ager has deprived the petitioners of their First Amendment right for the Party to limit its membership as it wishes, and to choose a candidate-selection process that will produce the nominee who best represents its political platform. *See* Alaskan Independence Party v. Alaska, 545 F.3d 1173, 1176 (9th Cir. 2008); N.Y. Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008); see also Am.Compl., ¶¶ 22 - 23.

22.     The Report and Recommendation misapplies the Petitioner's analysis that defendant Ager has a fiduciary duty to the "general citizenry." The plaintiffs were referring to the argument in the *Igneri* court in where that "[a]lthough not public officials, political party chairpersons play substantial and discernible roles in state government beyond their statutorily enumerated duties." *See* Igneri v. Moore, 898 F.2d 870, 874 (2d Cir. 1990); Am.Compl. at ¶ 33.

23.     It was simply the Petitioner referring to the *Igneri* court citing United States v. Margiotta, 688 F.2d 108, 125 (2d Cir.1982), in that *the Margiotta court* held that:

> "*we upheld the conviction of the former chairman of the Republican Committee of Nassau County and the Town of Hempstead under the federal mail fraud statute, 18 U.S.C. § 1341 (1976). In so holding, we concluded, in part, that* **Margiotta owed a fiduciary duty to the general citizenry** *based on his "participation in" and "effective control over the processes of government." 688 F.2d at 125* (emphasis added)." Igneri at 874.

24.     The point of the Petitioners' analysis was not to infer that "Ager [] owes a fiduciary duty to the general citizenry." R&R, pg. 9. But rather, the point of the Petitioners' Analysis in Am. Compl. ¶¶ 33 – 39, when read in its entirety, was that NHRSC Chairman Chris Ager was a private citizen acting under color of state law as a state actor for purposes of § 1983 liability under the "public functions test." *See* Cruz-Arce v. Management Administration Services Corporation, 19 F.4th 538, 543-44 (1st Cir. 2021); Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011).

**<u>Fiduciary Duties of NHRSC Chair Ager and Sect. of State Scanlan</u>**

25.     NHSRC Chairman Chris Ager's fiduciary duties are based on his role <u>*as chairman*</u> to fulfill his obligations under the law – RSA 659:14 – in order for the Republican primary to be open.  First, there must be a bylaw or party rule on point declaring the primary open to non-party members.  659:14, I ("If the rules of a party permit a person who is registered as an undeclared voter to vote in the party's primary…").  Second, the Chairman must communicate this rule change to the Secretary of State.  659:14, II ("The party chairman shall notify the secretary of state in writing prior to the filing period for state offices whether the party has adopted such a rule.").

26.     Neither a rule or bylaw has ever existed in the Republican Party of New Hampshire whereby non-party members have been granted the right to vote in the party's presidential and state primaries.  Therefore, the primaries for the Republican Party of New Hampshire are <u>***closed***</u> to non-party members.

27.     In similar fashion, Secretary of State David Scanlan, "acting under custom or usage of a state," has acknowledged that the State of New Hampshire ignored the provisions of RSA § 659:14 "for decades," thereby opening the presidential primary to voters not "publicly affiliated" with the New Hampshire Republican Party, in violation of the petitioners' rights to freedom of association with individuals of their own choosing. <u>See</u> <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970).

28.     What is at stake is the inconsistency with which the codefendants view the Republican Primary as "open" or "closed."

29. It is the position of the NHRSC, through their counsel, that the New Hampshire Republican Party primaries are "closed." <u>See</u> <u>Motion for Def. Ager and NHRSC for Status Conference</u>, FN1 (ECF 15).

30. It is the Secretary of State's contrary position that the Republican primary remains "open" until he receives a letter from the Republican chairman as to a "change in party rules."[1]

31. As previously stated, there has never been a party rule or bylaw opening the Republican primary to non-party members, and the Secretary of State's reliance on history and tradition run contrary to a plain reading of the law – RSA § 659:14.

32. The Chairman of the New Hampshire Republican Party claims that the primary is "closed." The Secretary of State claims that the primary is "open" until he receives a "change in circumstances" letter from the NHGOP chair. Both are being disingenuous to a plain reading of the law.

