IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

J̲ORGENSEN̲, E̲T AL.̲

                                      P̲LAINTIFF̲(S),

v.

                               Case No.  **1:24-cv-00020-LM-AJ**

N̲H S̲ECRETARY OF̲ S̲TATE̲, E̲T A̲L,

                                      D̲EFENDANT̲(S).

---

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND RULINGS OF LAW**

NOW COMES Republican primary voters Karen Testerman and NH state Representative David Testerman, (the "Plaintiffs"), in the above captioned matter, respectfully submits the plaintiff's proposed findings of fact and Rulings of Law, stating as follows:

**Findings of Fact**

1.    The Joint Statement on Agreed Upon Facts will be filed under separate cover, as soon as both co-defendants have had sufficient time on which to confer and proffer their statements.

**Rulings of Law**

**N̲ATURE OF THE̲ A̲CTION̲**

2.    Until recently, both the Chairman of the New Hampshire Republican State Committee ("NHRSC") (aka "NHGOP") (the "Chair") and the New Hampshire Secretary of State's office

Plaintiffs' Findings of Fact and Rulings of Law - 1

("NH SOS"), have set aside the provisions of the state law governing the "<u>Special Provisions for State and Presidential Primary Elections</u>" as written – N.H. § RSA 659:14.

3. Under a plain reading of the statute, it states *inter alia* that:

"***<u>If the rules of a party permit</u>*** <u>a person who is registered as an undeclared voter to vote in the party's primary, any person desiring to vote in that party's primary shall also announce the name of that party at the time of announcing the person's name</u> (**emphasis added**)."
N.H. Rev. Stat. § 659:14. Simply put, if the Party's Rules or Bylaws expressly allow it, then Undeclared Voters may vote in the Party's Primary.

4. The statute goes on to say: "<u>The party chairman shall notify the secretary of state in writing prior to the filing period for state offices **whether the party has adopted such a rule**</u> (**emphasis added**)." *Id*.  Again, simply put, the statute requires that the Party Chair submit *in writing* whether the Party's Primary elections will be *open* to Undeclared Voters.

5. Currently, the Party's Bylaws (https://nh.gop/bylaws/), the Party's Platform (https://nh.gop/platform/), and the State Convention Organization Committee Report (https://nh.gop/organization_report/) ***are silent*** as to whether the Party has adopted such a rule to authorize Undeclared Voters to vote in the Party's primary.

6. And the Secretary of State has acknowledged that the NH SOS does not have in its possession any correspondence from the NHGOP Chair declaring the Party's Primary to be ***open*** to Undeclared Voters.

7. On October 9, 2023, Secretary of State Scanlan replied to a constituent's e-mail, stating:

"In response to your RSA 91-A request my office has not been able to locate any 'written notice' of a Republican State Party rule change relative [to] which voters can participate in a New Hampshire primary election.  The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to

undeclared or remain in the party after voting has been in place for decades." **Exhibit 108**.

8.  In an October 26, 2023 news article, Secretary of State David Scanlan is quoted as saying:

    "I have received no such letter that would require me to make any change . . . . The presidential primary will be conducted in the same manner it has been conducted for decades. The party chair is required to write a letter to the Secretary of State to inform him or her **of any change in party rules** that would determine who can participate in a party primary and that letter has to be delivered before the filing period for office opens up (**emphasis added**)." *See* **Scanlan: Undeclared Voters Won't Be Blocked from Taking GOP Ballots in FITN Primary,** https://indepthnh.org/2023/10/26/gop-resolution-wont-change-presidential-primary/, **Exhibit 105**.

9.  In both instances, the Secretary of State misquotes RSA § 659:14, which states that the party chairman must notify the Secretary as to "*whether the party has adopted such a rule*" to allow for an open primary has occurred, and not to a change-in-circumstance notification.

10. Because of this confusion (in where that the Secretary of State's office has maintained a practice of allowing Undeclared Voters to participate in both the Democratic and Republican primaries), and in order to prevent "party raiding",[1] the Party at its Annual Meeting on January

---

[1] **NBC News** reported that because President Biden's name would not appear on the New Hampshire Democratic Party ballot, a newly-formed super-PAC **Primary Pivot** encouraged Democratic voters to temporarily switch their party affiliations to "undeclared" so they ccould vote against Trump in the GOP primary. *See* New Hampshire Democrats weigh whether to cross over and vote in GOP primary, dated October 6, 2023, https://www.nbcnews.com/politics/2024-election/new-hampshire-democrats-weigh-whether-cross-vote-gop-primary-rcna118756.

