UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Patricia Jorgensen, et al,**<br><br>  **Plaintiffs,**<br> v.<br><br>**Secretary of State David M. Scanlan, et al,**<br><br>  **Defendants.** | **Civil No. 1:24-cv-00020-LM-AJ** |

## CHRIS AGER AND
## NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The Defendants, Chris Ager and the New Hampshire Republican State Committee ("NHRSC") (collectively, the "NHRSC Defendants"), through counsel, Drummond Woodsum, move to dismiss the Plaintiffs' (the "Testermans") Complaint for failure to state a claim for relief.

## INTRODUCTION AND BACKGROUND

The Testermans originally filed suit one day prior to the New Hampshire Presidential Primary Election, seeking equitable relief, in pertinent part, to prohibit undeclared voters from participating in the New Hampshire republican presidential primary, *see* ECF 1, at 10, and to sequester votes of undeclared voters, *see* ECF 2, at 1. On February 2, 2024, the Secretary of State filed a Motion to Dismiss on mootness grounds because, by that time, the primary had already taken place. ECF 11.

The Testermans later moved to amend their complaint. ECF 31. This Court denied the Testermans motion to amend as futile because they lacked standing on

1

five of the six proposed counts and failed to state a plausible claim for relief on the sixth. ECF 45. As a result, the original complaint, ECF 1, remains the operative complaint in this case. However, the original complaint suffers from the same infirmities as the proposed amended complaint and should be dismissed for similar reasons.

**ARGUMENT**

The complaint asserts three counts: Count I – breach of fiduciary duty as against Defendant Ager, Count II – breach of fiduciary duty as against Defendant Scanlan, and Count III – violation of RSA 659:14 and violation of the NH GOP's First Amendment right of association against all defendants.

I. **The Testermans' Complaint should not be dismissed as moot in the first instance.**

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *D. H. L. Assoc., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999) (*quoting Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Here, the Testerman's Complaint seeks only relief related to the 2024 Presidential Primary. COMPLAINT p. 10. That New Hampshire primary is complete, and the United States Republican Party has since selected Donald Trump as its candidate at its national convention in July, which would ordinarily render the case moot.

However, the Testermans' challenge to the conduct of the primary process is arguably "capable of repetition yet evading review" and therefore potentially not moot. *See Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Ramirez v. Ramos*, 438 F.3d

2

9 2, 100 (1st Cir. 2006) (citing authority to explain this exception to the mootness doctrine). The Parties would certainly benefit more from a decision dismissing the Complaint for failure to state a claim for relief or, at the very least, lack of standing, rather than mootness. The Testermans have demonstrated a willingness to serially litigate this issue, and if dismissed for mootness will likely simply file a new Complaint, further burdening the Defendants and this Court.

## II. Count I should be dismissed for failure to state a plausible claim for relief and lack of standing.

In Count I, the Testerman's assert that Defendant Ager "has failed in his fiduciary duties" by allegedly failing to notify the New Hampshire Secretary of State that the NHGOP had not authorized undeclared voters to participate in the primary, and this has "deprived the Party of its First Amendment right to enter political association…" COMPLAINT ¶ 23. Count I fails to state a claim for relief as the Testermans do not allege facts to find that Ager owed them any fiduciary duty, and they otherwise lack standing to enforce any duty owed to the Party. The Testerman's sought to bring a similar claim in their proposed amended complaint, and this Court's analysis rejecting that claim applies equally here. *See* ECF 45 pp. 8-12.

### a. The Testermans fail to plead sufficient facts to find that Ager owed them any fiduciary duty.

Under New Hampshire law, "a fiduciary relationship has been defined as a comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed. A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise

3

with the other's interest in mind." *Brzica v. Trs. of Dartmouth Coll.*, 147 N.H. 443, 447-448 (2002).

The Testermans' complaint fails to plead facts to establish that Ager owed a fiduciary duty to **them**, and therefore fails to state a plausible claim for breach of fiduciary duties. While the Testermans identify as members of the Republican party, this does not create a fiduciary relationship between the party chair and themselves because a party chair does not have influence over, or a confidential relationship with, individual members. COMPLAINT ¶ 19. Indeed, a party chair's fiduciary responsibility is to the organization which itself may, as here, conflict with individual members.

### b. The Testermans lack standing to enforce the a fiduciary duty claim on behalf of the Party.

In their Complaint, the Testermans allege that NHGOP (i.e., the "Party") Officials attempted to get Ager to notify the NH Secretary of State that the primary was closed to undeclared voters. COMPLAINT ¶ 8, 10. The Testermans allege that Ager's failure to do so, "breached his fiduciary duty" as "Party Chair." COMPLAINT ¶ 14. To the extent Ager arguably owed a duty to the Party, the Testermans lack individual standing to enforce the same.

Here, at its core, the Testermans seek to challenge a practice which they believe harms the Party as an association. "[A]ssociational standing" is different from "third-party standing." *See Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 539, 547 (6th Cir. 2021) (drawing distinctions between the two concepts). Associational standing confers standing on an association to sue for injuries as to which its individual members have standing. *See, e.g., Ne. Ohio Coal.*

4

*for Homeless & Serv. Emps. Int'l Union,* 467 F.3d 999, 1010 (6th Cir. 2006). It does not confer standing on individual members of an association to sue for injuries to the association.

This is no different than the Testermans' attempt to vindicate the interest of "the general citizenry," which this Court rejected when denying their motion to amend. ECF 45, p. 9.

