UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Karen Testerman, et al.

     v.                                    Case No. 24-cv-20-LM-AJ

NH Secretary of State, et al.


### REPORT AND RECOMMENDATION

Plaintiffs Karen Testerman and David Testerman[1] sued New Hampshire Secretary of State David Scanlan, the New Hampshire Republican State Committee and its Chairman, Chris Ager, claiming that the defendants, individually and collectively, violated their rights by allowing voters who were previously undeclared or otherwise not affiliated the with the New Hampshire Republican Party vote in the New Hampshire presidential primary in January 2024. See Compl. (Doc. No. 1). They assert that allowing this category of what plaintiff Karen Testerman described as "five-minute Party members" to vote in the Republican primary interferes with their First Amendment right of association with the political party of their choice. Presently before the court is the plaintiffs' Third Emergency

---

[1] Two other plaintiffs, Patricia Jorgensen and Nikki McCarter, voluntarily dismissed their claims and are no longer part of this case. See Feb. 15, 2024, End. Ord. granting motions.

Motion for Injunctive Relief (Doc. No. 40), which has been referred to the undersigned Magistrate Judge for a Report and Recommendation.[2] After reviewing the parties' submissions and conducting oral argument,[3] the court recommends that the district judge deny plaintiffs' motion for injunctive relief.[4]

The plaintiffs seek a preliminary injunction pursuant to Fed. R. Civ. P. 65(a). Pltf. Mot. (Doc. No. 40) at 1. "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 24

---

[2] The plaintiffs target their requested relief to the upcoming state primaries. They ask this court to order the Secretary of State to instruct all moderators to mark all ballots issued to registered Undeclared voters and Same-day registered voters with an indelible red inkstamp in the upper right corner of the ballot in order to preserve the ballots for later audit "if found necessary."

[3] The court has also considered the plaintiffs' unopposed exhibits (Doc. No. 52) and the parties agreed-upon facts. Doc. No. 54). In addition, plaintiffs filed a witness affidavit (Doc. No. 58), and submitted proffers regarding testimony they would have elicited from other witnesses identified on their witness list. (Doc. No. 52). The court overruled defendants' objections to the affidavit and proffer, and has considered the evidence in its analysis to the extent it is relevant to the issues in dispute.

[4] The defendants argue that this case is moot, as the January 2024 primaries and candidate selection process have concluded. While the court is sympathetic to this argument, the plaintiffs request for injunctive relief asserts the same legal arguments as the original complaint, but instead targets the upcoming New Hampshire State primary, scheduled to take place on September 10, 2024. In allowing this motion to proceed, the court is giving great deference to plaintiffs' pro se status, and does so without prejudice to the arguments the defendants raise in their respective motions to dismiss.

(2008). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in the movant's favor; and (4) that the injunction would serve the public interest. Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015). The movant's likelihood of success on the merits is the "main bearing wall" of the court's analysis. Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 42 (1st Cir. 2024) , petition for cert. docketed, No. 24-131 (U.S. Aug. 6, 2024) (citing W Holding Co. v. AIG Ins. Co. – Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014)); see also Norris on behalf of A.M. v. Cape Elizabeth Sch. Dist., 969 F.3d 12, 22 (1st Cir. 2020) ("Likelihood of success on the merits is the most important of the four preliminary injunction factors." ) (cleaned up).

A.  Likelihood of Success on the Merits

On January 23, 2024, the day of the New Hampshire Presidential Primary, Chief Judge McCafferty denied plaintiff's second motion for injunctive relief on two alternative grounds, each applicable to a different construction of the plaintiffs' complaint. (Doc. No. 7). She first noted that each of the three

3

counts of the complaint[5] specifically allege that the defendants'
actions were depriving the New Hampshire Republican Party
("NHRP") of its First Amendment right of freedom of association,
as opposed to any rights belonging to the individual plaintiffs.
Order (Doc. No. 7) at 2.  Construing the complaint as seeking
relief on behalf of the NHRP, Judge McCafferty found against the
plaintiffs because pro se plaintiffs can only represent
themselves in litigation.  Id. at 2-3.  Alternatively construing
the complaint as being brought only on plaintiffs' own behalf,
Judge McCafferty ruled that the plaintiffs lacked standing to
assert the NHRP's constitutional rights.  Id. at 3. Judge
McCafferty accordingly held that the plaintiffs failed to
establish a likelihood of success on the merits and were
therefore not entitled to injunctive relief.

Even if the court assumes, arguendo, that the plaintiffs
"inferred" that their own rights were being violated, see Pltf.
Proposed Findings and Rulings ("PFR") (Doc. No. 53) at 7 n.2,
they have offered no authority that persuades the court to reach
a conclusion different from Judge McCafferty's.  That is, the
plaintiffs lack standing to pursue these claims, as their
Constitutional rights are not implicated.

---

[5] On August 29, 2024, the court denied Plaintiffs' motion to
amend their complaint. As such, the original complaint (Doc. No.
1), remains the operative document.

