IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JORGENSEN, ET AL.

                PLAINTIFF(S),

v.

                Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

                DEFENDANT(S).

## PLAINTFFS' COMBINED OBJECTIONS TO CO-DEFENDANTS MOTIONS TO DISMISS

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Plaintiffs"), in the above captioned matter, combine their Objections to the Secretary of State's Renewed Motion to Dismiss (ECF 49) and Chris Ager and New Hampshire Republican State Committee's Motion to Dismiss (ECF 55), for the following reasons:

1. For brevity sake, the plaintiffs combine their objections to the Secretary of State's Motion to Dismiss (ECF 49) and Chris Ager and the New Hampshire Republican State Committee's Motion to Dismiss (ECF 55), based on four alternative premises:

2. (1) plaintiffs' standing is proper based on the recent New Hampshire Supreme Court in <u>Daniel Richard v. Governor</u>, 2024 N.H. 53 (Sept. 12, 2024), --- A.3d --- (2024), *citing* <u>Baker v. Carr</u>, 369 U.S. 186, 205-06 (1962)(noting that voters have standing to bring equal protection challenges to complain of vote dilution);

3.  (2) plaintiffs' complaint is not moot as this case satisfies "the familiar exception to the mootness doctrine for cases that are capable of repetition, yet evading review (emphasis added, quotations omitted)," State v. Carter, 167 N.H. 161 (2014);

4.  (3) there can be "no sovereign immunity when [a court is asked to declare someone's rights under a statute]. The state is not above its own ... laws." University of Kentucky v. Moore, 599 S.W.3d 798, 813 (2019); Green v. Mansour, 474 U.S. 64, 79 (1985) (Brennan, J., dissenting) ("Because the disputes in the instant case are between citizens and their own State and because a federal question is the source of federal-court jurisdiction, the Eleventh Amendment, properly construed, is no bar to petitioners' suits"); and

5.  (4) declaratory relief is a plausible claim for relief when "[t]here is no harm to state resources from a declaratory judgment… [and] [w]hen the state is a real party in interest, the state is merely taking a position on what a plaintiffs rights are in the underlying controversy." University of Kentucky v. Moore, 599 S.W.3d 798, 813 (2019).

**I.      Plaintiffs have standing based on 28 U.S.C. § 1343(3) and *Baker v. Carr* (1962)**

6.  The plaintiffs proffer five (5) reasons why they are entitled to standing under Article III of the United States Constitution.

7.  First, as a matter of statutory law, the court should have granted *de minimus* an injunction for those ballots that will be cast by Undeclared "voter[s] registered in the town or ward [of the Plaintiffs] in which the election is held," in order that standing could be conferred on the plaintiffs so that the district court could get to the underlying complaint. See N.H. R.S.A. § 659:27; *see also* N.H. R.S.A § 659:27-a (a voter may challenge another voter for many reasons, including the statement: "*This is a primary and the person seeking to vote in the (state political*

*party name) _____ primary is not a declared member of the party he or she claims to be affiliated with.*"

8.     Plaintiffs contend that Undeclared Voters and Same-Day Registration Voters have caused irreparable harm and deprived the plaintiffs of their First Amendment right to freedom of association, in now both the Presidential and state primaries of 2024.  <u>See</u> <u>Plaintiff's Motion for Injunctive Relief</u>, ¶¶ 25 – 27, ECF 40, <u>Exhibit A</u>.

9.     Second, under <u>28 U.S.C. § 1343 (a) (3)</u>, the law states that:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced **by any person** * * * (t)o redress the deprivation, **under color of any State law**, **statute**, ordinance, regulation, **custom or usage**, of any right, privilege or immunity secured by the Constitution of the United States * * *."

10.     The plaintiffs invoke 28 USC § 1343(3) as having **standing** before this District Court "by any person [singular]," under color of any State law, statute, custom or usage, of their rights secured by the Constitution of the United States.

11.     Third, the underlying complaint in this matter is: the Secretary of State may not interpret a state statute in a fashion which instructs a citizen to commit fraud (e.g., willful perjury).

