UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Karen Testerman, et al.

     v.                              Civ. No. 24-cv-20-LM-AJ

NH Secretary of State, et al.


## REPORT AND RECOMMENDATION

Plaintiffs Karen Testerman and David Testerman[1] ("the Testermans") sued New Hampshire Secretary of State David Scanlan, and the New Hampshire Republican State Committee and its Chairman, Chris Ager, claiming that the defendants, individually and collectively, violated their rights by allowing voters who were previously undeclared or otherwise not previously affiliated the with the New Hampshire Republican Party vote in the New Hampshire presidential primary in January 2024 and the state primary in September 2024.  See Compl. (Doc. No. 1) They assert that allowing this category of voters in the Republican primaries interfered with their First Amendment right of association with the political party of their choice. Presently before the court are the defendants' motions to

---

[1] Two other plaintiffs, Patricia Jorgensen and Nikki McCarter, voluntarily dismissed their claims and are no longer part of this case. See Feb. 15, 2024, End. Ord. granting motions.

dismiss the plaintiffs' complaint. (Doc. Nos. 49 and 55).  The Testermans have timely objected. (Doc. No. 69). The motions have been referred to the undersigned Magistrate Judge for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and LR 72.1. After reviewing the parties' submissions, the court recommends that the district judge grant the defendants' motions to dismiss as the plaintiffs lack standing to pursue these claims.

## Background

Under New Hampshire election law, voters, within certain time constraints, may change their voter registration such that they are affiliated with a political party or unaffiliated with any party.  The latter group are registered as "undeclared" voters. See N.H. Rev. Stat. Ann. § 654:34.[2]

---

[2] In pertinent part, N.H. Rev. Stat. Ann. § 654:34 provides:

I. Change of registration of a voter whose party membership has been previously registered.

(a) Any legal voter whose party membership has been registered may change such registration by appearing in person before the supervisors of the checklist for his town or ward any time they meet, except as prohibited by paragraph IV, and stating to them under oath or affirmation, if required, that:

(1) He intends to affiliate with and generally supports the candidates of the party with which he offers to register, in which case he shall be registered as a member of such party; or

A party-affiliated voter may only participate in that party's primary election.  See N.H. Rev. Stat. Ann. § 659:14 ("If the person's party membership has been registered before,

---

(2) He does not wish to be registered as a member of any party, in which case his party designation shall be removed from the checklist.

(b) He may also change such registration at any primary, upon making oath or affirmation to the same effect, but he shall not be permitted in such case to vote the ballot of any party at such primary.

II. Change of registration of a voter who has been registered as an undeclared voter.

(a) Any legal voter who has been registered as an undeclared voter may register as a member of the party of the voter's choice by appearing before the supervisors of the checklist for the voter's town or ward any time they meet, except as prohibited by paragraph IV, and stating to them, under oath or affirmation, if required, that the voter intends to affiliate with and generally supports the candidates of the party with which the voter offers to register, in which case the voter shall be registered as a member of such party.

(b) A voter may also register as a member of a party at any primary by requesting to be registered as a member and voting the ballot of the party of the voter's choice. A voter may also register once again as an undeclared voter after voting in a primary as a registered member of a party by returning the card or signing the list of undeclared voters from the statewide centralized voter registration database provided for in paragraph V. If cards are used, the voter shall return the card to the person at the polls designated by the town or city clerk to accept the card. All such cards and lists shall be in the possession of the supervisors of the checklist at the close of the polls on election day.

the person shall be given only the ballot of the party with which the person is registered, . . . .").  An undeclared voter seeking to vote in a primary can affiliate with a party on the day of the primary.  See N.H. Rev. Stat. Ann. § 654:34, II(b) ("A voter [who has been registered as an undeclared voter] may also register as a member of a party at any primary by requesting to be registered as a member and voting the ballot of the party of the voter's choice."). Day-of-primary party registrants remain affiliated with that party until they change their affiliation. Id. ("A voter may also register once again as an undeclared voter after voting in a primary as a registered member of a party . . . .").

