**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

JORGENSEN,  ET AL.

PLAINTIFF(S),

v.

Case No.  **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

DEFENDANT(S).

---

## OBJECTION TO MAGISTRATE'S SECOND REPORT & RECOMMENDATIONS DATED OCTOBER 7, 2024

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Plaintiffs"), in the above captioned matter, pursuant to 28 U.S.C. § 636(c), and LR 72.2, and respectfully objects to the Magistrate's Report and Recommendations, stating as follows:

**Nature of the Action**

1.      For nearly two decades, the New Hampshire Democratic and Republican presidential and state primaries have operated as semi-closed primaries.  According to each of the Democratic and Republican parties' Rules and Bylaws, neither major political party has authorized voters who are otherwise not publicly-affiliated, registered party members to vote in their respective presidential and state primaries.

2.      However, because previous Secretaries of State and political party chairmen, "acting under custom or usage of a state,"  have ignored the enabling state statute governing the "<u>Special Provisions for State and Presidential Primary Elections</u>" as the law is written under

N.H. RSA § 659:14, Undeclared Voters are being allowed to vote in these primaries as "day-of-primary" voters. _See_ R&R at * 4, Doc. No. 73.  Even the title of this section of state statute makes it clear that this is the enabling statute regarding State and Presidential Primary Elections, and should have priority over other election law, custom or usage covering this specific matter.

3.      Under a plain reading of the statute, it states _inter alia_ that:

4.      "_If the rules of a party permit_ a person who is registered as an undeclared voter to vote in the party's primary, any person desiring to vote in that party's primary shall also announce the name of that party at the time of announcing the person's name (emphasis added)."

RSA § 659:14.  Simply put, if the Party's Rules or Bylaws expressly allow it, then Undeclared Voters may vote in the Party's Primary.

5.      The statute goes on to say: "_The party chairman shall notify the secretary of state in writing prior to the filing period for state offices whether the party has adopted such a rule_ (emphasis added)."  _Id._   Again, simply put, the statute requires that the Party Chair submit _in writing_ whether the Party's Primary elections will be _open_ to Undeclared Voters.

6.      Currently, the New Hampshire Republican Party's Bylaws (https://nh.gop/bylaws/), the Party's Platform (https://nh.gop/platform/), and the State Convention Organization Committee Report (https://nh.gop/organization_report/) _are silent_ as to whether the Party has adopted such a rule to  authorize Undeclared Voters to vote in the Party's primary.

7.      On October 9, 2023, Secretary of State Scanlan replied to a constituent's e-mail, stating:

> "In response to your RSA 91-A request my office has not been able to locate any 'written notice' of a Republican State Party rule change relative [to] which voters can participate in a New Hampshire primary election.  The current practice of permitting undeclared voters to declare affiliation with the Republican Party _and then change back to undeclared_ or remain in the party after voting has been in place for decades (emphasis added)."  Exhibits List, Exhibit 108, Doc No. 52.

8.    In an October 26, 2023, news article by InDepthNH.org, Secretary of State David

Scanlan is quoted as saying:

> "I have received no such letter that would require me to make any change . . . .  The
> presidential primary will be conducted in the same manner it has been conducted for
> decades.  The party chair is required to write a letter to the Secretary of State to inform
> him or her of any change in party rules that would determine who can participate in a
> party primary and that letter has to be delivered before the filing period for office opens
> up (emphasis added)." *See* Scanlan: Undeclared Voters Won't Be Blocked from Taking
> GOP Ballots in FITN Primary, **https://indepthnh.org/2023/10/26/gop-resolution-wont-**
> **change-presidential-primary/**, Exhibits List, Exhibit 105, Doc. No. 52.

9.    The InDepthNH.org news article demonstrates that the Secretary of State has been

intellectually dishonest about the election laws and how they are applied.   The law specifically

says that notice is to be given upon the party-approved opening of the state primary – not on a

"change in circumstances" based on previous customs and usage.

10.    In an email dated October 6, 2023, Plaintiff and Merrimack County Republican

Committee ("MCRC") Chairman Karen Testerman implored Party Chair Chris Ager to notify the

NH SOS in writing that the 2024 Presidential Primary was officially closed to Undeclared

Voters.  As part of constructive notice, New Hampshire Secretary of State David Scanlan was

copied on the email, and therefore *knew or should have known* that there exists no authorization

to include Undeclared Voters in the upcoming Presidential Primary.  Exhibits List, Exhibit 104,

Doc. No. 52.