33. And both have affected the Petitioners' right of association, by allowing non-party members to participate in the primary elections (both presidential and the impending state primary) for which non-party members did not have a First Amendment associational interest in voting. <u>Lacasa v. Townley</u>, 883 F.Supp.2d at 1238.

34. It was the Petitioner Karen Testerman who, along with others, implored that the NHRSC Chair Chris Ager file the proper notification with the Secretary of State that the Republican Party primary was indeed closed. Co-defendant Ager refused. Am. Compl. ¶¶ 27 – 28, Exhibit C&D.

---

[1] <u>See</u> **Scanlan: Undeclared Voters Won't Be Blocked from Taking GOP Ballots in FITN Primary** – "The party chair is required to write a letter to the Secretary of State to inform him or her <u>of any change in party rules</u> that would determine who can participate in a party primary and that letter has to be delivered before the filing period for office opens up," Scanlan said. There has been no such letter and the deadline was Oct. 11 so nothing will be changed in the Republican presidential primary that will be scheduled sometime in January, Scanlan said." -- https://indepthnh.org/2023/10/26/gop-resolution-wont-change-presidential-primary/.

35. Therefore, the NHRSC Chair breached his duty to the Petitioners to secure the party's primary from the dilution of votes by non-party members, according to RSA 654:34 and RSA 659:14.

36. And therefore, the Secretary of State also breached his duty, under color of law, to the Petitioners to allow them to congregate with like-minded voters in their right to Freedom of Association.

**Petitioners are entitled to Equal Protection under the law.**

37. Furthermore, the Petitioners are being treated differently than Undeclared voters.

38. The Secretary of State more succinctly states the Petitioners' argument for how the Petitioners are treated differently than Undeclared voters, when in his Objection, the Secretary interprets the statute as follows:

> "All [undeclared] voters may **choose to remain undeclared** prior to the date of a party primary, **at which time** they may affiliate with a party **and** vote in that party's primary. See RSA 654:34, II (emphasis added)." See Sec't of State's Obj. at ¶ 23 (ECF 43).

39. Under this interpretation by the Secretary of State's office, the state statute RSA 654:34 is unconstitutional.

40. If a Republican or Democratic voter follows the law under RSA 654:34, then if they choose to change party affiliation between the first Wednesday in June and the day of the primary, then they may do so, but under penalty of being barred from voting on primary day.

41. Whereas Undeclared voters have no public affiliation and are treated to **choose** whichever party's ballot they prefer, thereby undermining the critical role in determining both the party's message and its prospects of success in the electoral contest.

42.     Such an interpretation of the two statutes separately renders the purpose of closing the primary in RSA 659:14 *meaningless* and creates two separate classes of voters – publicly-affiliated party voters and non-party voters who may choose to never publicly-affiliate yet still vote in a primary for which they have no freedom to associate.

43.     And as such, this affects the petitioners rights of Equal Protection to associate with like-minded publicly-affiliated members of a political party for the advancement of common political goals and ideas. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997).

44.     To be sure, Undeclared and independent voters have the right to not associate with a political party, sparing them the annoyance of being hounded for donations, or being bombarded with political mail advertisements, or the constant phone texts from candidates, and push cards from partisan solicitors on their doorsteps.

45.     But, as established by precedence, a voter must establish a minimum period of public affiliation in order to receive a party's primary ballot. Rosario v. Rockefeller, 410 U.S. 752 (1973); *cf*. Kusper v. Pontikes, 414 U.S. 51 (1973).

46.     The Report and Recommendation completely misses the point of the constitutional argument for primary voting integrity when it said: "The plaintiffs have the same right as "party raiders" [] to vote in the primary of their choice, and then change their status post-election." *R&R*, pg. 15.[2]

47.     It is because the Petitioners are Republicans and do not wish to have their votes spoiled, diluted, confused, or misapplied by including non-party members in the primary election,

---

[2] In actuality, this is incorrect. Publicly-affiliated, regular party members may not change their status immediately *post-election* like Undeclared may do. Instead, they must wait until the next regularly scheduled meeting of the Supervisor of the Checklist in the respective Towns.

thereby violating the petitioners' rights to freedom of association with individuals of their own choosing. <u>See</u> <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970).