*See also* **NPR's All Things Considered**, aired January 17, 2024, transcript https://www.npr.org/2024/01/17/1225253439/thousands-of-democratic-new-hampshire-voters-are-switching-party-affiliation.

Even former New Hampshire U.S. Senator Gordon Humphrey actively interfered in the election by targeting unregistered college voters to sign up for same-day registration in an effort to spoil Republican

28, 2023, the NH GOP Annual Meeting (the Party's highest governing authority), voted to **close** its Presidential Primary for January 2024.  **Exhibit 102.**

11.     Over twelve months ago, under Resolution #2, the NH GOP Annual Meeting directed that Party Chair Chris Ager, *inter alia*, should notify the Secretary of State "*in writing prior to the filing period of state offices that the Republican Party of New Hampshire has adopted the rule that **only voters registered as Republicans** prior to any primary election may receive a Republican ballot* (**emphasis added**)." **Exhibit 103**.  In short, the Party voted to close its Presidential Primary in order to avoid "party raiding." *See* California Democratic Party v. Jones, 530 U.S. 567, 572 (2000).

12.     Despite repeated attempts by other Party Officials, Party Chair Chris Ager refused to notify the NH SOS in writing that the upcoming 2024 Presidential Primary was ***closed to Undeclared Voters*** as was voted upon and approved by the NHGOP sitting in its Annual Meeting.

13.     In an email dated October 6, 2023, Plaintiff and Merrimack County Republican Committee ("MCRC") Chairman Karen Testerman implored Party Chair Chris Ager to notify the NH SOS in writing that the 2024 Presidential Primary was officially closed to Undeclared Voters.  As part of constructive notice, New Hampshire Secretary of State David Scanlan was copied on the email, and therefore *knew or should have known* that there exists no authorization to include Undeclared Voters in the upcoming Presidential Primary.  **Exhibit 104**.

---

party member votes for Donald Trump.  *See* **NH Journal** Former Sen. Humphrey Launches Ad Campaign Urging College Students to Stop Trump, dated January 19, 2024, https://nhjournal.com/former-u-s-senator-humphrey-launches-ad-campaign-urging-college-students-to-stop-trump/.

14. In a reply email also dated October 6, 2023, Party Chair Chris Ager stated that the "*Resolution violates state law and cannot be adopted*." **Exhibit 105**. However, Chair Ager did not say what state law the Resolution violated.

15. The reply email from Chair Ager also stated that the *suggestion* would require adoption of a By-Law change at the upcoming NH GOP Annual Meeting, slated for January 13, 2024. *Id*. However, Chair Ager's assertion that a By-Law change must be adopted to *close* the 2024 Presidential Primary is a misinterpretation of N.H. RSA § 659:14 which requires a proactive action by the Chair to *open* the Primary in writing to the NH SOS.

*16.* Chair Ager's suggestion is the exact opposite of what must occur – there must be a By-Law or Rule of the Party on point, authorizing Undeclared Voters to participate in the 2024 Presidential Primary **AND** a letter from the NHGOP Chair notifying the Secretary of State of said Bylaw provision. To-date, ***there is no such Rule or Bylaw of the NHGOP authorizing the participation of Undeclared Voters in their primary elections.***

## JURISDICTION AND VENUE

17. This court has subject matter jurisdiction under U.S.C.A. Const. Amend 1; N.H. Rev. Stat. § 659:14. Petitioner asserts jurisdiction pursuant to 28 U.S.C. § 1331 as federal questions in that Counts I and II are filed under 42 U.S.C. § 1983 and Count III seeks a declaratory judgment based on the federal constitutional right to freedom of association.

18. In addition, this Court may issue all writs necessary or appropriate in aid of its respective jurisdiction, agreeable to the usages and principles of law. *See* 28 U.S.C. 1651; United States v. Field, C.A.2 (N.Y.) 1951, 193 F.2d 92, certiorari denied 72 S.Ct. 202, 342 U.S. 894, 96 L.Ed. 670, certiorari dismissed 72 S.Ct. 303, 342 U.S. 908, 96 L.Ed. 679.

## STAGE OF THE PROCEEDINGS

19. On January 22, 2024, the Petitioners filed an Original Complaint as a "Complaint for Declaratory and Injunctive Relief." ECF 1. The Petitioners also filed an "Emergency Motion for Injunctive Relief." ECF 2.