### c. The Testermans lack standing to enforce the Party's First Amendment rights.

To the extent Count I contains an embedded freedom of association claim, it, too, fails as a matter of law. Their complaint that others might also vote in the same primary as them does not implicate their individual freedom of association. The *association* holds the right to associate with respect to who votes in its primary:

> The First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only. That is to say, a corollary of the right to associate is the right not to associate. Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.

*California Democratic Party v. Jones*, 530 U.S. 567 (2000). Indeed, what the Testermans are attempting to do violates the NHRSC's right to associate. As discussed in Section II, it is up to the party to determine whether and how to limit participation in the association, including voting at the primary.

Ultimately, the Testermans remain free to choose whether to associate with the NHRSC, including whether to participate in the state primary. However, if they

5

choose to participate in the association, their interest is limited by the NHRSC's internal processes. If they choose to vote in the primary, their interest is limited to casting their ballot; nothing more, nothing less. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression.")

### III. Count II should be dismissed for the reasons stated in the Court's Order on the Testermans' Motion to Amend.

Count II appears to apply only to the New Hampshire Secretary of State, and not the NHRSC Defendants. However, it should be noted that the fiduciary duty claim set forth therein fails for the same reasons discussed above, and as discussed in this Court's prior order. The Testermans cannot pursue a fiduciary duty claim against the New Hampshire Secretary of State on behalf of the general citizenry, and they have failed to plead facts to find the Secretary of State owed them a fiduciary duty as individual citizens.

### IV. Count III should be dismissed because RSA 659 does not provide a cause of action, and the Testermans lack standing.

In Count III, the Testermans assert that Ager colluded with the Secretary of State to violate RSA 659:14.

As a threshold matter, RSA 659 does not provide a private right of action. Even assuming a violation of the statute occurred, the Testermans do not have a viable enforcement cause of action. *See Snierson v. Scruton*, 145 N.H. 73, 79 (2000) (absent legislature's express or implied intent to create private right of action, we will conclude that statute does not do so).

6

Further, the underlying premise of Count III is flawed. The Testermans assume that RSA 659:14 is being violated because they do not believe that the NH GOP adopted a rule permitting undeclared voters to vote in the primary. However, both the NHRSC and the Secretary of State have operated for decades with the understanding that undeclared voters are permitted to participate in the primary. RSA 659:14 requires written notification by the party chair to the Secretary of State **only** if there is to be a change. The Testermans attempted, and failed, to affect that change via party process. The Testermans cannot do an end-run around the internal political process via this lawsuit.

To the extent Count III attempts to assert a conspiracy claim, it fails. "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987). "For civil conspiracy to exist, there must be an underlying tort which the alleged conspirators agreed to commit." *University Sys. of New Hampshire v. U.S. Gypsum Co.*, 756 F. Supp. 640, 652 (D.N.H. 1991). Here, the Testermans' complaint is devoid of any factual allegations suggesting any overt agreement *to commit a tort* between Ager and the Secretary of State. That both sides may have come to the same conclusion as to what needs to happen to close the primary is not the stuff of "conspiracy" and falls well short of raising "any plausible inference that defendants had a plan, much less that they knew of and acted in accordance with a plan," as required to state a claim for conspiracy. *Brady v. Mosca, et al.*, 2023 DNH 154, p. 14.

Finally, to the extent Count III rests on the association rights of the party, the Testermans lack standing. The First Amendment "confers on political parties [the right] to structure their internal party processes and to select the candidate of the party's choosing." *New York State Bd. Of Elections v. Torres*, 552 U.S. 196, 203 (2008). Because of political parties' strong constitutional associational rights, courts generally do not interfere in the internal affairs of political parties because they are, at their core, non-justiciable political disputes. *See Democratic Party of United States v. Wisconsin Follette*, 450 U.S. 107, 124 (1981) ("a court, may not constitutionally substitute its own judgment for that of the Party…"); *LaRouche v. Fowler*, 152 F.3d 974 (D.C. Cir. 1998).

The party's "convention itself is the proper forum for determining intra-party disputes over selection of the party's nominees and candidates." *O'Brien v. Brown*, 409 U.S. 1, 4 (1972) (per curiam), vacated as moot by 409 U.S. 816 (1972). Here, the Testermans are challenging the NHRSC's conduct as it pertains to the selection of party nominees and/or candidates. As the Testermans' sole recourse is via the party's internal political processes, this Court should deny the motion to amend as futile.

## CONCLUSION

The Testermans, like all individuals, remain free to associate with the republican party, on a local, state, or national level. The Testermans, like all individuals, remain free to vote for their chosen candidate(s) in local, state, and national elections.

However, the Testermans are not free to unilaterally dictate what the NHRSC does or does not do. Whatever interests they may have as members of the republican party, it can only be redressed through internal party processes.

Respectfully submitted,

**Chris Ager and the New Hampshire Republican State Committee**

By its Attorneys,

Drummond Woodsum & MacMahon

Dated: September 4, 2024    *s/ Demetrio F. Aspiras, III*
Demetrio F. Aspiras, Esq., NH Bar 19518
Mark V. Franco, Esq. NH Bar 16708
670 N. Commercial Street, Suite 207
Manchester, NH 03101
603.792.7414
daspiras@dwmlaw.com
mfranco@dwmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September 2024, I sent the foregoing Objection to the Motion for Leave to File First Amended Verified Complaint to the parties and counsel of record via the Court's electronic filing system.

Dated: September 4, 2024        By: *s/ Demetrio F. Aspiras, III*
          Demetrio F. Aspiras, III