As Judge Laplante observed in dismissing plaintiff Karen Testerman's earlier lawsuit challenging the defendants' actions in advance of the 2024 New Hampshire Presidential primary, standing is a Constitutional prerequisite to filing suit in federal court:

> "Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." Biden v. Nebraska, 143 S. Ct. 2355, 2365 (2023) (quoting TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021)). More specifically, "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and that is likely to be redressed by the lawsuit." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). In addition to these constitutional considerations, prudential limitations "prevent courts from "adjudicating 'questions of broad social import where no individual rights would be vindicated and … limit access to the federal courts to those litigants best suited to assert a particular claim.' " Conservation Law Found. Of New England, Inc., 950 F.2d 38, 41 (1st Cir. 1991) (alterations in original) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985)).

Testerman v. NH Sec'y of State, No. 23-CV-499-JL-AJ, 2024 WL 1482751, at *2 (D.N.H. Jan. 9, 2024) (appeal filed, No. 24-1316 (1st Cir. Apr. 3, 2024).[6]

---

[6] At various times during oral argument, plaintiffs described their claims as "vote dilution."  Not only is that claim not contained in plaintiffs' complaint, but Judge Laplante squarely rejected it in the earlier litigation.

In an effort to persuade the court to depart from Judge McCafferty's earlier ruling, the plaintiffs have, over the course of various pleadings in this case, cited to numerous cases which, they assert, support their argument that they have standing to pursue the three First Amendment claims in their complaint.  In short, none of the cases support plaintiffs' position.

For example, plaintiffs cite Rosario v. Rockefeller, 410 U.S. 752 (1973), for the proposition that a state may "require party registration for a reasonable period of time" to thwart so-called "party raiders" (voters who might have had an affiliation with a different party) from voting in a primary election.  Pltf. PFR (Doc. No. 53) at 7-8. That holding, however, does not mandate the exclusion of "party raiders" under the instant plaintiffs' argument that "raiding" impacts the rights of "regular" Party voters.  It simply allows a State to limit the impact of such voters.  Most importantly for the standing inquiry, the plaintiffs in Rosario, unlike the plaintiffs in this case, were completely barred from voting in the Party primary of their choice if they missed a registration deadline.  They alleged that they were deprived of their right to vote and to associate with the party of their choice.  Those plaintiffs' injury, and therefore their standing, is obvious – they were not permitted to vote.  The plaintiffs here are free

to vote in the Republican Party primary if they so choose. Or, they could have changed their affiliation to another party, or unaffiliated entirely and made their decision on primary day. In fact, the only discussion of standing in Rosario undercuts plaintiffs' argument.  In a footnote, the Court noted that a group of plaintiffs who were not subject to the time limitation on party registration lacked standing to assert that the requirement was unconstitutional.  410 U.S. at 759 n.9.

The plaintiffs also rely on Bd. Of Elections v. Lopez Torres, 552 U.S. 196 (2008), a case in which candidates alleged that New York's laws for political parties' nominating candidates for certain elected judges violated their political association rights under the First Amendment. The plaintiffs here cite the case for the proposition that "[a] political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate -selection process that will in its view produce the nominee who best represents its political platform." Pltf. Repl. (Doc. No. 42) at 2.  Reliance on this case is somewhat perplexing, as the assertion of the Party's rights is an unremarkable proposition that does not support plaintiffs' standing to sue. Moreover, Lopez Torres contains no analysis whatsoever of the plaintiffs' standing in that case. Finally, a full and fair reading of the Supreme Court's opinion implicitly undercuts, rather than supports, the

plaintiffs' standing argument, as the Court observed that the plaintiffs were "in no position to rely on the right that the First Amendment confers on political parties to structure their internal party processes and to select the candidate of the party's choosing." 552 U.S. at 203.  So it is here.

Another case plaintiffs cite is Clingman v. Beaver, 544 U.S. 581 (2005), which held that Oklahoma's "semi-closed" primary system – pursuant to which a political party may invite only its own registered members and voters registered as Independents to vote in its primary – did not violate the right to freedom of association of the Oklahoma Libertarian Party or individual Oklahomans registered as Democrats and Republicans. Id. at 584.  As with Lopez Torres, however, Clingman contains no analysis of the plaintiffs' standing.  Moreover, the fact that a state can prevent members of other parties from voting in a party's primaries, does not mean that it is required to do so. See id. at 588 ("The question is whether the Constitution requires that voters who are registered in other parties be allowed to vote in the [Libertarian Party]'s primary."). Unlike the plaintiffs in Clingman, the plaintiffs in this case are not being prevented from voting in the primary of their choice. Thus, while Clingman did not address standing, the two sets of plaintiffs are not valid comparators.