12.     The two laws RSA 659:14 and RSA 654:34 cannot be interpreted separately without making RSA 654:34 unconstitutional.

13.     As the plaintiffs have argued multiple times in this matter – such an interpretation of the two statutes *separately* renders the purpose of closing the primary in RSA 659:14 <u>*meaningless*</u> and creates two separate classes of voters – (1) publicly-affiliated political party voters and (2) non-party voters who may choose to never publicly-affiliate with the political party, yet still are illegally allowed to vote in a primary for which they have no freedom to associate.  <u>See</u> <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012).

14.	If a New Hampshire voter challenges another voter as not being a declared member of the party (RSA 659:27-a), then "the moderator shall not receive the vote of the person so challenged **until the person signs and gives to the moderator an affidavit** (emphasis added)," affirming their party affiliation.  (RSA 659:27).

15.	Under RSA 654:34, II (b), the law states: "A voter may also register as a member of a party **at any primary** by requesting to be registered as a member and voting the ballot of the party of the voter's choice. A voter may also **register once again as an undeclared voter after voting in a primary as a registered member of a party** by returning the card or signing the list of undeclared voters from the statewide centralized voter registration database provided for in paragraph V (**emphasis added**)."

16.	Read by itself, without the "open primary" language of RSA 659:14, the Secretary of State is encouraging Undeclared voters to commit fraud by:

17.	(1) allowing same-day registration as a *temporary* Republican party member;

18.	(2) voting in the Republican party as equal to publicly-affiliated party members;

19.	(3) then un-registering at the back of the polling place, as an Undeclared voter once again, without ever having met the public affiliations test.  <u>See</u> <u>Rosario v. Rockefeller</u>, 410 U.S. 752 (1973); <u>Eu v. San Francisco County Democratic Central Comm.</u>, 489 U.S. 214, 224 (1989); <u>Tashjian v. Republican Party of Connecticut</u>, 479 U.S. 208, 214 (1986); and <u>Clingman v. Beaver</u>, 544 U.S. 581, 592 (2005).

20.	However, if the state statutes RSA 659:14 and RSA 654:34, II (b) are **read together**, the following **legal** actions take place:

21.	(1) The party votes to adopt a rule in which undeclared voters may vote in the upcoming primary election until rescinded by the party;

22. (2) The party chairman notifies the Secretary of State of the "open" primary rule adoption;

23. (3) Undeclared voters may publicly-affiliate with the party "for the day", and then return to Undeclared status without having committed fraud; and

24. (4) The process repeats itself until the party rescinds its open primary rule.

25. But, by allowing the Secretary of State to misapply the interpretation of the state statutes RSA 659:14 and RSA 654:34, II(b) **separately**, the Secretary of State is encouraging voters to commit fraud by perjuring themselves, regarding their ongoing party affiliation.  <u>See</u> <u>Motion for Injunctive Relief</u>, ¶¶ 10 – 17, <u>Exhibit A</u>, ECF 40.

26. Fourth, as established in the recent New Hampshire Supreme Court decision, <u>Daniel Richard v. Governor</u>, 2024 N.H. 53 (Sept. 12, 2024), --- A.3d --- (2024), fraudulent acts that dilute the votes of some have long been held to be within judicial cognizance.  <u>Baker v. Carr</u>, 369 U.S. at 247 – 48.  Therefore, the New Hampshire Supreme Court recognizes the same argument in *Daniel Richard* as in this instant case, that a single voter may challenge in court the dilution of his or her vote.

27. In <u>Baker v. Carr</u>, the court stated that: "We hold that the appellants <u>do have standing</u> to maintain this suit. […] that voters who allege facts showing disadvantage to themselves <u>as individuals</u> have standing to sue. These appellants seek relief in order to protect or vindicate an interest of their own, and of those similarly situated (<u>emphasis added</u>)."  <u>Baker v. Carr</u>, 369 U.S. at 206 – 07.

28. Finally, the court makes issue that the *pro se* litigants, while enumerating themselves individually and collectively as members of the Merrimack County Republican Committee

(Orig. Compl. ¶ 19), and listing their perceived harm, have failed to "*allege that their **own** constitutional rights have been violated* (emphasis added)." See Order, pg. 2, (ECF 7).