The focal point of the dispute in this case is two sections of N.H. Rev. Stat. Ann. § 659:14.  Section I provides: "If the rules of a party permit a person who is registered as an undeclared voter to vote in the party's primary, any person desiring to vote in that party's primary shall also announce the name of that party at the time of announcing the person's name. No person shall be permitted to vote in any more than one party primary during any primary election." Section II states: "The party chairman shall notify the secretary of state in writing prior to the filing period for state offices whether the party has adopted [] a rule" permitting "a person who is registered as an undeclared voter to vote in the party's primary."

4

Plaintiffs allege that no such notification from the Republican party chair to the Secretary of State occurred before either the January or September primaries. Therefore, they assert, those voters who affiliated with the Republican party on primary day cast illegal ballots. These putatively illegal votes, the Testermans conclude, interfered with their First Amendment right of freedom of political association.

The Testermans filed a three count complaint shortly before the Presidential Primary in January 2024.[3] In Count I, they allege that the Chair "has deprived the Party of its First Amendment right" of freedom of association by failing to notify the Secretary that the New Hampshire Republican Party has not authorized undeclared voters to vote in the primary. (Doc. No. 1) at 7. In Count II, they allege that the Secretary "has deprived the Party of its First Amendment right" of freedom of association by failing to determine whether the New Hampshire Republican Party has adopted a rule allowing undeclared voters to vote in the primary. Id. at 8. In Count III, they allege that both defendants violated the Party's First Amendment right to freedom of association by colluding to violate RSA 659:14. Id. at 8.  As the court did in resolving plaintiffs' most recent

_____

[3] On August 29, 2024, the court denied Plaintiffs' motion to amend their complaint. As such, the original complaint (Doc. No. 1), remains the operative document.

motion for preliminary injunction, the court will assume that the pro se plaintiffs "inferred" that their own rights were allegedly being violated. <u>See</u> Report and Recommendation (Doc. No. 61) at 4 (citing Pltf. Proposed Findings and Rulings (Doc. No. 53) at 7 n.2).

The Testermans originally sought declaratory and injunctive relief. Specifically, they requested a declaration that the Secretary of State "will presume that the [New Hampshire Republican Party] has not given its consent to Undeclared Voters to participate in the upcoming 2024 Presidential Primary." Compl. (Doc. No. 1) at 10. The plaintiffs also sought an injunction requiring the Secretary of State to instruct all local election officials to "sequester" ballots cast by undeclared and same-day registration voters in the primary. <u>Id.</u>[4]

The defendants assert three grounds for dismissal: 1) mootness; 2) standing; and 3) failure to state a claim for relief. The court first outlines the legal standards applicable to each defense, before turning to the Testerman's claims.

---

[4] The court denied the Testermans' three motions for preliminary injunction. The most recent motion, in advance of the state primary in September 2024, sought an injunction requiring the Secretary of State to instruct local election officials to mark ballots cast by undeclared and same-day registration voters, so those ballots could later be identified should the court finds those votes illegal.

### Standard of Review

The defenses of mootness and standing, both of which implicate the court's subject matter jurisdiction, are properly analyzed under Fed. R. Civ. P. 12(b)(1), a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including mootness. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001); see also, Van Wagner Boston, LLC v. Davey, 770 F.3d 33, 36 (1st Cir. 2014) (noting that Article III standing may be challenged through a Rule 12(b)(1) motion to dismiss). When the court's jurisdiction is challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court must credit the pleaded factual allegations as true and draw all reasonable inferences from them in the nonmoving party's favor. Valentin, 254 F.3d at 363.