11.    Because of this well-oiled deliberate indifference to the governing statute (in where that

the Secretary of State's office has maintained an unconstitutional practice of allowing

Undeclared Voters to participate in both the Democratic and Republican primaries), and in order

to prevent "party raiding", the Republican Party at its Annual Meeting on January 28, 2023, the NH GOP Annual Meeting (the Party's highest governing authority), voted to <u>close</u> its Presidential Primary for January 2024. *See* Complaint, <u>Exhibit A</u> – <u>Minutes of the NH GOP Annual Meeting</u>, dated January 28, 2023, Doc No. 1.

12.    The NH GOP Annual Meeting members voted for and directed Party Chair Chris Ager, to notify the Secretary of State "*in writing prior to the filing period of state offices that the Republican Party of New Hampshire has adopted the rule that <u>only voters registered as Republicans</u> prior to any primary election may receive a Republican ballot* (emphasis added)." <u>*Id*</u>., Resolution #2.

13.    In short, the NH Republican Party – at its Annual Meeting in which all bylaws and resolutions are deliberated and voted upon – voted to fully close its Presidential Primary to stop "party raiding." *See* <u>Burdick v. Takushi</u>, 504 U.S. 428, 439 (1992), <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 377 (1997), <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 572 (2000), <u>Clingman v. Beaver</u>, 544 U.S. 581, 594 (2005), <u>Herr v. State</u>, 212 N.E.3d 1261, 1267 (D. Ind. 2023).

14.    For the next several months, despite repeated attempts by the plaintiffs and other Party Officials to persuade party chair Chris Ager, he refused to notify the NH SOS in writing that the upcoming 2024 Presidential Primary was *closed to Undeclared Voters*, thereby violating his fiduciary duty to the plaintiffs and the other delegates assembled at the 2023 Annual Party Convention.

15.    In October 2023, **NBC News** reported that because President Biden's name would not appear on the New Hampshire Democratic Party ballot, a newly-formed super-PAC called **Primary Pivot** encouraged Democratic voters to temporarily switch their party affiliations to

"undeclared" – to act as "party raiders" – so they could vote against Trump in the GOP primary. *See* New Hampshire Democrats weigh whether to cross over and vote in GOP primary, dated October 6, 2023, https://www.nbcnews.com/politics/2024-election/new-hampshire-democrats-weigh-whether-cross-vote-gop-primary-rcna118756.

16.     On January 17, 2024, **National Public Radio's** "All Things Considered" reported that "*In New Hampshire, thousands of Democratic voters have switched party affiliation to Republican or undeclared ahead of the state's primary next week. Some say they switched to support Nikki Haley.*" *See also* NPR's All Things Considered, aired January 17, 2024, transcript https://www.npr.org/2024/01/17/1225253439/thousands-of-democratic-new-hampshire-voters-are-switching-party-affiliation.

17.     On January 19, 2024, **NH Journal** reported that former New Hampshire U.S. Senator Gordon Humphrey was targeting unregistered college voters to sign up for same-day registration as Republican party members in an effort to act as "party raiders" against Donald Trump. *See* **NH Journal** Former Sen. Humphrey Launches Ad Campaign Urging College Students to Stop Trump, dated January 19, 2024, https://nhjournal.com/former-u-s-senator-humphrey-launches-ad-campaign-urging-college-students-to-stop-trump/.

18.     Former Sen. Humphrey also was quoted in the article, saying: "There are 40,000 such students in New Hampshire, the highest per-capita ratio in the nation, and each of them can vote in the primary, irrespective of the state they call home (emphasis added)," *Id*.  Senator Humphrey's encouragement of out-of-state tuition students to fraudulently declare their residency in New Hampshire in order to obtain a primary ballot is a violation of state and federal election laws.

19.     Due to the announcement by national and state media sources that active party raiding was being orchestrated against the New Hampshire Republican Party, plaintiffs met to discuss what actions could be taken to stop the party raiders from interfering in the NH Republican Party presidential primary.

20.     The Merrimack County Republican Committee (MCRC) met to discuss the matter on 01-17-2024 and adopted a resolution to go forward with the original complaint in this matter, by a 15-to-6 vote of the executive committee.  *See* Complaint, Exhibit E, Draft minutes of the Merrimack County GOP executive committee, dated 01-17-2024 (ECF 1).

21.     The four original plaintiffs in this matter filed their original complaint based on statements and/or misrepresentations made by Republican Party Chair Ager and Secretary of State Scanlan that the 2024 presidential Republican primary was semi-closed, and that in order for the primary to be "fully closed", a letter must be issued by the political party Chairman, stating that the primary was closed to outside voters.  This is in contravention to the process as described in RSA § 659:14.  Plaintiffs asked for declaratory relief from the court as to whether such a letter was necessary in order to close the primary, and if so, to sequester the invalid ballots until the matter could be finalized by this court.