48.     The facts are no different than if <u>*arguendo*</u> the petitioners had argued that non-citizens were voting in the primary, and the court were to say that there was no harm because the non-citizens were not preventing the petitioners from voting or associating with the party.

49.     Therefore, it is the assertion of the Petitioners that allowing non-party voters to switch their party affiliation haphazardly and not meeting a minimum time period as established by law violates their rights of Equal Protection under the law.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 680 (1974); <u>Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).

**<u>Petitioners have standing to sue under § 1983 for violations of federal criminal law</u>**

50.     Having resolved the issues of standing for the petitioners in the Fiduciary claims under § 1983 and the Equal Protection claims under the First and Fourteenth Amendments, the petitioners now turn their attention to their standing regarding the federal criminal Counts 3 – 5.

51.     The petitioners concur with the Magistrate that as a matter of law, the petitioners have no legal standing in which to bring a claim exclusively under § 241.  <u>See</u> <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989).  However, a <u>§ 1983</u> claim accrues when a plaintiff has reason to know of the injury which is the basis of his action.  <u>Nieves v. McSweeney</u>, 241 F.3d 46, 53 (1st Cir. 2001).

52.     Therefore, in order to make out an actionable conspiracy under <u>§ 1983</u>, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right. <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir.1988).

53.     At trial, the petitioners will be able to demonstrate to the court that both previous Secretaries of State and previous party chairmen have been aware of the changes in the law since 1987, which were precipitated based on the decision in <u>Tashjian v. Republican Party of Conn.</u>, and have simply chosen to be deliberately indifferent to the unconstitutional interpretations of the state statutes governing the time and place of the primaries, and the limitations (or lack thereof) of who can participate in those primaries.

54.     By conspiring to ignore the plain language reading of RSA 654:34 and RSA 659:14, the codefendants have abridged the federally-secured rights of the petitioners to their freedom of association with fellow members of the Republican Party, without the perceived interference by state regulation which (as interpreted by the Secretary of State) allows non-party members access to primary ballots when the courts have established that non-party members have no right to associate with the Republican Party.  <u>See</u> <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012); <u>Timmons</u> 520 U.S. at 357.

55.     Therefore, the petitioners have standing under 42 USC § 1983 to assert Counts 3 -5 as the reasons for the basis of their actions.  <u>See</u> <u>Am.Compl</u>. ¶¶ 51 – 54; <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of § 1983 must have the force of law"); <u>Lindke v. Freed</u>, 601 U.S. ----, --- S. Ct. ---, 2024 WL 1120880 * 8 (March 15, 2024).

56.     Furthermore, the petitioners, fully aware that "[o]nly the United States as prosecutor can bring a complaint under 18 USC §§ 241 – 242," recommended that the factual matters in this case be referred to the U.S. Attorney for the District of New Hampshire for possible criminal investigation under the RICO statutes – 18 USC §§ 1861 – 1868.  <u>See</u> <u>Am. Compl</u>. ¶ 54.

**Conclusion**

57.     Based on the foregoing, the petitioners motion to amend (ECF 31) should be granted for the Fiduciary Claims (Counts 1 – 2), the Violations of Federal Criminal Claims under § 1983 (Counts 3 – 5), and the Equal Protection claim (Count 6).

WHEREFORE, the Petitioners respectfully request that this Court:

- G<small>RANT</small> the Petitioners Leave to File the Amended Complaint; and
- For such other and further relief as is just and proper.

 

Respectfully Submitted,

DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

Dated:  August 28, 2024         By:   /s/ David Testerman
David Testerman, *pro se*
Dave@sanbornhall.net
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 320-9524

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated:  August 28, 2024         By:   /s/ Karen Testerman
Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

Petitioner's Ob. To Report and Recommendations - 13

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent <u>by regular mail</u> and by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com


Dated:  August 28, 2024                             /s/ Karen Testerman
                                                    Karen Testerman, *pro se*