20. Also on January 22, 2024, the court denied the First Emergency Motion for Injunctive Relief, because the Petitioners failed to include an Affidavit with their Motion, pursuant to Rule 65(b)(1)(B). ECF 4.

21. On January 23, 2024, the Petitioners filed a Second Emergency Motion for Injunctive Relief. This time, the petitioners provided an Affidavit and proper notice to the named Co-Defendants. ECF 5.

22. Also on January 23, 2024, the court again denied the Motion for Injunctive Relief. This time, stating that in the Original Complaint: "*None of the plaintiffs' claims allege that their own constitutional rights have been violated*." *See* Order, pg. 2. ECF 7.

23. Because of the deficiencies in the Original Complaint and because the court granted the joinder of the New Hampshire Republican State Committee (NHRSC) on April 4, 2024, as an additional co-defendant, the Petitioners filed for Motion for Leave to File an Amended Complaint. ECF 31.

24. On May 30, 2024, The Court had a hearing on the Motion for Leave to File an Amended Complaint. *See* Docket Entry dated 05/30/2024.

25. At the conclusion of the motions hearing, Magistrate Johnstone stated that she would take the testimony and hearing exhibits under advisement and if there were further questions of the court, would give the parties an opportunity to respond.

26.     On August 14, 2024, the magistrate filed a Report and Recommendation, stating that the plaintiffs' motion for leave to amend (ECF 31) should be denied based on futility.  Further, the magistrate recommended that the original complaint (ECF 1) remains the operative complaint in the matter.  <u>See</u> <u>ECF Docket Report (ECF 45)</u>.

27.     On October 28, 2024, the plaintiffs filed their Objections to the Magistrate's Report and Recommendations, citing their reasons for why the amended complaint was not futile.  ECF 47.

28.     The following day, on October 29, 2024, the court approved the Magistrate's Report and Recommendation.  <u>See</u> <u>Endorsed Order</u>, ECF Docket Report, 08/29/2024.

## ANALYSIS

29.     A preliminary injunction is appropriate where: (1) the party is likely to succeed on the merits; (2) the parties are likely to suffer immediate, irreparable injury-in-fact unless the injunction is issued; (3) a balancing of the equities weighs in favor of an injunction; and (4) the injunction is in the public interest.  <u>See</u> <u>League of Women Voter of N.C. v. North Carolina</u>, 769 F.3d 224, 236 (4th Cir. 2014).

30.     Petitioners contend that if Undeclared Voters and Same-Day Registration Voters are allowed to participate in the upcoming 2024 New Hampshire state Primary on September 10, 2024, irreparable harm will have occurred and deprived the plaintiffs[2] of their First Amendment right to freedom of association.

31.     In order to prevent "party raiding" – a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary – a State may

---

[2] In their Original Complaint, the plaintiffs improperly attempted to establish standing in the name of "the Party", rather than to <u>*allege that their own constitutional rights have been violated*</u>."  <u>See</u> Order, pg. 2.  ECF 7.  <u>In arguendo</u>, we will presume that the *pro se* litigants inferred that their constitutional rights have been violated.

Plaintiffs' Findings of Fact and Rulings of Law - 7

require party registration for a reasonable period of time before a primary election.  <u>See</u> <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973); <u>Cf</u>. <u>Kusper v. Pontikes</u>, 414 U.S. 51 (1973).

32. Although not public officials, political party chairpersons play substantial and discernible roles in state government beyond their statutorily enumerated duties.  <u>See</u> <u>Igneri v. Moore</u>, 898 F.2d 870, 874 (2d Cir. 1990).  Therefore, political party chairpersons owe a fiduciary duty to the general citizenry based on his "participation in" and "effective control over the processes of government."  <u>See</u> <u>United States v. Margiotta</u>, 688 F.2d 108, 125 (2d Cir. 1982), <i>cert. denied</i>.

**<u>Plaintiffs have standing under <i>Article III</i> of the U.S. Constitution</u>**

33. In its Objection to the Magistrate's Report and Recommendations, the plaintiffs provided several Supreme Court decisions in where that as a single voter, or group of voters, have asserted their right to challenge the perceived interference by state regulation to their right of freedom of association, and have had proper standing before the court.  ECF 47.

34. In their reply, the Secretary of State attempted to dissect those cases as standing was not the case-in-chief for those decisions.  ECF 48.  However, only <u>Lacasa v. Townley</u>, 883 F.Supp.2d. 1231 (S.D. Fla. 2012) was regarding standing because the plaintiffs were <u>not</u> members of the Democratic Party and therefore lacked standing to challenge.  <u>See</u> <u>Lacasa</u> at 1238 ("Non-party members did not have a First Amendment associational interest in voting in the party's primary.").  Here, the plaintiffs do have a First Amendment associational interest in voting in the party's primary.