In further support of their motion for injunctive relief, the plaintiffs also rely on a list of cases they cited in their objection to this court's recommended denial of their motion to amend. (Doc. No. 47). As Judge McCafferty found, however, these cases do not support plaintiff's standing in this case. See Aug. 29, 2024 Order ("The cases cited by the plaintiffs in their objection do not support their argument that they have standing to assert the claims in the proposed amended complaint.").

The plaintiffs make the blanket assertion that "a single voter, or group of voters" can have standing to challenge an infringement of their associational rights. Pltf. Obj. (Doc. No. 47) ¶ 8. But that observation, while correct, does not address the shortcoming in the plaintiffs' claim of standing in this case, or the court's analysis, which is unrelated to the number of plaintiffs. For example, in Bullock v. Carter, 405 U.S. 134 (1972), the plaintiffs were three political candidates who could not run in a primary election because they could not afford a filing fee. And in Burdick v. Takushi, 504 U.S. 428 (1992), the plaintiff was a single voter who was prohibited by state law from submitting a write-in vote for a candidate not on the ballot. Id. at 430-31. Although standing was not a litigated issue in Burdick, the plaintiff, unlike the plaintiffs in this case, was alleging that he was unable to vote for the candidate of his choice. Thus, his standing was clear. And finally, a

9

cited case from this District is another example of the plaintiffs' reliance on inapposite cases. In Young v. Gardner, 497 F. Supp. 396 (D.N.H. 1980), two New Hampshire voters challenged certain New Hampshire election provisions which impacted their ability to change their party registration. Id. at 398. While standing was not a litigated issue, the plaintiffs in Young were the individuals whose rights were allegedly affected, as they were not permitted to change their registration.  Once again, this contrasts with the present plaintiffs, whose ability to register and cast votes in the primary and for the candidates of their choice are unaffected by the defendants' alleged actions.

The plaintiffs have provided no evidence to indicate that their right to affiliate with the party of their choice and vote accordingly has been impaired.  They concede that they remain Republican Party voters eligible to vote in the primary.[7] They have provided the court with no persuasive authority that they have Article III standing to prevent other voters from casting votes in the Republican primary, even if, as plaintiffs argue, undeclared voters are treated differently than those who

---

[7] Rather, it appears that it is the plaintiffs who seek to prevent other voters from affiliating with the party of their choice.

plaintiffs believe are more "committed" to the Republican Party.[8]
As such, they have failed to demonstrate that they have standing
to sue, and accordingly, they have failed to demonstrate a
likelihood of success on the merits.

Although continuing further would be "matters of idle
curiosity" in the absence of a likelihood of merits success, New
Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9
(1st Cir. 2002), the court addresses the three remaining
injunction factors both as a matter of completeness and in
deference to plaintiffs' pro se status.[9]

B. Irreparable Harm

To the extent that the plaintiffs claim irreparable harm
from being forced to "associate" with voters who, they maintain,
should not be allowed to vote in the Republican primary, New
Hampshire law provides them with a remedy. Pursuant to N.H. Rev.
Stat. Ann. § 659:29:

> Any voter at any state or presidential primary
> election may challenge any other voter offering to
> declare himself as a member of a party or to vote the
> ballot of a party. Such challenged voter shall not be

---

[8] The court notes that the plaintiffs' complaint does not
contain a claim for violation of their equal protection rights,
though they attempted to assert on in their unsuccessful motion
to amend.

[9] Among other arguments, defendant Scanlan also argues that
the Eleventh Amendment prevents this court from ordering a state
official to follow state law. The court declines to address this
Constitutional issue, in light of the plaintiff's lack of
Article III standing.

> allowed to so declare or so vote until he makes an
> oath or affirmation that he affiliates with and
> generally supports the candidates of the party.

The plaintiffs, in the absence of injunctive relief can address

their claimed injuries by invoking this provision of New

Hampshire law.[10]

## C.  Balance of Harms and Public Interest

These two factors overlap in this case.  The plaintiffs'

requested relief is to have the ballots of certain voters marked

and sequestered for some unstated period of time until this case

is finally resolved. Plaintiffs assert that these voters are

engaging in fraud and illegal election manipulation by "party-

raiding."  However, plaintiffs offer nothing more than

speculation as to those voters' motives for voting in a

particular primary.  Moreover, the voter would have no

opportunity to challenge the marking and sequestration of their

ballot.  Such a result is arguably more harmful to these voters

considering that the potential failure to count their votes is

based only on plaintiffs' speculation as to their motives.

Accordingly both the balance of harms and public interest

inquiries weigh against the plaintiffs. In the end, the court

resolves all four injunction factors against plaintiffs.

---

[10] At oral argument, plaintiff Karen Testerman acknowledged
this remedy but asserted that effecting such challenges across
New Hampshire's hundreds of voting locations would be
logistically difficult.

## Conclusion

Based on the foregoing, the district judge should deny plaintiffs' third emergency motion for injunctive relief. (Doc. No. 40). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

September 6, 2024

cc:  David Testerman, pro se
     Karen Testerman, pro se
     Counsel of Record

13