29. The plaintiffs attempted to rectify this lapse of wording in their Amended Complaint. However, the court dismissed that Amended Complaint as being futile. So, the original wording still stands.

30. A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

31. It is clear that the plaintiffs believed themselves to be both individually harmed (and collectively as officers/members of the Merrimack County Republican Committee) by allowing unaffiliated voters to participate in what should have been a closed primary for the Republican Party.

32. As such, the plaintiffs reserve the right to move to amend their complaint, in order to repair any perceived deficiencies by the court in elucidating their complaint effectively, based on Estelle v. Gamble.

33. Therefore, the plaintiffs have standing (individually and collectively as officers/members of the Merrimack County Republican Committee) based on their concrete injury of vote dilution of those Undeclared voters who have no fundamental right of association with the Republican Party. See Lacasa v. Townley, 883 F.Supp.2d 1231 (2012); Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997).

## II.     The plaintiffs injuries are capable of repetition, yet evading review.

34.     The Secretary of State attempts to argue that the Complaint is moot, stating that the Court cannot "give any effectual relief to the Plaintiffs should they prevail." <u>See</u> <u>Secretary of State's Renewed Motion to Dismiss</u>, ¶ 4, ECF 49.  However, it is not.  Only the ability of this Court to grant injunctive relief **before** the ballots were cast on 2024 Presidential Primary Day (and now also the September 2024 state primary election) is now moot.

35.     And yet, the injury-in-fact is now more relevant than ever.  Recent media reports demonstrated the infidelity of undeclared voters as they attempted to dilute the desires of the publicly-affiliated Republican voters in the recent election.[1]  Because voters who are not "publicly affiliated" with the Republican Party were unconstitutionally-allowed to participate in the presidential primary election, and now also the September 2024 state primary election, the plaintiffs' votes have been inexorably diluted by those who have no desire to participate in the ongoing affairs of the New Hampshire Republican Party.

36.     The relief is now clear – that this court can review the constitutionality of the election laws, as misapplied by the Secretary of State, and through a declaratory judgment, grant the Plaintiffs effective relief.

37.     The <u>Ex parte Young</u> doctrine allows suits like the Testerman's for declaratory or injunctive relief against state officers in their official capacities.  <u>Reed v. Goertz, 598 U.S. 230, 234, 143 S.Ct. 955, 960, 215 L.Ed.2d 218 (2023)</u>.

38.     "We find this case satisfies the familiar exception to the mootness doctrine for cases that are <u>capable of repetition, yet evading review</u> (emphasis added, quotations omitted)." <u>State v.

---

[1] https://thehill.com/homenews/campaign/4426773-70-percent-haley-voters-new-hampshire-not-republicans-exit-poll/

Carter, 2014 WL 6656641, 167 N.H. 161 (2014) (*quoting*) Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 518, 44 A.3d 493 (2012).

39. If this injustice is not repaired, then interlopers will again be allowed to affect the outcome of the presidential primary and state primary elections, thereby diluting the candidate-selection process that will in its view produce the nominee who best represents its political platform. See N.Y. Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008); Alaskan Independence Party v. Alaska, 545 F.3d 1173, 1176 (9th Cir. 2008); see also 34 CFR § 9032.7 (a) (4).

40. The doctrine of mootness is designed to avoid deciding issues that have become academic or dead. However, the question of mootness is not subject to rigid rules but is regarded as one of convenience and discretion. A decision upon the merits may be justified where there is a pressing public interest involved, or future litigation may be avoided. See Batchelder v. Town of Plymouth, 160 N.H. 253, 254, 999 A.2d 323 (2010); see also Sullivan v. Town of Hampton Bd. Of Selectmen, 153 N.H. 690, 692, 917 A.2d 188 (2006).

41. The Secretary of State has acknowledged that the NH SOS does not have in its possession any correspondence from the NHGOP Chair declaring the Party's Primary to be ***open*** to Undeclared Voters.