When analyzing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

7

the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). Analyzing plausibility is "a context-specific task" in
which the court relies on its "judicial experience and common
sense." Id. at 679. In ruling on a Rule 12(b)(6) motion, the
court may consider documents if they are integral to or
sufficiently referenced in the complaint or if the parties do
not dispute their authenticity without converting the motion
into one for summary judgment. Ironshore Specialty Ins. Co. v.
United States, 871 F.3d 131, 135 (1st Cir. 2017).

A.  Mootness

     "Article III of the Constitution grants the federal
judiciary the authority to adjudicate cases and controversies,
see U.S. Const. art. III, § 2, cl. 1, but that authority extends
only to live cases and controversies, not to those which are or
have become moot." Corrigan v. Bos. Univ., 98 F.4th 346, 352
(1st Cir. 2024) (quoting In re Sundaram, 9 F.4th 16, 18 (1st
Cir. 2021)). In this regard, "the key question 'is whether the
relief sought would, if granted, make a difference to the legal
interests of the parties (as distinct from their psyches, which
might remain deeply engaged with the merits of the
litigation).'" Id. (cleaned up)

     "A party can have no legally cognizable interest in the
outcome of a case if the court is not capable of providing any

relief which will redress the alleged injury." Gulf of Maine Fisherman's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002). In addition, "a case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004).

The burden of showing mootness is a heavy one — and it rests squarely with the proponent of the issue. Id. "It must be 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

Here, while any request for injunctive relief targeted at the 2024 New Hampshire primaries is moot because those primaries have taken place, it is not "absolutely clear" that the allegedly wrongful behavior – allowing voters to change party affiliations and vote in the primaries – "could not be reasonably expected to recur." Mangual, 317 F.3d at 60. Accordingly, the court declines to recommend that this case be dismissed on the ground of mootness.

B. Standing

In addition to mootness, the defendants also argue that the court lacks subject matter jurisdiction because the plaintiffs lack standing. "Under Article III of the Constitution, a

plaintiff needs a 'personal stake' in the case." Biden v. Nebraska, 143 S. Ct. 2355, 2365 (2023) (quoting TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021)). More specifically, "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and that is likely to be redressed by the lawsuit." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In addition to these constitutional considerations, prudential limitations "prevent courts from "adjudicating 'questions of broad social import where no individual rights would be vindicated and . . . limit access to the federal courts to those litigants best suited to assert a particular claim.' " Conservation Law Found. of New England, Inc., 950 F.2d 38, 41 (1st Cir. 1991) (alterations in original) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985)).

"An inquiry into standing must be based on the facts as they existed when the action was commenced," Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006). The alleged injury, however, must be "concrete and particularized" and "not conjectural or hypothetical." Lujan, 504 U.S. at 560. The plaintiff bears the burden of establishing standing. TransUnion, 141 S. Ct. at 2207.

## Discussion

Because the court has addressed the Testermans' standing at previous procedural junctures, the court first recounts this case's relevant history. On January 23, 2024, the day of the New Hampshire Presidential Primary, Chief Judge McCafferty denied plaintiff's second motion for injunctive relief on two alternative grounds, each applicable to a different construction of the plaintiffs' complaint. (Doc. No. 7). She first noted that each of the three counts of the complaint specifically allege that the defendants' actions were depriving the New Hampshire Republican Party of its First Amendment right of freedom of association, as opposed to any rights belonging to the Testermans.  Order (Doc. No. 7) at 2. Judge McCafferty ultimately ruled that the plaintiffs lacked standing to assert the party's constitutional rights.  Id. at 3. Judge McCafferty accordingly held that the plaintiffs failed to establish a likelihood of success on the merits and were therefore not entitled to injunctive relief.

As noted above, the court, construing the pro se complaint liberally, assumes, arguendo, that the allegations in the Testermans' complaint "inferred" their own rights were being violated, rather than relying on the complaint's literal language, which invokes only the rights of the state party. Nevertheless, as the court found in recommending denial of their

recent request for injunctive relief, the Testermans have
offered no authority that persuades the court to reach a
conclusion different from Judge McCafferty's.  That is, the
plaintiffs lack standing to pursue these claims, as their
Constitutional rights are not implicated, despite the inferences
the court has accorded their complaint.