22.     The original plaintiffs in this complaint were: taxpayers; qualified voters in the state; publicly-affiliated, registered Republican voters; elected delegates to the annual State Convention; and elected officials in the Republican party, a private association.

23.     The plaintiffs have been injured because of this instance and the ongoing misapplication of state law.  The original Petitioners included:

- <u>Patricia Jorgensen</u>, individually, as the Vice-Chairman of the Merrimack County Republican Committee (MCRC), and as elected delegate to the 2023 NH Republican State Committee (NHRSC);

- NH state Representative <u>David Testerman</u>, individually, an elected member of the MCRC, a disenfranchised Merrimack County voter, and as an elected representative to the 2023 NHRSC;

- NH State Representative <u>Nikki McCarter</u>, individually and as a disenfranchised Belknap County Republican voter; and,

- <u>Karen Testerman</u>, individually, the elected Chairman of the MCRC, a member of the NHRSC Executive Committee and an elected representative to the 2023 NHRSC.

24.     Because of the news article in InDepthNH.org, and including disparaging statements made by NHRSC Chair Ager and Secretary of State Scanlan (both in public and in private), in which the plaintiffs were accused of disenfranchising the "320,000 undeclared voters" from voting in the upcoming presidential primary, and costing the Republican party over $40,000 in attorney's fees when this suit was less than 30 days old, several members of the Republican Party created a whisper campaign against the Plaintiffs, stating that they would be financially ruined if they didn't withdraw their Complaint against the state party.  Ms. McCarter and Ms. Jorgensen became so personally threatened that they both withdrew from the Complaint.

25.     NHRSC Party Chair Chris Ager and Secretary of State David Scanlan, by conspiring to ignore the plain language reading of RSA 654:34 and RSA 659:14, and creating a smear campaign against the plaintiffs for allegedly disenfranchising 320,000 undeclared voters and costing the Republican Party over $40,000 in attorney's fees, the codefendants have abridged the federally-secured rights of the petitioners to their freedom of association with fellow members of

the Republican Party without the perceived interference by state regulation which allows non-party members access to primary ballots when the courts have established that non-party members <u>have no right to associate</u> with the Republican Party.  *See* <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012); <u>Timmons</u> 520 U.S. at 357; <u>Balsam v. Secretary of New Jersey</u>, 607 Fed.Appx. 177, 181 (3d Cir. 2015).

26.     NHRSC Party Chair Chris Ager and Secretary of State David Scanlan, "acting under custom or usage of a state," have conspired to injure the plaintiffs in their free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States, and sought to deprive them of their rights, privileges, or immunities secured by the Constitution or laws of the United States, by ignoring  – either through deliberate ignorance or reckless disregard – the provisions of the state law governing the "<u>Special Provisions for State and Presidential Primary Elections</u>" – N.H. § RSA 659:14.  *See* <u>42 U.S.C. § 1983</u>; <u>18 U.S.C. § 241;</u> <u>18 U.S.C. § 242;</u> *see also* <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of  § 1983 must have the force of law"); <u>Lindke v. Freed</u>, 601 U.S. 187, 200 (2024), 144 S.Ct. 756, 768, 2024 WL 1120880 * 8 (March 15, 2024).

27.     The plaintiffs are also entitled to amend their complaint under  42 USC § 1983 to re-assert Counts 3 -5 of the Amended Complaint as additional injuries for the basis of their actions.  *See* <u>Am.Compl</u>. ¶¶ 51 – 54; <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of § 1983 must have the force of law"); <u>Lindke v. Freed</u>, 601 U.S. 187, 200 (2024), 144 S.Ct. 756, 768, 2024 WL 1120880 * 8 (March 15, 2024).

28.     Therefore, the plaintiffs should be allowed to amend their complaint to include these allegations of civil rights abuse.

29.     Finally, the plaintiffs would note that they have not alleged any facts or incidents in which the Republican executive committee ("NHRSC") are responsible for any of the alleged constitutional violations, as the enabling statute only names the Secretary of State and the political party chairman.  RSA § 659:14.  Therefore, the NHRSC should never have been enjoined in this suit and should be dismissed from this complaint.