35. It is for those cases cited, (ECF 47, ¶¶ 9 – 13) that the plaintiffs have standing.

**The Plaintiffs have a concrete, injury-in-fact for purposes of standing under *Article III*.**

36. The plaintiffs have also endured injury-in-fact in this matter. They have been (as well as the two previous petitioners who withdrew) threatened with lawsuits for exercising their rights to redress grievances in which to associate freely with fellow like-minded Republicans.

37. Plaintiff Karen Testerman and former plaintiff Patricia Jorgensen were illegally removed from their officer positions with the Merrimack County Republican Committee, as Chairman and Vice Chairman, because of the filing of this complaint.

38. And without an injunction, Undeclared Voters will be able to affect the outcomes of local town, city and county primary races in the upcoming state primary election on September 10, 2024, in where that **a single vote** can make the difference. Therefore, sufficient injury-in-fact is traceable to the challenged conduct and that is likely to be redressed by lawsuit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

**This Court has authority to issue any writs necessary**

39. The Secretary of State has argued that "the United States Supreme Court ruled that Eleventh Amendment immunity bars suits against states in federal court that allege violations of state law," citing Pennhurst State Sch. & Hosp. v. Halderman "(Pennhurst II)", 465 U.S. 89, 106 (1984). *See* Sec'y of State's Renewed MTD, ¶ 26 (ECF 49).

40. However, the Supreme Court's decision in <u>Pennhurst II</u> did not deprive the federal court of its jurisdiction under the "All Writs Act" to remedy conduct by state that violated the constitutional rights of prisoners. *See* 28 U.S.C. 1651; Benjamin v. Malcolm, C.A.2 (N.Y.) 1986, 803 F.2d 46, certiorari denied 107 S.Ct. 1358, 480 U.S. 910, 94 L.Ed.2d 528.

41. District Courts of the United States may issue all writs necessary or appropriate in aid of their respective jurisdictions, agreeable to the usages and principles of law. United States v.

Field, C.A.2 (N.Y.) 1951, 193 F.2d 92, certiorari denied 72 S.Ct. 202, 342 U.S. 894, 96 L.Ed. 670, certiorari dismissed 72 S.Ct. 303, 342 U.S. 908, 96 L.Ed. 679.

42.     The *Ex parte Young* doctrine allows suits like the Testerman's for declaratory or injunctive relief against state officers in their official capacities.  Reed v. Goertz, 598 U.S. 230, 234, 143 S.Ct. 955, 960, 215 L.Ed.2d 218 (2023).

43.     Therefore, the Testerman's pleas for injunctive relief is proper before this court.

**Petitioners are entitled to Equal Protection under the law.**

44.     Furthermore, the Petitioners are being treated differently than Undeclared voters.

45.     The Secretary of State more succinctly states the Petitioners' argument for how the Petitioners are treated differently than Undeclared voters, when in his Objection, the Secretary interprets the statute as follows:

> "All [undeclared] voters may **choose to remain undeclared** prior to the date of a party primary, **at which time** they may affiliate with a party **and** *vote in that party's primary*. See RSA 654:34, II (emphasis added)." *See Sec't of State's Obj.* at ¶ 23 (ECF 43).

46.     Under this interpretation by the Secretary of State's office, the state statute RSA 654:34 is unconstitutional.

47.     If a Republican or Democratic voter follows the law under RSA 654:34, then if they choose to change party affiliation between the first Wednesday in June and the day of the primary, then they may do so, but under penalty of being barred from voting on primary day.

48.     Whereas Undeclared voters have no public affiliation and are treated to **choose** whichever party's ballot they prefer, thereby undermining the critical role in determining both the party's message and its prospects of success in the electoral contest.

Plaintiffs' Findings of Fact and Rulings of Law - 10

49.     Such an interpretation of the two statutes separately renders the purpose of closing the primary in RSA 659:14 *meaningless* and creates two separate classes of voters – publicly-affiliated party voters and non-party voters who may choose to never publicly-affiliate yet still vote in a primary for which they have no freedom to associate.

50.     And as such, this affects the petitioners rights of Equal Protection to associate with like-minded publicly-affiliated members of a political party for the advancement of common political goals and ideas. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997).