42. On October 9, 2023, Secretary of State Scanlan replied to a constituent's e-mail, stating:

> "In response to your RSA 91-A request my office has not been able to locate any 'written notice' of a Republican State Party rule change relative [to] which voters can participate in a New Hampshire primary election. The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to undeclared or remain in the party after voting has been in place for decades." – Proposed Statement of Undisputed Facts, ¶ 14, ECF 54; Compl. Exhibit B, ECF 31-1.

Simply put, in this reply, Secretary Scanlan admitted that there was no legitimate authority to include Undeclared Voters other than it "*has been in place for decades.*" Id.

43.   In an October 26, 2023 news article, Secretary of State David Scanlan is quoted as saying:

> "I have received no such letter that would require me to make any change . . . . The presidential primary will be conducted in the same manner it has been conducted for decades. The party chair is required to write a letter to the Secretary of State to inform him or her **of any change in party rules** that would determine who can participate in a party primary and that letter has to be delivered before the filing period for office opens up (**emphasis added**)." See **Scanlan: Undeclared Voters Won't Be Blocked from Taking GOP Ballots in FITN Primary,** https://indepthnh.org/2023/10/26/gop-resolution-wont-change-presidential-primary/. – Proposed Statement of Undisputed Facts, ¶ 14, ECF 54; Exhibits List, Exhibit 106, ECF 52.

44.   This news article demonstrates that the Secretary of State has been intellectually disingenuous about the election laws and how they are applied. The law specifically says that notice is to be given upon the party-approved opening of the state primary – not on a "change in circumstances" based on previous customs and usage.

45.   In both instances above, the Secretary of State misquotes RSA § 659:14, which states that the party chairman must notify the Secretary as to "*whether the party has adopted such a rule*" to allow for an open primary has occurred, and not to a change-in-circumstance notification.

46.   Secretary of State David Scanlan, "acting under custom or usage of a state," has acknowledged that the State of New Hampshire ignored the provisions of RSA § 659:14 "for decades," thereby opening the presidential primary to voters not "publicly affiliated" with the New Hampshire Republican Party, in violation of the plaintiffs' rights to freedom of association with individuals of their own choosing.

47. Therefore, the complaint is not moot, as it is of a pressing public interest that the Democratic and Republican Presidential primaries are secure from fraud and party raiders who would seek to dilute the cumulative vote for nefarious purposes. And the Court should take up the matter in order to avoid future litigation on the exact same complaint.

### III. There is no sovereign immunity for a federal declaratory action.

48. The Secretary of State attempts to resurrect its tired assertions that the Eleventh Amendment bars the plaintiffs' complaint. *See* Secretary of State's Renewed Motion to Dismiss, ¶¶ 26 – 28, ECF 49.

49. First, the Secretary of State previously argued that "the United States Supreme Court ruled that Eleventh Amendment immunity bars suits against states in federal court that allege violations of state law," citing Pennhurst State Sch. & Hosp. v. Halderman "(Pennhurst II)", 465 U.S. 89, 106 (1984). *See* Sec'y of State's Renewed MTD, ¶ 26 (ECF 49).

50. However, in reading further into the Supreme Court's decision in *Pennhurst II*, the Supreme Court did not deprive the district court of its jurisdiction under the "All Writs Act" to remedy conduct by state that violated the constitutional rights of prisoners. *See* 28 U.S.C. 1651; Benjamin v. Malcolm, C.A.2 (N.Y.) 1986, 803 F.2d 46, certiorari denied 107 S.Ct. 1358, 480 U.S. 910, 94 L.Ed.2d 528.

51. District Courts of the United States may issue all writs necessary or appropriate in aid of their respective jurisdictions, agreeable to the usages and principles of law. United States v. Field, C.A.2 (N.Y.) 1951, 193 F.2d 92, certiorari denied 72 S.Ct. 202, 342 U.S. 894, 96 L.Ed. 670, certiorari dismissed 72 S.Ct. 303, 342 U.S. 908, 96 L.Ed. 679.

52.     In his dissent, in <u>Green v. Mansour</u>, Justice Brennan made it clear, regarding citizen's rights to sue their own state, stating that: "Because the disputes in the instant case are <u>between citizens and their own State</u> and because a federal question is the source of federal-court jurisdiction, the Eleventh Amendment, properly construed, is no bar to petitioners' suits (<u>emphasis added</u>)." <u>Green v. Mansour</u>, 474 U.S. 64, 79 (1985) (Brennan, J., dissenting).