In recommending denial of the Testermans' third request for
injunctive relief, the court addressed the numerous cases which,
the Testermans asserted, supported their argument that they have
standing to pursue the three First Amendment claims in their
complaint. The court concluded that none supported their
position. As the Testermans' objection to the instant motions
refers back to their motion for injunctive relief, see Pltf.
Obj. (Doc. No. 69) ¶ 8, the court restates its analysis here:

> For example, plaintiffs cite Rosario v.
> Rockefeller, 410 U.S. 752 (1973), for the proposition
> that a state may "require party registration for a
> reasonable period of time" to thwart so-called "party
> raiders" (voters who might have had an affiliation
> with a different party) from voting in a primary
> election.  Pltf. PFR (Doc. No. 53) at 7-8. That
> holding, however, does not mandate the exclusion of
> "party raiders" under the instant plaintiffs' argument
> that "raiding" impacts the rights of "regular" Party
> voters.  It simply allows a State to limit the impact
> of such voters.  Most importantly for the standing
> inquiry, the plaintiffs in Rosario, unlike the
> plaintiffs in this case, were completely barred from
> voting in the Party primary of their choice if they
> missed a registration deadline.  They alleged that
> they were deprived of their right to vote and to
> associate with the party of their choice.  Those
> plaintiffs' injury, and therefore their standing, is

obvious – they were not permitted to vote.  The
plaintiffs here are free to vote in the Republican
Party primary if they so choose. Or, they could have
changed their affiliation to another party, or
unaffiliated entirely and made their decision on
primary day. In fact, the only discussion of standing
in Rosario undercuts plaintiffs' argument.  In a
footnote, the Court noted that a group of plaintiffs
who were not subject to the time limitation on party
registration lacked standing to assert that the
requirement was unconstitutional.  410 U.S. at 759
n.9.

    The plaintiffs also rely on Bd. Of Elections v.
Lopez Torres, 552 U.S. 196 (2008), a case in which
candidates alleged that New York's laws for political
parties' nominating candidates for certain elected
judges violated their political association rights
under the First Amendment. The plaintiffs here cite
the case for the proposition that "[a] political party
has a First Amendment right to limit its membership as
it wishes, and to choose a candidate -selection
process that will in its view produce the nominee who
best represents its political platform." Pltf. Repl.
(Doc. No. 42) at 2.  Reliance on this case is somewhat
perplexing, as the assertion of the Party's rights is
an unremarkable proposition that does not support
plaintiffs' standing to sue. Moreover, Lopez Torres
contains no analysis whatsoever of the plaintiffs'
standing in that case. Finally, a full and fair
reading of the Supreme Court's opinion implicitly
undercuts, rather than supports, the plaintiffs'
standing argument, as the Court observed that the
plaintiffs were "in no position to rely on the right
that the First Amendment confers on political parties
to structure their internal party processes and to
select the candidate of the party's choosing." 552
U.S. at 203.   So it is here.

    Another case plaintiffs cite is Clingman v.
Beaver, 544 U.S. 581 (2005), which held that
Oklahoma's "semi-closed" primary system – pursuant to
which a political party may invite only its own
registered members and voters registered as
Independents to vote in its primary – did not violate
the right to freedom of association of the Oklahoma
Libertarian Party or individual Oklahomans registered
as Democrats and Republicans.  Id. at 584.  As with
Lopez Torres, however, Clingman contains no analysis

> of the plaintiffs' standing.  Moreover, the fact that
> a state can prevent members of other parties from
> voting in a party's primaries, does not mean that it
> is required to do so. See id. at 588 ("The question is
> whether the Constitution requires that voters who are
> registered in other parties be allowed to vote in the
> [Libertarian Party]'s primary."). Unlike the
> plaintiffs in Clingman, the plaintiffs in this case
> are not being prevented from voting in the primary of
> their choice. Thus, while Clingman did not address
> standing, the two sets of plaintiffs are not valid
> comparators.