**Mootness**

30.     We agree with the magistrate that this case should not be dismissed on the ground of mootness.

31.     A decision upon the merits may be justified where there is <u>a pressing public interest involved,</u> or future litigation may be avoided.  *See* <u>Batchelder v. Town of Plymouth</u>, 160 N.H. 253, 254, 999 A.2d 323 (2010); *see also* <u>Sullivan v. Town of Hampton Bd. Of Selectmen</u>, 153 N.H. 690, 692, 917 A.2d 188 (2006).

32.     If this injustice is not repaired, then "party raiders" will again be allowed to affect the outcome of all future presidential and state primaries, thereby diluting the candidate-selection process that will in its view produce the nominee who best represents its political platform.  *See* <u>N.Y. Bd. of Elections v. Lopez Torres</u>,

**<u>Standing under 28 U.S.C. § 1343(a)(3) is to be broadly construed for the plaintiffs</u>**

33.     The Magistrate attempts to argue that the plaintiffs have no standing, based on 28 U.S.C. § 1343(a)(3), stating that "*[t]he Testermans imply that the statute creates a type of automatic standing, because they are asserting that their Constitutional rights were violated. This is a misreading of the statute*,"  citing <u>Celauro v. Whole Foods Mkt.</u>, No. 21-CV-00310-

KLM, 2021 WL 4844538, at *3 (Not Reported in Fed. Supp.)(D. Colo. Oct. 18, 2021).  _See_ R&R at * 17, Doc. No. 73.

34.     However, in other jurisdictions, the courts have agreed with the Testerman's. In _Solomon v. Miami Woman's Club_, the court said that the policy behind the relief afforded by this section [1343(a)(3)] is that requirements for standing to litigate are to be broadly construed. _See_ Solomon v. Miami Woman's Club, 359 F.Supp. 41 (S.D. Fla. 1971).  "Under these circumstances, plaintiffs have comfortably cleared a standard of reasonableness for the standing requisite for judicial review." Solomon, 359 F.Supp. at 43.

35.     When a federal law grants a civil right, persons protected by that law are authorized to bring actions to enforce the right and federal district courts have jurisdiction of such actions.  _See_ Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, City of Browning, 301 F.Supp. 85 (D. Mont. 1969).

36.     As the decisions in _Celauro v. Whole Foods Mkt._ and _Solomon v. Miami Woman's Club_ are not binding on this court, the matter of standing would be one of first impression for this court's appellate jurisdiction, and a serious matter for appellate review, if denied by this court.

**Original Complaint versus Amended Complaint**

37.     On January 23, 2024, the court denied the plaintiffs' second motion for injunctive relief, stating that "_none of the plaintiffs' claims_ [in the Original Complaint] _allege that their own constitutional rights have been violated_."  _See_ Order at * 2, dated January 23, 2024, Doc. No. 7.

38.     However, in the Magistrate's second report, the Magistrate argued that the court had liberally construed the _pro se_ litigants original complaint in its decisions, "infer[ing]" that their own rights were being violated, rather than relying on the complaint's literal language.  _See_ R&R at * 11, Doc. No. 73.  However, this is not quite true.

39.     In the judge's order denying the Plaintiff's Second Motion for Injunctive Relief (Doc.

No. 7), the judge stated that "*[i]f the court were to construe the complaint in that manner, doc.

no. 5 would fail because the plaintiffs, who have not requested a hearing, fail[ed] to show that

the have third-party standing to assert the Party's constitutional rights.*" <u>See</u> <u>Order</u> at * 3, dated

January 23, 2024, Doc. No. 7.

40.     As such, the court ordered that the first motion for injunctive relief failed because the

plaintiffs did not include the appropriate affidavit, and in the second motion for injunctive relief,

the court ordered that the plaintiffs failed to allege that their own constitutional rights had been

violated and that the plaintiffs failed to show that they had third-party standing to assert the

NHRSC's constitutional rights – not the MCRC's constitutional rights.

41.     Therefore, in the judge's rejection of the Second Motion for Injunctive Relief, the judge

is stating that the Original Complaint was defective.

42.     The court also issued a Procedural Order whereby the court ordered that:

> "*The plaintiffs are "masters of the complaint." <u>Caterpillar Inc. v. Williams</u>, 482 U.S.*
>
> *386, 395 (1987).  Therefore, on or before March 8, 2024, the plaintiffs shall clarify*
>
> *whether they intend to sue only Mr. Ager individually or whether they intend to sue Mr.*
>
> *Ager individually <u>and</u> in his official capacity as chair of the NHRSC.*" <u>See</u> <u>Procedural</u>
>
> <u>Order</u> at * 3, dated February 28, 2024, Doc. No. 26.