51.     To be sure, Undeclared and independent voters have the right to not associate with a political party, sparing them the annoyance of being hounded for donations, or being bombarded with political mail advertisements, or the constant phone texts from candidates, and push cards from partisan solicitors on their doorsteps.

52.     But, as established by precedence, a voter must establish a minimum period of public affiliation in order to receive a party's primary ballot. Rosario v. Rockefeller, 410 U.S. 752 (1973); *cf*. Kusper v. Pontikes, 414 U.S. 51 (1973).

53.     The Report and Recommendation completely misses the point of the constitutional argument for primary voting integrity when it said: "The plaintiffs have the same right as "party raiders" [] to vote in the primary of their choice, and then change their status post-election." *R&R*, pg. 15.[3]

54.     It is because the Petitioners are Republicans and do not wish to have their votes spoiled, diluted, confused, or misapplied by including non-party members in the primary election,

---

[3] In actuality, this is incorrect. Publicly-affiliated, regular party members may not change their status immediately *post-election* like Undeclared may do. Instead, they must wait until the next regularly scheduled meeting of the Supervisor of the Checklist in their respective Towns.

thereby violating the petitioners' rights to freedom of association with individuals of their own choosing. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 162 (1970).

55.     The facts are no different than if *arguendo* the petitioners had argued that non-citizens were voting in the primary, and the court were to say that there was no harm because the non-citizens were not preventing the petitioners from voting or associating with the party.

56.     Therefore, it is the assertion of the Petitioners that allowing non-party voters to switch their party affiliation haphazardly and not meeting a minimum time period as established by law violates their rights of Equal Protection under the law. Edelman v. Jordan, 415 U.S. 651, 680 (1974); Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

**Petitioners have standing to sue under § 1983 for violations of federal criminal law**

57.     Having resolved the issues of standing for the petitioners in the Fiduciary claims under § 1983 and the Equal Protection claims under the First and Fourteenth Amendments, the petitioners now turn their attention to their standing regarding the federal criminal Counts 3 – 5.

58.     The petitioners concur with the Magistrate that as a matter of law, the petitioners have no legal standing in which to bring a claim exclusively under § 241. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). However, a § 1983 claim accrues when a plaintiff has reason to know of the injury which is the basis of his action. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

59.     Therefore, in order to make out an actionable conspiracy under § 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right. Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988).

60. At trial, the petitioners proffer that they will be able to demonstrate to the court that both previous Secretaries of State and previous party chairmen have been aware of the changes in the law since 1987, which were precipitated based on the decision in <u>Tashjian v. Republican Party of Conn.</u>, and have simply chosen to be deliberately indifferent to the unconstitutional interpretations of the state statutes governing the time and place of the primaries, and the limitations (or lack thereof) of who can participate in those primaries.

61. By conspiring to ignore the plain language reading of RSA 654:34 and RSA 659:14, the codefendants have abridged the federally-secured rights of the petitioners to their freedom of association with fellow members of the Republican Party without the perceived interference by state regulation which (as interpreted by the Secretary of State) allows non-party members access to primary ballots when the courts have established that non-party members have no right to associate with the Republican Party. <u>See</u> <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012); <u>Timmons</u> 520 U.S. at 357.

62. Therefore, the petitioners have standing under 42 USC § 1983 to assert Counts 3 -5 as the reasons for the basis of their actions. <u>See</u> <u>Am.Compl</u>. ¶¶ 51 – 54; <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of § 1983 must have the force of law"); <u>Lindke v. Freed</u>, 601 U.S. ----, --- S. Ct. ---, 2024 WL 1120880 * 8 (March 15, 2024).

63. Furthermore, the petitioners, fully aware that "[o]nly the United States as prosecutor can bring a complaint under 18 USC §§ 241 – 242," recommended that the factual matters in this case be referred to the U.S. Attorney for the District of New Hampshire for possible criminal investigation under the RICO statutes – 18 USC §§ 1861 – 1868. <u>See</u> <u>Am. Compl</u>. ¶ 54.

**Conclusion**

64.     Based on the foregoing, the petitioners request for Injunctive Relief should be granted immediately.

                                                  Respectfully Submitted,

DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

Dated: September 3, 2024     By:  /s/ David Testerman
                                                   David Testerman, *pro se*
Dave@sanbornhall.net
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 320-9524

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated: September 3, 2024     By:  /s/ Karen Testerman
Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent <u>by regular mail</u> and by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated:  September 3, 2024             /s/ Karen Testerman
                                      Karen Testerman, *pro se*