53.     In a similar matter in Kentucky, the court stated that there can be "no sovereign immunity when [a court is asked to declare someone's rights under a statute]. The state is not above its own ... laws." <u>University of Kentucky v. Moore</u>, 599 S.W.3d 798, 813 (2019).

54.     Second, the U.S. Supreme Court stated in *Ex Parte Young*, an unconstitutional state statute is **void**, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." <u>See</u> <u>Ex Parte Young</u>, 209 U.S. 123, 159 - 60 (1908).

55.     If the state law in which the Secretary of State seeks to enforce be a violation of the Federal Constitution, "the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and <u>he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States</u> (emphasis added)." <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 680 (1974) (*citing*) <u>Ex Parte Young</u>, 209 U.S. 123, 159-60 (1908).

56.    The Plaintiffs assert that the co-defendant David Scanlan is acting *ultra vires*, acting neither as a state employee nor in proxy as a federal official, and should be stripped of any Eleventh Amendment immunity because his actions are clearly outside the scope of his office.

57.     <u>Young</u> also held that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent <u>a continuing violation of federal law</u> (emphasis added)." <u>See</u> <u>Green v. Mansour</u>, 474 U.S. 64, 68 (1985) (*citing*) <u>Ex Parte Young</u> at 155-56.

58.     Therefore, sovereign immunity does not apply in this matter, based on providing declaratory relief in this continuing violation of federal law.

**IV.     <u>Declaratory relief is a plausible claim for plaintiffs' relief.</u>**

59.     Declaratory relief is a plausible claim for relief when "[t]here is no harm to state resources from a declaratory judgment… [and] [w]hen the state is a real party in interest, the state is merely taking a position on what a plaintiffs rights are in the underlying controversy." <u>University of Kentucky v. Moore</u>, 599 S.W.3d 798, 813 (2019).

60.     While the Secretary of State argues that injunctive relief is unavailable from the federal courts against state officials, under *Edelman v. Jordan*, 415 U.S. at 680, the Secretary of State should be stripped of any perceived immunity for attempting to enforce a state law as unconstitutionally applied.

61.     In the alternative, this court is not barred from issuing the same relief as a declaratory judgment. The <u>Ex Parte Young</u> exception to state sovereign immunity allows suits for declaratory <u>or</u> injunctive relief against state officers in their official capacities. <u>See</u> <u>Reed v. Goertz</u>, 598 U.S. 230, 234 (2023) *citing* <u>Ex Parte Young</u>, 209 U.S. 123, 159–161, 28 S. Ct. 441 (1908).

62.     Therefore, declaratory relief is a plausible claim for plaintiffs' relief.

**Conclusion**

63.     The plaintiffs have proffered that: (1) they have proper standing before this Court; (2) their Complaint is not moot; (3) the Secretary of State is not entitled to immunity in this controversy; and (4) that declaratory relief is a plausible claim for the plaintiffs' relief when "[t]here is no harm to state resources."

64.     The plaintiffs have established **standing**, (*supra* ¶¶ 6 - ¶ 33) pursuant to 28 U.S.C. § 1343 (a) (3), and the recent New Hampshire Supreme Court decision in Daniel Richard v. Governor, 2024 N.H. 53 (Sept. 12, 2024), --- A.3d --- (2024), *citing* Baker v. Carr, 369 U.S. 186, 205-06 (1962)(noting that voters have standing to bring equal protection challenges to complain of vote dilution).

65.     The plaintiffs have established that the plaintiffs' **complaint is not moot**, (*supra* ¶¶ 37 - ¶47), as this case satisfies "the familiar exception to the mootness doctrine for cases that are capable of repetition, yet evading review (emphasis added, quotations omitted)," State v. Carter, 167 N.H. 161 (2014).