Report and Recommendation (Doc. No. 61) at 6-8.

Though the same analysis applies here, the Testermans do not rest entirely on their prior arguments. In a recently-filed Notice of Late Authorities (Doc. No. 68), the Testermans argue that a recent New Hampshire Supreme Court case and a federal statute are each sufficient to support their claim of standing to sue.  The court addresses each in turn.[5]

Plaintiffs first rely on Richard v. Governor, No. 2023-0097, 2024 WL 4154739 (N.H. Sept. 12, 2024). In Richard, the plaintiff was an individual voter who wanted to vote by hand, but was not permitted to do so because his polling place had electronic voting machines. Id. at *1. The trial court dismissed all six counts of the complaint for failure to state a claim for

---

[5] To the extent that the Testermans' "Notice" was intended as an objection to the court's recommendation that their motion to amend be denied (Doc. No. 45), the time to object to that recommendation has long expired, as Judge McCafferty approved and adopted the recommendation on August 29, 2024.  Instead, the court construes the Notice as supplementing the Testermans' objection to the pending motions to dismiss.

relief. <u>Id.</u>   In so doing, the trial court did not address the
defendants' argument that the plaintiff lacked standing. <u>Id.</u> The
Supreme Court, acknowledging that standing implicates the
court's subject mater jurisdiction, ordered the parties to brief
the issue on appeal, and proceeded to analyze plaintiff's
standing to sue. <u>Id.</u> at *2.

The Court ultimately found that the plaintiff had standing
to assert two counts.[6] In the first, the Court found that
plaintiff's allegation that he "was deprived of his right to
vote by the Town" sufficiently alleged a "concrete personal
injury." <u>Id.</u> at *2. In the second, the court found that the
plaintiff had standing to pursue an equal protection claim
because he alleged that his votes were being counted differently
than in towns without electronic voting machines. <u>Id.</u> at *4.

At the same time, the Court dismissed four other claims for
lack of standing.  These counts alleged that the use of
electronic machines violated the State Constitution and
statutes. In so ruling, the Court noted that "[e]very person has
an interest in the proper application of the Constitution and
state laws. Given that interest, we agree with the defendants

---

[6] The New Hampshire Supreme Court analyzed the plaintiff's
standing in <u>Richard</u> under the New Hampshire Constitution.  2024
WL 4154739 at *2.  Whether the Testermans have standing in
federal court is guided by Article III of the United States
Constitution.  Nevertheless, in deference to their pro se
status, the court considers the case in its analysis.

[that these counts] raise only 'generalized wrongs allegedly suffered by the public at large.'" Id. (citation omitted.) Such "an abstract interest in ensuring that the State Constitution is observed" is insufficient to confer standing. Id.

The Testermans' reliance on Richard is misplaced for several reasons. First, the Testermans, unlike the plaintiff in Richard, have not alleged that they were deprived of the ability to vote. Next, the Testermans' claims much more closely resemble the ones dismissed in Richard, because, at bottom, the Testermans seek to have the defendants "follow the law," which implicitly refers to an injury "suffered by the public at large." Id. Finally, the Testermans rely on the Richard court's reference to "vote dilution" in Baker v. Carr, 369 U.S. 186, 208 (1962). Not only have the Testermans not included such a claim in their complaint, but in Carr, unlike in this case, the plaintiffs alleged that the State of Tennessee had established (or failed to remedy) an unconstitutional reapportionment plan. As Judge Laplante noted in denying the Testermans' request for injunctive relief in an earlier case, courts have allowed "vote dilution" claims to proceed in the context of redistricting and apportionment, but have uniformly rejected individual standing claims based on allegations of dilution resulting from allegedly illegal votes being cast by other voters — the precise type of claim the Testermans assert here. See Testerman v. NH Sec'y of