43.     In its response, the plaintiffs noted that:

> "the court indicated its leanings towards the defendant's argument, relying upon <u>Brandon</u>
>
> <u>v. Holt</u>, 469 U.S. 464, 471-72 (1985), noting that an "official-capacity suit" is to be
>
> treated, in all respects other than name, as a suit against the government entity.  However,
>
> in its objection to the NHRSC's motion for joinder, Doc. No. 23, the petitioners argued

that Mr. Ager is not the head of a state or federal agency, nor does the NHRSC report to

any executive authority such as the Governor or the President of the United States, and

therefore Mr. Ager does not meet the burden of being a state agency's representative or a

representative of a federal agency. *See* Pet's Obj. to NHRSC's Motion for Joinder, Doc.

No. 23, ¶¶ 3 – 7." *See* Notice of Clarification, ¶¶ 2 - 3, Doc. No. 28.

44.     The plaintiffs remained puzzled as to why the NHRSC would wish to be included as a

codefendant, if not for extending some director indemnification to Chair Chris Ager.  Indeed, the

court granted attorneys Jacob Rhodes, Esq. and Bryan Gould, Esq., to be replaced by insurance

attorneys Demetrio F. Aspiras, III, Esq. and Mark V. Franco, Esq.  *See* Endorsed Order, dated

04-18-2024.

45.     Despite the court's assurances that the plaintiffs are the 'master of their complaint,' the

court granted the Motion for Joinder to include the New Hampshire Republican State Committee

(NHRSC) as a codefendant. *See* Endorsed Order, dated 04-15-2024.

46.     Because of the deficiencies as noted by the court in the Original Complaint, and as to the

Motion for Joinder which now included the NHRSC as a codefendant, the plaintiffs filed for

Motion for Leave to File an Amended Complaint.  *See* Doc. No. 31-1.

47.     On August 14, 2024, the magistrate filed its first Report and Recommendation, stating

that the plaintiffs' motion for leave to amend (ECF 31) should be denied based on futility.

Further, the magistrate recommended that the original complaint (ECF 1) remains the operative

complaint in the matter.  *See* Doc. No. 45.

48.     On August 28, 2024, the plaintiffs filed their Objections to the Magistrate's Report and

Recommendations, citing their reasons for why the amended complaint was not futile.  *See*

Doc. No. 47.

49.    The following day, on August 29, 2024, the court approved the Magistrate's Report and Recommendation.  *See* Endorsed Order, ECF Docket Report, 08/29/2024.

50.    Therefore, the plaintiffs have been denied the ability to amend their complaint, despite the protracted discussion regarding whether the NHRSRC should be a codefendant and whether Chair Ager should be treated similarly to a head of state or federal agency.  *Supra* ¶¶ 27 - 30.

51.    The plaintiffs believe that the court's decision is a foregone conclusion, and the additional filings are mere window dressing for the plaintiffs' untimely demise.

52.    The plaintiffs assert that if the court determines that the original complaint is deficient, then they should be able to amend their complaint.


**Vote Dilution was argued in the Original Complaint and the Amended Complaint**

53.    The Magistrate argued that plaintiffs have not included a vote dilution argument in their complaint.  *See* R&R at * 16, Doc. No. 73.

54.    However, former plaintiff Patricia Jorgensen explained the absence of her Affidavit in the first Motion for Injunctive Relief, stating that:

> "*I did not know that this Affidavit was required to be filed at the same time as the Emergency Motion for Injunctive Relief, and I am afraid that my delay will have caused more Undeclared Voters the ability to dilute our vote on Primary Day* (emphasis added)."
> *See* Affidavit of Patricia Jorgensen, ¶ 20, dated 01/23/2024, Doc. No. 5-1.

55.    In addition, the Plaintiffs did include the vote dilution in their Amended Complaint. *See* Am.Compl., ¶ 47 ("*Because voters who are not "publicly affiliated" with the Republican Party were unconstitutionally-allowed to participate in the presidential primary, the petitioners' votes have been inexorably diluted by those who have no desire to participate in the ongoing affairs of the New Hampshire Republican Party* (emphasis added)").  Finally, Attorney O'Donnell

recognized that the plaintiffs' amended complaint did indeed argue vote dilution. *See* <u>Tr. of Motions Hearing, dated 5-30-2024</u>, Pg. 22: 15 – 22.

56.     Therefore, the issue of vote dilution has been addressed in both the Original Complaint and the Amended Complaint.