66.     The plaintiffs have established that the **Secretary of State is not entitled to immunity**, (*supra* ¶¶ 48 - ¶ 58), because:

67.     (1) there can be "no sovereign immunity when [a court is asked to declare someone's rights under a statute]. The state is not above its own ... laws." University of Kentucky v. Moore, 599 S.W.3d 798, 813 (2019); Green v. Mansour, 474 U.S. 64, 79 (1985) (Brennan, J., dissenting) ("Because the disputes in the instant case are between citizens and their own State and because a federal question is the source of federal-court jurisdiction, the Eleventh Amendment, properly construed, is no bar to petitioners' suits"); and,

68. (2) an unconstitutional state statute is **void**, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." See *Ex Parte Young*, 209 U.S. 123, 159 - 60 (1908).

69. And finally, **declaratory relief is a plausible claim** (*supra* ¶¶ 59 – ¶ 62), for plaintiffs' relief.

70. At trial, the plaintiffs will be able to demonstrate to the court that both previous Secretaries of State and previous party chairmen have been aware of the changes in the law since 1987, which were precipitated based on the decision in *Tashjian v. Republican Party of Conn.*, and have simply chosen to be deliberately indifferent (or at the very least intellectually dishonest) to the unconstitutional interpretations of the state statutes governing the time and place of the primaries, and the limitations (or lack thereof) of who can participate in those primaries.

71. By conspiring to ignore the plain language reading of RSA 654:34 and RSA 659:14, the codefendants have abridged the federally-secured rights of the plaintiffs to their freedom of association with fellow members of the Republican Party, without the perceived interference by state regulation which (as interpreted by the Secretary of State) allows non-party members access to primary ballots when the courts have established that non-party members have no right to associate with the Republican Party. *See* Lacasa v. Townley, 883 F.Supp.2d 1231 (2012); Timmons 520 U.S. at 357.

72. NHRSC Party Chair Chris Ager and Secretary of State David Scanlan, "acting under custom or usage of a state," have conspired to injure the plaintiffs in their free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States, and sought to deprive them of their rights, privileges, or immunities secured by the Constitution or

laws of the United States, by ignoring – either through deliberate ignorance or reckless disregard – the provisions of the state law governing the "Special Provisions for State and Presidential Primary Elections" – N.H. § RSA 659:14.  *See* 42 U.S.C. § 1983; 18 U.S.C. § 241; 18 U.S.C. § 242; *see also* Adickes v. S. H. Kress & Co., 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of § 1983 must have the force of law"); Lindke v. Freed, 601 U.S. 187, 200 (2024), 144 S.Ct. 756, 768, 2024 WL 1120880 * 8 (March 15, 2024).

73. Therefore, the plaintiffs request that this Honorable Court grant declaratory relief to instruct Secretary of State David Scanlan to enforce performance of state and federal laws, *as written*, protecting the plaintiffs and other New Hampshire Republican Party primary voters of their First Amendment right to enter political association with individuals of their own choosing. 34 CFR § 9032.7 (a) (4); 42 U.S.C. § 1983.

**Prayer**

WHEREFORE, the Plaintiffs respectfully request that this court:

A. Deny the Secretary of State's Renewed Motion to Dismiss (ECF 49) and Chris Ager and New Hampshire Republican State Committee's Motion to Dismiss (ECF 55);

B. Grant the plaintiffs leave to file an Amended Complaint to repair any perceived deficiencies by the court in elucidating their complaint effectively; and

C. For such other and further relief as is just and proper.

Respectfully Submitted,

DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

| | |
|---|---|
| Dated:  September 16, 2024 | By:   /s/ David Testerman<br>David Testerman, *pro se*<br>Dave@sanbornhall.net<br>9 Stone Avenue<br>Franklin, New Hampshire 03235<br>(603) 320-9524 |
| | KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair* |
| Dated:  September 16, 2024 | By:   /s/ Karen Testerman<br>Karen Testerman, *pro se*<br>karen@karentesterman.com<br>9 Stone Avenue<br>Franklin, New Hampshire 03235<br>(603) 934-7111 |

Combined Objection to Codefendant Motions to Dismiss - 16

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com


Dated:  September 16, 2024            /s/ Karen Testerman
                                      Karen Testerman, *pro se*