16

State, No. 23-CV-499-JL-AJ, 2024 WL 1482751, at *4 (D.N.H. Jan. 9, 2024) (and cases cited therein) (appeal docketed, sub nom. Briggs v. Scanlan, No. 24-1316 (Apr. 3, 2024).[7]

In addition to the Richard case, the Testermans also support their claim of standing on 28 U.S.C. § 1343(a)(3), which provides that

> "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

The Testermans imply that the statute creates a type of automatic standing, because they are asserting that their Constitutional rights were violated. This is a misreading of the statute. "Section 1343 is purely a jurisdictional statute." Celauro v. Whole Foods Mkt., No. 21-CV-00310-KLM, 2021 WL 4844538, at *3 (D. Colo. Oct. 18, 2021). "It creates jurisdiction over a claim in federal court when a claimant alleges a violation of the federal Constitution or another federal law by a state actor." Id. (emphasis omitted). But, as

---

[7] Further reinforcing Richard's inapplicability to this case, the Testermans, unlike the plaintiff in Richard, do not allege that their ballots were handled differently by their polling place than others' ballots in other places in New Hampshire. In other words, they have not alleged an injury resulting from the processing of their ballots.

17

the travel of this case demonstrates, the court's jurisdiction over a particular legal claim – such as a Constitutional violation -- is a separate question from whether a particular plaintiff has standing to bring such a claim under Article III of the Constitution.  In Celauro, for example, the court assumed that the plaintiff stated a cause of action, but dismissed the complaint on standing grounds because the plaintiff failed to allege "an injury in fact which rises to the level of a constitutional infringement."  Id. at * 5; see also Hunter v. Judson, No. CV 15-30189-MGM, 2015 WL 7737332, at *3 (D. Mass. Dec. 1, 2015) (analyzing plaintiff's Article III standing in case brought pursuant to 28 U.S.C. § 1343).

In this case, as noted above and in the court's denial of their third motion for injunctive relief, the Testermans' complaint contains no allegations that their right to associate with the political party of their choice has been injured by the defendants' actions. In other words, they have not suffered "a concrete and imminent harm to a legally protected interest." Biden, 143 S. Ct. at 2365. Neither the Testermans' complaint, their objection to the instant motions, nor any of the legal memoranda associated with their three unsuccessful attempts to obtain injunctive relief, provide the court with persuasive authority to support their claim that they have Article III standing to dictate primary voters' qualifications to the state

18

Republican party.  The court finds instructive the Supreme
Court's analysis in Bd. of Elections v. Lopez Torres. Although
the Court did not directly address the plaintiffs' standing, it
observed that the plaintiffs "were in no position to rely on the
right that the First Amendment confers on political parties to
structure their internal party processes and to select the
candidate of the party's choosing."  552 U.S. at 203.

So it is here. The Testermans have not alleged that they
have suffered a legally-cognizable injury-in-fact, as they have
made no claim that their own right to associate with the party
of their choice has been damaged.  Nor, as explained above, do
they have standing to assert "an abstract interest" in ensuring
that the defendants comply with New Hampshire law. Richard, 2024
WL 4154739, at *4. Accordingly, they lack standing and
defendants' motions to dismiss should be granted.

### Conclusion

Based on the foregoing, the district judge should grant the
defendants' motions to dismiss (Doc. Nos. 49 and 55) because the
plaintiffs lack standing to sue under Article III of the United
States Constitution.[8] Any objections to this Report and
Recommendation must be filed within fourteen days of receipt of

---

[8] As the court recommends granting the defendants' motions
on the basis of standing, it does not reach their argument that
the Testermans' complaint fails to state a claim upon which
relief can be granted.

this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 7, 2024

cc:  Patricia Jorgensen, pro se
     David Testerman, pro se
     Nikki McCarter, pro se
     Karen Testerman, pro se
     Counsel of Record