**<u>Plaintiff's Complaint is on their own injury-in-fact</u>**

57.     The first Report and Recommendation misapplies the Petitioner's analysis that defendant Ager has a fiduciary duty to the "general citizenry."   The second Report and Recommendations also misdirects their references to <u>Richard  v. Governor</u>, No. 2023-0097, 2024 WL 4154739 (N.H. Sept. 12, 2024) as an injury "suffered by the public at large."  *See* <u>R&R at * 16</u>, Doc. No. 73.

58.     The plaintiffs were referring to the argument in the *<u>Igneri</u>* court in where that "[a]lthough not public officials, political party chairpersons play substantial and discernible roles in state government beyond their statutorily enumerated duties." *See* <u>Igneri v. Moore</u>, 898 F.2d 870, 874 (2d Cir. 1990); <u>Am.Compl</u>. at ¶ 33.

59.     It was simply the plaintiffs referring to the *<u>Igneri</u>* court citing <u>United States v. Margiotta</u>, 688 F.2d 108, 125 (2d Cir.1982), in that *<u>the Margiotta court</u>* held that:

> "*we upheld the conviction of the former chairman of the Republican Committee of Nassau County and the Town of Hempstead under the federal mail fraud statute, 18 U.S.C. § 1341 (1976). In so holding, we concluded, in part, that **Margiotta owed a fiduciary duty to the general citizenry** based on his "participation in" and "effective control over the processes of government." 688 F.2d at 125* (**emphasis added**)." <u>Igneri</u> at 874.

60.     Plaintiffs' original complaint was carefully worded as an imminent injury-in-fact in that if the Secretary of State, and indirectly the chairman of the Republican Party, can interpret the state laws in an unconstitutional fashion, by which the two statutes in question are allowed to be

interpreted separately, the plaintiffs' "personal stake" in their rights of freedom of association and equal protection have been violated.

61.     As the magistrate noted, "An inquiry into standing must be based on the facts as they existed when the action commenced," Ramirez v. Sanchez Ramos, 438 F. 3d 92, 97 (1st Cir. 2006).

62.     At the time that the action commenced, plaintiff Karen Testerman and former plaintiff Patricia Jorgensen were chairman and vice chairman respectively of the Merrimack County Republican Committee (MCRC).

63.     The MCRC voted its approval to grant third-party standing to its officers to bring this suit in the name of the county committee. *Supra* ¶ 16.

64.     The enabling statute regarding State and Presidential Primary Elections, RSA § 659:14 states that the parties control who may vote in their primaries.

65.     Such an interpretation of the two statutes – RSA 654:34 and RSA 659:14 – separately renders the purpose of closing the primary in RSA 659:14 *meaningless*.  And it strips the political parties of the ability to control who may vote in their primaries.

66.     In addition, allowing same-day "Undeclared-to-Republicans voters" to vote without having to "affiliate publicly" with the party, effectively denies the plaintiffs from ever participating in a closed primary, and denies them their First Amendment rights to freedom of association.

67.     The Equal Protection Clause of the Fourteenth Amendment mandates that "all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).  In such cases, the plaintiff must show that: "(i) he was treated differently than other similarly situated supplicants and (ii) the differential treatment

resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness." <u>Pagan v. Calderon</u>, 448 F.3d 16, 34 (1st Cir. 2006).

68.     Therefore, under the Secretary of State's interpretation of reading the two statutes separately, he has invidiously discriminated against the plaintiffs in favor of "Party Raiders" and dilute the candidate-selection process that will in its view produce the nominee who best represents its political platform.  *See* <u>N.Y. Bd. of Elections v. Lopez Torres</u>, 552 U.S. 196 (2008); <u>Alaskan Independence Party v. Alaska</u>, 545 F.3d 1173, 1176 (9th Cir. 2008); *see also* <u>34 CFR § 9032.7 (a) (4)</u>.


**<u>Both political parties and individuals have rights to freedom of association</u>**

69.     The magistrate painstakingly attempts to argue that citizens do not have standing as matter of a First Amendment freedom of association right, and the right to challenge the "party raiders" is an exclusive right of a political party to invoke.  *See* <u>R&R at * 12 - 14</u>, Doc. No. 73.

70.     As the court stated in <u>Richard</u>, "[e]very person has an interest in the proper application of the Constitution and state laws."

71.     The plaintiffs previously argued that there are many cases where a plaintiff, as **<u>a single voter</u>**, or group of voters, have asserted their right to challenge the perceived interference by state regulation to their right of freedom of association, and have had proper standing before the court.  <u>Bullock v. Carter</u>, 405 U.S. 134 (1972); <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992); <u>Campbell v. Bysiewicz</u>, 242 F.Supp.2d 164 (2003); <u>Clingman v. Beaver</u>, 544 U.S. 581 (2005); <u>Igneri v. Moore</u>, 898 F.2d 870 (1990); <u>Kusper v. Pontikes</u>, 414 U.S. 51 (1973); <u>Moore v. Harper</u>, 600 U.S. 1 (2023); <u>Nader v. McAuliffe</u>, 593 F.Supp.2d 95 (2009); <u>Nader v. Schaffer</u>, 417 F.Supp. 837 (1976); <u>New York State Bd. of Elections v. Lopez Torres</u>, 552 U.S. 196 (2008);

Norman v. Reed, 502 U.S. 279 (1992);  Rosario v. Rockefeller, 410 U.S. 752 (1973).  *See also*
Young v. Gardner, 497 F.Supp. 396 (D.N.H. 1980).

72.     However, the magistrate attempts to invoke logical syllogisms in dismantling the
citations to state that the plaintiffs do not have standing – that only political parties exclusively
have standing.

73.     Indeed, none of the case cited above state that it is the exclusive right of the political
party to challenge "party raiders," but merely that a political party *also* has certain rights to
freedom of association.  Without the citizens gathering in freedom of association, there can be no
political party.

**Plaintiffs should have been granted their injunctive relief hearing in a timely manner**

74.     On August 14, 2024, U.S. Magistrate Judge Andrea K. Johnstone issued a procedural
order for a preliminary injunctive hearing to be held on September 6, 2024.  **Order, dated
08/14/2024**, Doc. No. 46.

75.     Among other things, the court instructed the parties to assemble: a single timeline; a
single statement of agreed facts; a witness list; and exhibits list; a proposed Findings of Fact and
Rulings of Law; and a proposed order.  *Id*.

76.     The parties prepared their respective documents for the court in anticipation of the
injunctive relief hearing. *See* Doc. Nos. 51, 52, 53, 54, 56, 57, 58.

77.     However, at the previously *scheduled injunctive relief hearing*, the magistrate declared
that it was instead an *evidentiary hearing*, and that the magistrate would issue a recommendation
and report later, for which the parties would have an additional 14 days in which to object.  28
U.S.C. § 636.

78.     The primary election was less than four (4) days away, and the plaintiffs did not have an opportunity to properly present their third motion for injunctive relief.

79.     Indeed, on September 9th, 2024, the following Monday after the magistrate had conducted the substituted evidentiary hearing (and the plaintiffs had filed an interlocutory appeal with the First Circuit), the court quickly convened a hearing, scolding the plaintiffs that they had 14 days in which to object to the magistrate's first report and recommendation, and that:

> "*So ultimately if in fact I'm going to rule similarly to Judge Johnstone and if you want to appeal that to the First Circuit and be vindicated at the First Circuit before the primary, then what I'm saying to you is you should file that pronto.*" <u>*See*</u> Tr. Of Special Hearing, dated September 9, 2024, pg. 6, lines 21 – 24.

80.     Ultimately, there was insufficient time between the judge's ruling later that day and the primary election on the following day to mount an appeal before the primary election took place.

81.     Because of the unnecessary delays in giving the appearance of an expedited injunctive relief hearing, the court prejudiced the plaintiffs from effectively separating the votes of the Undeclared Voters from the publicly-affiliated, registered Republican voters on state primary election day.

## Why Every Vote Matters

82.     Both the codefendants and the magistrate have attempted to argue that even if the plaintiffs survive standing, the plaintiffs purportedly can not articulate a legally-cognizable injury-in-fact.  Axiomatically, the plaintiffs have argued that every single vote matters and by allowing even one illegal vote to be cast, can affect the candidate-selection process of the individual voters, and in the aggregate the party as well.

83.    As such, the <u>Public Interest Legal Foundation</u> tracks and publishes elections in the United

States that last year alone, either ended in a tie (635) or have been decided by a single vote (173).

*See* <u>https://publicinterestlegal.org/tied-elections/</u>.   Different States have different procedures for

how to handle tie elections. These procedures include a lottery, coin toss, and runoff elections.

84.    Plaintiff Karen Testerman recently won her seat on the Franklin City Council by a single

vote.

85.    The recent 2024 New Hampshire Gilsum Town Selectboard election ended in a tie,

resulting in a lottery to determine the winner. *Id.*

86.    In the recent September 10th primary election, Linda McGrath won the GOP primary

recount for Hampton-Seabrook House seat by 1 vote. *See*

<u>https://www.seacoastonline.com/story/news/politics/elections/state/2024/09/17/linda-mcgrath-</u>

<u>wins-hampton-seabrook-rep-seat-primary-recount-by-1-vote-richard-sawyer/75246981007/</u>.

87.    Therefore, allowing "party raiders" to participate in the state and presidential primaries

unfairly dilutes the candidate-selection process that will produce the nominee who best

represents the choice of the voters, and even a single vote matters.  *See* <u>N.Y. Bd. of Elections v.</u>

<u>Lopez Torres</u>, 552 U.S. 196 (2008); <u>Alaskan Independence Party v. Alaska</u>,

545 F.3d 1173, 1176 (9th Cir. 2008); *see also* <u>34 CFR § 9032.7 (a) (4).</u>

**Conclusion**

88.    The Magistrate's Report and Recommendations confuses and unnecessarily complicates

the plaintiffs' complaint.

89.    As a matter of statutory law, the court should grant standing for the Original Complaint,

and at a *de minimus*, should have granted an injunction before the general primary for those

ballots that were cast by Undeclared "voter[s] registered in the town or ward in which the

[plaintiffs'] election [were] held," in order that standing could be conferred on the plaintiffs so that the district court could get to the underlying complaint. *See* N.H. R.S.A. § 659:27; *see also* N.H. R.S.A § 659:27-a (a voter may challenge another voter for many reasons, including the statement: "*This is a primary and the person seeking to vote in the (state political party name) _____ primary is not a declared member of the party he or she claims to be affiliated with*."

90.     Plaintiffs' complaint is on their own injury-in-fact and their complaint is not based on "generalized wrongs allegedly suffered by the public at large."

91.     Plaintiffs' standing under 28 U.S.C. § 1343(a)(3) is to be broadly construed based on Solomon v. Miami Woman's Club, 359 F.Supp. 41 (S.D. Fla. 1971) and not be denied based on Celauro v. Whole Foods Mkt., 2021 WL 4844538, at *3 (Not Reported in Fed. Supp.)(D. Colo. Oct. 18, 2021).

92.     The Equal Protection Clause of the Fourteenth Amendment affords that the Testerman's should not be treated differently than other similarly situated supplicants in other States who have close political primaries that do not have their votes diluted by party raiders who are not publicly-affiliated with their political party, and as such their constitutional federal rights were violated.

93.     Vote dilution has been addressed in both the Original Complaint and the Amended Complaint.

94.     The magistrate's recommendation does not comport with the latest authority of the New Hampshire Supreme Court, citing Baker v. Carr, 369 U.S. 186, 205-06 (1962)(noting that voters have standing to bring equal protection challenges to complain of vote dilution and observing that "[m]any of the cases assumed rather than articulated the premise in deciding the merits of

similar claims"). *See* Daniel Richard v. Governor , 2024 N.H. 53 (Sept. 12, 2024), --- A.3d ----

(2024), * 5, ¶ 21.

95.     Both political parties and individuals have rights to freedom of association, and neither is

at the mutual exclusion of the other.

96.     And the plaintiffs profess that every vote matters.

97.     The court prejudiced the plaintiffs by causing unnecessary confusion, anxiety and delay

by denying the plaintiffs their injunctive hearing before the general primary election.

98.     The plaintiffs assert that if the court determines that the original complaint is deficient,

then they should be able to amend their complaint.


WHEREFORE, the Petitioners respectfully request that this Court:

•       DENY the defendants' motions to dismiss (Doc. Nos. 49 and 55); and

•       For such other and further relief as is just and proper.


                                        Respectfully Submitted,

                                        DAVID TESTERMAN, *N.H. State
                                        Representative, Merrimack County
                                        District 03*

Dated:  October 15, 2024                By:  ___/s/ David Testerman_____
                                        David Testerman, *pro se*
                                        Dave@sanbornhall.net
                                        9 Stone Avenue
                                        Franklin, New Hampshire 03235
                                        (603) 320-9524


                                        KAREN TESTERMAN, *both individually
                                        and as former New Hampshire Merrimack
                                        County Republican Committee (MCRC)
                                        Chair*

Dated:  October 15, 2024          By:   /s/ Karen Testerman
                                    Karen Testerman, *pro se*
                                    karen@karentesterman.com
                                    9 Stone Avenue
                                    Franklin, New Hampshire 03235
                                    (603) 934-7111


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing was sent by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com


Dated:  October 15, 2024            /s/ Karen Testerman
                                Karen Testerman, *pro se*